**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVSION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| VOLUSION, LLC[1] | § | Case No. 20-50082 |
| | § | (DRJ) |
| Debtor. | § | |
| | § | |
| | § | |

**KSCO HOLDING, INC'S AND KEVIN SPROLES'**
***EMERGENCY* MOTION TO TRANSFER VENUE**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON _____. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Volusion, LLC (9037). The Debtor's service address is 1835A Kramer Lane, Suite 100, Austin, TX 78758.

> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1(832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691.**
>
> **PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME. PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**
>
> **ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING". THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES". THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER. PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".**
>
> **RELIEF IS REQUESTED NO LATER THAN AUGUST 5, 2020.[2]**

KSCO Holdings, Inc. and Kevin Sproles ("Movants"), move to transfer venue of this bankruptcy case to the Western District of Texas pursuant to 11 U.S.C. §§ 1404, 1408, 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure. Movants respectfully show as follows:

## JURISDICTION

1.  This court has jurisdiction over this motion to transfer venue pursuant to 28 U.S.C. §§ 157 and 1334.

## FACTUAL BACKGROUND

2.  KSCO is the largest equity holder in the debtor, Volusion, LLC ("Volusion" or "Debtor"). Kevin Sproles is the largest equity owner of KSCO. He is the founder of Volusion and until July 27, 2020, was also employed by Volusion.

---

[2] Movants will update and revise any notice of hearing on the Motion that is set after August 1, 2020 with the Court's new GoToMeeting information.

Prior to the filing of the above-captioned chapter 11 case (the "Bankruptcy Case"), Street Capital Corporation ("Main Street"), on behalf of itself and HMS Income Fund, Inc. ("HMS" and together with Main Street, the "Lenders"), took actions through their appointed member of Volusion's Board to engineer defaults on their loan with Volusion. Main Street used the manufactured defaults to improperly seize control of KSCO's interest in Volusion and replace Volusion's Board members with Main Street's own board. Main Street then exploited its control of Volusion to the Debtor's detriment.

3. On July 22, 2020, KSCO was informed that a forbearance agreement had been entered into between Main Street and Volusion through August 31, 2020. Nevertheless, on July 27, 2020, Volusion, through Main Street's selected board, terminated Volusion's Chief Executive Officer and other key contractors and employees, including Mr. Sproles. That same day, Volusion filed its voluntary chapter 11 petition, thereby commencing the Bankruptcy Case in the United States Bankruptcy Court of the Southern District of Texas, Laredo Division.

4. In its chapter 11 petition [Docket No. 1] (the "Petition"), the Debtor asserts that its address and principal place of business is 1835-A Kramer Ln. Suite 100, *Austin, Texas* 78758. Petition, p. 1 para. 4 (emphasis supplied). In the same paragraph, the Debtor responded "N/A" for the "location of principal assets**, *if different from the principal place of business*." Petition, p. 1 para. 4 (emphasis supplied).

5. Debtor also indicated the following as its reason this case was filed in this District: "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district. Petition, p. 3, para. 11. This is not true.

6. The Debtor was formed as a Delaware limited liability company. According to the Debtor's recently filed *Emergency Motion for Authority to Use Cash Collateral and Granting Adequate Protection to Prepetition Secured Parties* [Docket No. 4] (the "Cash Collateral Motion"), Volusion is *based in Austin, Texas*. Cash Collateral Motion, p. 1 para. 4. Although the Debtor filed its petition in the

3

Southern District, Laredo Division, the Debtor has absolutely no connection to the Southern District, much less to Laredo. In fact, the Debtor has never had any assets— principal or otherwise – in the Southern District of Texas.

7. The Debtor has never had a tangible presence in the Southern District. It has never had a place of business, assets, office, post office box, or even a telephone listing in this District. The Debtor's nerve center has always been in the Western District; specifically, Austin, Texas, as illustrated by the following:

- Volusion's sole office and headquarters is located in Austin, Texas.
- All Volusion's tangible assets are located in Austin, Texas.
- The vast majority of Volusion's approximately 175 employees are located in Austin, Texas. None are located in the Southern District.
- The vast majority of Volusion's critical leadership, including the Head of Human Resources, Head of Information Security, Head of Sales, Head of Studio, VP of Finance, VP of Sale, VP of Payments, VP of Partners, is located in Austin, Texas. None are located in the Southern District.
- Volusion's founder, Kevin Sproles, is located in Austin, Texas.
- Volusion's recently "terminated" Chief Executive Officer, Bardia Dejban, is located in Austin, Texas.
- Volusion's books and records and personnel files are maintained at Volusion's headquarters in Austin, Texas.
- Volusion's data center is located in Austin, Texas.
- Volusion's bank accounts for its operations are in Austin, Texas. Volusion has other bank accounts in Dallas, Texas and Santa Clara, California. However, Volusion has no bank accounts in the Southern District.
- Volusion pays property tax to Travis County.
- Volusion's Terms of Service mandate that all of disputes arising out of any of its tens of thousands of contracts with its customers must be litigated in Austin, Texas;
- Volusion's Partner Terms mandate that all of disputes arising out of

      any of its contracts with its partners must be litigated in Austin, Texas;

- All Volusion employees agree to have their disputes litigated in Travis County, Texas;

8. The "Debtor's liabilities consist principally of trade debt." Petition, p. 7. Out of the list of creditors who have the 20 largest unsecured claims as indicated by the Debtor in its Petition, none are located in the Southern District of Texas. Petition, p. 7-8. Google who is listed as by far the largest creditor, has an expansive office in Austin and the Debtor's contacts at Google are located in Austin. Moreover, KSCO is the largest shareholder and its largest equity holder, Kevin Sproles, lives in the Western District.

### ARGUMENT AND AUTHORITIES

9. Section 1408 of title 28 of the United States Code (the "Code") provides that a case under title 11 of the United States Code (the "Bankruptcy Code"):

> may be commenced in the district court for the district (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject o such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one hundred and eighty day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district"

28 U.S.C. § 1408.

10. The Petition concedes that the Debtor's principal place of business is in Austin, Texas, which is the Western District. The Debtor further indicates "N/A" for the "location of principal assets, *if different from the principal place of business*." Petition, p. 1 para. 4. (emphasis supplied). Thus, the Debtor has conceded that the location of its principal assets is Austin, Texas, in the Western District. However, the Debtor filed its petition in the Southern District of Texas, Laredo Division and checked the box that "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any

5

other district. Petition, p. 3. Putting aside the inconsistencies in the petition itself, by checking the box, Debtor presumably asserts that venue is appropriate under 28 U.S.C. § 1408(1).

11. For purposes of venue, the "domicile" of a corporation is generally held to be its state of incorporation. *In re FRG, Inc.*, 107 B.R. 461, 471 (Bankr. S.D.N.Y 1989) ("Since a corporation's domicile is generally held to be its state of incorporation, FRG, a Pennsylvania Corporation, is clearly not 'domiciled' in New York."), citing *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957). The Debtor is a Delaware limited liability company, so the **Southern District of Texas is *not* its domicile**, and venue therefore cannot be predicated on domicile.

12. The principal place of business is defined by the United States Supreme Court as follows:

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Here, as set forth in paragraphs 6-7, above, there can be no question that the Debtor's nerve center is its corporate headquarters in Austin, Texas.

13. Because the tests for venue under section 1408 the Code are not met, this case should not have been filed in the Southern District of Texas. It should have been filed in the Western District of Texas where the Debtor has its principal place of business and all of its assets.

14. Where a case is filed in an improper district, Rule 1014(a)(2) provides:

> If a petition is filed in an improper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may dismiss the case or transfer it to any other district if the court

determines that the transfer is in the interest of justice or for the convenience of the parties.

Fed. R. Bankr. P. 1014(a)(2).[3]

15. For transfers of venue, whether the case was filed in a proper district or not, Rule 1014(a)(1) and (a)(2) both provide that "the court may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties." This language mirrors 28 U.S.C. § 1412: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Section 1412 is written in the disjunctive, meaning that each of the two prongs – "in the interest of justice" or "for the convenience of the parties" – constitutes an independent ground for transferring venue. *In re Patriot Coal Corp*, 482 B.R. 718, 738-39 (Bankr. S.D.N.Y. 2012).

16. The interest of justice prong of section 1412 sets forth a broad and flexible standard. *In re Dunmore Homes, Inc.*, 380 B.R. 668, 670 (Bankr. S.D.N.Y. 2008); *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990). Under the interest of justice prong, courts consider whether (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiffs original choice of forum should be disturbed. *In re Dunmore Homes,* 380 B.R. at 671-72.

17. The convenience of parties prong of section 1412 also has six factors: (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result. *Id.* at 672.

---

[3] Movant would not oppose dismissal of this case, but this motion requests only a transfer of venue.

18. A discussion of the factors under each of the prongs follows and militates in favor of transferring this matter to the Western District, Austin Division.

### The Interest of Justice

19. The interests of justice will be best served by transfer to the Western District of Texas, Austin Division:

(i) <u>The transfer would promote the economic and efficient administration of the bankruptcy estate</u>. There is no reason to believe that the bankruptcy court in the Western District of Texas would handle this case any less efficiently or economically than this Court.

(ii) <u>The interests of judicial economy would be served</u>. This motion is filed before first day motions which are scheduled for July 30th. A bankruptcy judge in the Western District should be able to fairly and efficiently preside over this matter.

(iii) <u>The parties would be able to receive a fair trial in the Western District</u>. This does not appear applicable in this bankruptcy main case. To the extent any adversary proceedings are filed, there is no reason to believe that the bankruptcy court in the Western District would not give a fair trial.

(iv) <u>Whether either forum has an interest in having the controversy decided within its borders</u>. The Western District of Texas has a strong interest in having this case administered there because the Debtor is headquartered there, and the Debtor's "nerve center" is there.

(v) <u>Whether the enforceability of any judgment would be affected by the transfer</u>. This does not appear applicable in this bankruptcy main case.

(vi) <u>Whether the plaintiff's original choice of forum should be disturbed</u>. Considering the "plaintiff" as the Debtor, there is a reason to disturb the Debtor's choice of forum. The Debtor does not have any corporate existence or connection whatsoever to the Southern District of Texas. Indeed, the Debtor includes in its contracts with each of its partners, customers, employees, and non-disclosure agreements a venue provision requiring any litigation be brought in the Western District of Texas, Austin Division. Thus, the debtor's practice prior to the

bankruptcy was to handle all legal proceedings, to the extent possible, in the Western District of Texas, Austin Division.

## Convenience of Parties

20. The convenience of parties will also be best served by transfer to the Western District of Texas, Austin Division:

(i) <u>Proximity of creditors of every kind to the court</u>. As discussed above, out of the twenty largest unsecured claims, none of the creditors are located in the Southern District.

(ii) <u>Proximity of the debtor</u>. As stated above, this Debtor has no existence in the Southern District of Texas and has its entire existence in the Western District. In this case, all of the critical witnesses for the debtor are located in Austin, Texas.

(iii) <u>Proximity of witnesses necessary to the administration of the estate</u>. The executives and other employees who run the Debtor are located in the Western District of Texas.

(iv) <u>Location of the assets</u>. All of the Debtor's assets are located in the Western District; none are located in the Southern District.

(v) <u>Economic administration of the estate</u>. As stated above, there is no reason to believe that the bankruptcy court in the Western District would handle this case any less efficiently or economically than this Court. Given that witnesses to be examined are in the Western District, as is the majority shareholder considerable efficiency should be gained by a transfer.

(vi) <u>Necessity for ancillary administration if liquidation should result</u>. If this case results in liquidation, all of the Debtor's physical assets are located in the Western District. That is where a trustee should be appointed and where the assets should be liquidated.

21. Finally, this Court should consider the issue of forum shopping. As discussed in *In re Abacus Broad. Corp.*,

> How much deference should be given to a forum selected primarily by the lawyers, for their own convenience or concern for remuneration? How much deference should be given to a debtor's concern that it get what it perceives to be a "debtor's judge?"

HOU 3219172.1

HOU 3219172.2

> Whenever a creditor raises the venue question, none at all. Forum shopping has never been favored by federal courts, and courts are quick to discern the evil in all its disguises. *See, e.g., Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1523 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984); *Intern. Rectifyer Corp. v. American Cyanamid Co.,* 520 F.Supp. 635, 639 (D.Minn.1981); *In re Heritage Wood'N Lakes Estates, Inc.,* 73 B.R. 511, 514 (Bankr.M.D.Fla.1987). In bankruptcy, too often the tactic is masked by pious pronouncements about the debtor's "right" to select the most advantageous of several possible forums, in order to advance the prospects for reorganization. *687 That rationale, however, should in the usual instance, be taken with several grains of salt. Too many corporations with familiar household names are operating in bankruptcy under the name of some obscure subsidiary whose venue happens to coincide with either the debtor's or the debtor's lawyers' perception of the most favorable judicial forum in which to operate. This tactic is not simply unfair to the creditors of these estates. It is also unfair to the judges.

154 B.R. 682, 686–87 (Bankr. W.D. Tex. 1993).

22. Based on the foregoing considerations, this Court should transfer this matter to the Western District of Texas, Austin Division.

## EMERGENCY CONSIDERATION

23. Pursuant to Local Bankruptcy Rule 9013-1(i), and Part (D)(9) of the Complex Procedures, Movants request emergency consideration of this Motion. The relief requested is critical to ensure that the proper forum of this matter is determined in advance of the Debtor's pending motions. Proper venue should be considered and decided at the outset so that the appropriate court is able to hear all or most of the motions that are filed in this matter. Movants submit that they have satisfied the "immediate and irreparable harm" standard, and respectfully request that the Court approve the relief sought herein on an emergency basis. Relief is respectfully requested no later than *on or before August 5, 2020*, because upon information and belief, the debtor may need disbursements for the week of August 9th which would need to be processed on or before August 6th.

## CONCLUSION

If the Court does not dismiss this Bankruptcy Case, the decision to transfer venue is within the discretion of the Court. A court should base its venue analysis on the facts underlying each particular case. *In re Dunmore Homes, Inc.*, 380 B.R. 668, 670 (Bankr. S.D.N.Y. 2008). Movants submit that the Court should exercise its discretion to transfer the venue of this case.

Movants therefore request that this Bankruptcy Case be transferred to the Western District of Texas, Austin Division and for such other relief to which they are entitled.

Dated: July 30, 2020

Respectfully submitted,

SPENCER FANE LLP

By: */s/ Eric. M. Van Horn*
Eric M. Van Horn
State Bar No. 24051465
Email: ericvanhorn@spencerfane.com
2200 Ross Ave. Suite 4800 West
Dallas, TX 75201
Telephone: 214-459-5895
Brian W. Zimmerman
State Bar No. 00788746
Email: bzimmerman@spencerfane.com
3040 Post Oak Blvd., Suite 1300
Houston, TX 77056-6560
Telephone: 713.212.2651
Facsimile: 713.963.0859

**ATTORNEYS FOR KSCO HOLDING, INC. AND KEVIN SPROLES**

### Certificate of Service

I certify that on July 30, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/Eric Van Horn*
Eric Van Horn

11