

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

ENTERED
07/30/2020

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| VOLUSION, LLC[1] | § | Case No. 20-55082 (DRJ) |
| | § | |
| Debtor. | § | |
| | § | |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 507 AND 552,**
**AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING**
**DEBTOR TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION**
**TO SECURED LENDERS, (III) MODIFYING THE AUTOMATIC STAY,**
**(IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE**
**4001(b), AND (V) GRANTING RELATED RELIEF**
(Docket No. 4)

Upon the motion, dated July 28, 2020 (the "Motion"),[2] of the above-captioned debtor and

debtor in possession (the "Debtor"), for entry of this Interim Order under sections 105, 361, 362,

363, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the

"Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure

(as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Southern District

of Texas (the "Local Rules"), seeking:

(I)      authorization for the Debtor, pursuant to sections 105, 361, 362, 363, 507

and 552 of the Bankruptcy Code, to (i) use "cash collateral," as such term is defined in

section 363 of the Bankruptcy Code, and (ii) provide adequate protection to the Secured

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Volusion, LLC (9037). The Debtor's service address is: 1835A Kramer Lane, Suite 100, Austin, Texas 78758.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Lenders for any diminution in value of their interests in the Prepetition Collateral (as defined below), in each case on the terms set forth in this Interim Order;

(II)    modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(III)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Interim Order: (a) authorizing the Debtor to use the Cash Collateral; and (b) granting adequate protection to the Secured Lenders; and

(IV)    a waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

The Interim Hearing having been held by this Court on July 30, 2020; and upon the record made by the Debtor at the Interim Hearing (including, without limitation, the Motion); and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion, and having found that the granting of the relief requested in the Motion on an interim basis is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND THAT:

1.      *Petition Date.*  On July 27, 2020 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (this "Court") commencing this chapter 11 case.

2.      *Jurisdiction and Venue*.  This Court has jurisdiction over the proceeding and the persons and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for this chapter 11 case and proceeding on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      *Committee Formation.*  A statutory committee of unsecured creditors or equity security holders, as applicable (if appointed, the "Committee") has not been appointed in this chapter 11 case.  No trustee or examiner has been appointed in the chapter 11 case.

4.      *Notice.*  Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtor, whether by facsimile, electronic mail, overnight courier or hand delivery, on (a) the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"); (b) entities listed as holding the 20 largest unsecured claims against the Debtor; (c) the agent under the Debtor's prepetition credit facility; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtor conducts business; (f) the Internal Revenue Service; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and of the Interim Hearing, constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c), and (d).  No further notice of, or hearing on, the relief sought in the Motion is necessary or required.

5.    *Debtor's Stipulations.*  The Debtor admits, stipulates, and agrees to the following:

(a)    <u>Loan</u>

(i)    Pursuant to that certain Amended and Restated Loan Agreement, dated November 23, 2016 (as amended, modified, waived, and/or supplemented from time to time, the "<u>Loan Documents</u>"), by and among Debtor, Main Street Capital Corporation ("<u>Main Street</u>") and HMS Income Fund, Inc. ("<u>HMS</u>," and together with Main Street, the "<u>Secured Lenders</u>"), senior secured notes due January 26, 2020 (the "<u>Secured Notes</u>") were issued in the principal amount of approximately $30.0 million (the "<u>Loan</u>").

(ii)    Main Street served as administrative agent under the Loan Documents (the "<u>Administrative Agent</u>").

(iii)    The Loan matured on January 26, 2020. As of the Petition Date, approximately $28.9 million in principal and approximately $1.4 million in unpaid interest was outstanding in respect of the Secured Notes (together, the "<u>Loan Obligations</u>"), plus accrued and unpaid interest, which is secured by (the "<u>Prepetition Liens</u>") substantially all of the Debtor's assets, existing or acquired (the "<u>Prepetition Collateral</u>").

(b)    The Prepetition Liens are valid, binding, enforceable, non-avoidable and properly perfected liens on and security interests in the Prepetition Collateral.  No portion of the Loan Obligations or Prepetition Liens is subject to any contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law, *provided, however,* that the Prepetition Liens shall be subject and subordinate only to (a) the Carve-Out, (b) the liens and security interests granted to secure the Adequate Protection Obligations (as defined below), to the extent such liens and security interests attach to the Prepetition Collateral, and (c) valid, perfected, and unavoidable liens permitted under the Loan Documents, to the extent such liens are permitted to be senior to the liens of the Administrative Agent on the Prepetition Collateral pursuant to the terms of the Loan Documents.

(c)     The Debtor's cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtor, wherever located, any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral, and any proceeds of the Prepetition Collateral, in each case constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code, and thus constitutes the "Cash Collateral" for purposes of this Interim Order.

(d)     The initial budget, attached hereto as Exhibit A, was thoroughly reviewed by the Debtor, its management, and its advisors.  The Debtor, its management, and its advisors believe that such budget and the estimate of administrative expenses due or accruing during the period covered thereby were developed using reasonable assumptions and based on those assumptions the Debtor believes there should be sufficient available assets to pay all administrative expenses due or accruing during the period covered thereby.

6.     *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)     Good cause has been shown for the entry of this Interim Order.

(b)     The Debtor requires access to use the Prepetition Collateral (including the Cash Collateral), on the terms set forth herein (including in the amount and in the manner set forth in the Budget (as defined below)), to permit, among other things, the satisfaction of the costs and expenses of administering this chapter 11 case.

(c)     The terms of the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)      The terms of the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtor, the Secured Lenders and, pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Secured Lenders are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code on the terms set forth herein.

(e)      The Debtor requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (d).  Absent granting the interim relief sought by this Interim Order, the Debtor's estate will be immediately and irreparably harmed.  The use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Interim Order is in the best interest of the Debtor's estate.

7.      *Consent by the Secured Lenders.*  Subject to the terms of this Interim Order, the Secured Lenders consent to the Debtor's use of the Prepetition Collateral (including the Cash Collateral) on the terms set forth herein (including as contemplated and limited by the Budget for the 4-week period provided therein).

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

8.      *The Motion.*  The Motion is GRANTED on an interim basis.  Any objection to the Motion, as it pertains to the entry of this Interim Order, to the extent not withdrawn or resolved, is hereby overruled.

9.      *Authorization of Use of Cash Collateral and Prepetition Collateral.*

(a)      Subject to the terms and conditions set forth in, and in accordance with, this Interim Order, the Debtor is authorized to use Cash Collateral.  Except as expressly permitted in this Interim Order, nothing in this Interim Order shall authorize the disposition of any assets of the

Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom.

(b)     During this chapter 11 case, the Debtor will require access to the Cash Collateral to fund working capital, general corporate purposes, and administrative costs and expenses of the Debtor incurred in this chapter 11 case, subject to the terms hereof and in accordance with a 13-week budget in form and substance acceptable to the Secured Lenders (the "Budget").  The initial budget, attached hereto as Exhibit A, is the Budget as of the date hereof. For the avoidance of doubt, the Budget is integral to, and forms a part of, this Interim Order.  The interim four-week budget is binding upon the parties.  The 13-week budget is not binding on the parties and is provided for informational purposes only and is subject to further revisions and the required approval of the Secured Lenders.

(c)     Each week, by Thursday at 4:00 p.m. prevailing Central Time, the Debtor shall deliver to the Administrative Agent an updated, proposed 13-week budget.  Each proposed budget provided to the Administrative Agent shall be of no force and effect unless and until it is approved, in writing, by the Secured Lenders.  Upon approval of such updated budget by the Secured Lenders, such budget shall become the Budget.  Until such approval, the then-existing Budget shall remain in place.

(d)     Each week, by Thursday at 4:00 p.m. prevailing Central Time, the Debtor shall deliver to the Administrative Agent a variance report setting forth the Debtor's actual cash flow for the preceding week compared to the Budget.  For purposes of this Interim Order, the Debtor shall ensure that at no time shall any of the following occur:  (i) an unfavorable variance of 10% or more from the "Total Cash Receipts" line item in the Budget, tested every week on a cumulative weekly basis (to begin on the 2nd week); and (ii) an unfavorable variance of 10% or

more from the "Total Cash Disbursements" line item in the Budget (exclusive of Restructuring Fees), tested every week on a cumulative weekly basis (to begin on the 2nd week) (the variances described in subparts (i) and (ii), each a "Non-Permitted Variance").

10.    *Adequate Protection Claims and Liens.*  In addition to all the existing security interests and liens granted to or for the benefit of the Secured Lenders in and with respect to the applicable Prepetition Collateral, including the applicable Cash Collateral, as adequate protection for, and to secure payment of an amount equal to the Collateral Diminution (as defined below), and as an inducement to the Secured Lenders to permit the Debtor's use of the Cash Collateral as provided for in this Interim Order, the Debtor hereby grants, solely to the extent of the Collateral Diminution:

(a)    Adequate Protection Claims.    To the Secured Lenders, an allowed superpriority administrative claim against the Debtor with priority over any and all other administrative claims against the Debtor now existing or hereafter arising in this chapter 11 case, including all claims of the kind specified under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever, (the "Adequate Protection Claims"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtor; *provided, however*, that the Adequate Protection Claims shall be subject and subordinate to the Carve-Out (as defined below).

(b)    Adequate Protection Liens.  Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages

8

or other similar documents, or by possession or control, and in each case subject and subordinate to the Carve-Out, the following security interests and liens are hereby granted to the Administrative Agent, for its own benefit and the benefit of the Secured Lenders, all property identified in this paragraph 10(b) (collectively referred to as the "Adequate Protection Collateral," and all such liens and security interests, as the "Adequate Protection Liens"): valid, perfected, and enforceable replacement liens on and first priority postpetition security interests (the "Replacement Liens") in all assets of the Debtor, to the same extent that such liens and security interests existed pre-petition under the Loan Documents.  For avoidance of doubt, any such Replacement Liens shall not attach to any causes of action and recoveries realized pursuant to chapter 5 of the Bankruptcy Code for the purposes of this Interim Order.  The Replacement Liens shall at all times be senior to (i) the rights of the Debtor and any successor trustee or estate representatives in this chapter 11 case, and (ii) any security interest or lien of any creditor or other party in interest in this chapter 11 case other than pre-existing liens senior to those of the Secured Lenders as of the Petition Date or as set forth in this Interim Order, provided, however, that any existing retainers held by estate professionals on the Petition Date shall only be subject to the Replacement Liens to the extent they are not fully utilized by such estate professionals for payment of fees and costs approved by this Court pursuant to 11 U.S.C. § 330.  Subject to the Carve-Out, to the extent granted by any subsequent interim or final order, and any Chapter 5 causes of action, the Debtor further grants an administrative superpriority expense claim for the Secured Lenders in the amount of the Collateral Diminution.

        (c)     "Collateral Diminution" means an amount equal to the diminution of the value of the Secured Lenders' interests in the Prepetition Collateral from and after the Petition Date for the use, sale, or lease of Prepetition Collateral (including Cash Collateral), subordination

to the Carve-Out, and other decline in value arising out of the imposition of the automatic stay (the "Adequate Protection Obligations").

11.     *Reporting*.  During the period that this Interim Order is in effect, the Debtor shall provide the following to the Secured Lenders:

(a)     promptly, but in any event no later than the Friday of each calendar week (or, if such date is not a business day, the immediately preceding business day), a weekly report as of the last day of the preceding calendar week, in form and detail reasonably acceptable to the Secured Lenders, of all written demands or claims related to or asserting any liens against or challenges to title in respect of property or assets of Debtor (including liens imposed by law, such as landlords', vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' and other similar liens);

(b)     on a bi-weekly basis, a report of the Debtor's (i) aged accounts receivable and (ii) accounts payable listings as of the end of the preceding two (2) weeks consistent with the Debtor's historic past practices, in form and detail reasonably acceptable to the Secured Lenders. For the avoidance of doubt, each of (i) and (ii) shall be provided within seven (7) days following the end of the previous two-week period;

(c)     such other reports and information as the Secured Lenders may reasonably request.

12.     *Disposition of Collateral*.  The Debtor may sell, transfer, lease or use Debtor's inventory in the ordinary course of its business.  Until such time as the Loan Obligations have been paid in full in accordance with the terms of the applicable Loan Documents, the Debtor shall remit, or cause to be remitted to the Administrative Agent, all proceeds of Prepetition Collateral, that are obtained outside the ordinary course of business, for application against the Loan Obligations in

accordance with the terms of the applicable Loan Documents and this Interim Order unless the Secured Lenders consent to a different allocation of such proceeds.  The Debtor shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of the Court to do any of the foregoing, without the prior consent of the Secured Lenders.

13.     *Priority of Adequate Protection Liens and Adequate Protection Claims.*  Except to the extent of the Carve-Out, the Adequate Protection Liens and Adequate Protection Claims granted to the Secured Lenders pursuant to paragraphs 10(a) and 10(b) of this Interim Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under sections 363 or 364 of the Bankruptcy Code or otherwise; and the Debtor shall not create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to this Interim Order; (ii) carriers', mechanics', operators', warehousemen's, repairmen's or other similar ordinary course liens arising in the ordinary course of business; (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations and performance bonds; and (v) such other liens or security interests existing as of the Petition Date that are permissible under the Loan Documents; *provided*, that (x) the Debtor shall provide prompt notice to the Administrative Agent of any postpetition liens or security interests on Prepetition Collateral or Adequate Protection Collateral that have a value of $5,000 or more separately or in the aggregate.  The Debtor admits, stipulates, and agrees that, as of the Petition Date, it is not aware of any liens or security interests that fit within the purview of subpart (v) of the preceding sentence.

14. *Carve-Out*. As used in this Interim Order, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, (ii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code through the Termination Date (as defined below), and (iii) any claim for indemnification asserted by any member of the Board of Managers.

15. *Payment of Compensation.* Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the Debtor, any Committee, or of any person, or shall affect the rights of the Secured Lenders to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts.

16. *Termination*.

(a) Optional Termination Events. Upon the occurrence of any of the following events, and upon three (3) business days following the delivery of a written notice by the Secured Lenders to (i) the Office of the U.S. Trustee, (ii) the Debtor and proposed counsel to the Debtor, Jackson Walker L.L.P., 1401 McKinney Street, Suite 1900, Houston, Texas 77010 (Attention: Matthew D. Cavenaugh) and (ii) counsel to the Committee (if any) of the occurrence of any of the below listed events, unless cured by the Debtor or waived by the Secured Lenders, the Debtor's consensual use of the Cash Collateral may be terminated (collectively, the "Optional Termination Events"):[3]

(i) the failure by the Debtor to make any payment required under this Interim Order as and when due;

---

[3] Wherever applicable in this Interim Order, any consent by the Secured Lenders (whether for the extension of time or otherwise) shall be effective without further order of the Court.

(ii)      the failure by the Debtor to comply with any covenant, agreement, or provision of this Interim Order, including, without limitation, timely delivery to the Committee of any of the documents or other information required to be delivered pursuant to this Interim Order or in the event such document or other information contains a material misrepresentation;

(iii)      Debtor uses Cash Collateral to fund any payments in respect of prepetition claims other than (i) as permitted under this Interim Order, (ii) in accordance with, and solely to the extent authorized by, a "first day" or "second day" order that is consistent with the draft of such order provided to the Secured Lenders before the filing of such matter, or (iii) as otherwise expressly contemplated by the Budget or an order acceptable to the Secured Lenders;

(iv)      the occurrence of a Non-Permitted Variance;

(v)      the Debtor shall create, incur or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Claims;

(vi)      a filing by any party of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection, or priority of the liens securing the Loan Obligations, Adequate Protection Obligations, or asserting any other cause of action against the Secured Lenders and/or with respect to the Loan Obligations, Adequate Protection Obligations, the Prepetition Collateral securing the Loan Obligations, or the Adequate Protection Collateral securing the Adequate Protection Obligations, or against any of the Secured Lenders (or if the Debtor supports any such motion, pleading, application or adversary proceeding commenced by any third party);

(vii)      the Debtor shall create, incur or suffer to exist any postpetition liens or security interests not otherwise permitted by this Interim Order (it being understood that any postpetition lien or security interest arising under or related to section 364 of the Bankruptcy Code are not otherwise permitted by this Interim Order), unless such postpetition liens or security interests have a value less than $5,000 in the aggregate at any one time.

(b)      Automatic Termination Events.  The Debtor's consensual use of the Cash

Collateral shall terminate automatically upon the occurrence of any of the following events (the

"Automatic Termination Events" and, together with the Optional Termination Events, the

"Termination Events"):

(i)      entry of an order dismissing or converting this Chapter 11 case to a case under chapter 7 of the Bankruptcy Code;

(ii)     entry of an order charging any of the Prepetition Collateral or Adequate Protection Collateral under sections 506(c) or 552(b) of the Bankruptcy Code or any other principle in law or equity;

(iii)    entry of an order (or orders) granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code providing relief to any entity (or entities) other than the Secured Lenders in an amount greater than $50,000 in the aggregate with respect to the Prepetition Collateral or the Adequate Protection Collateral without the written consent of the Secured Lenders;

(iv)    entry of an order mandating the appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers relating to the operation of the Debtor's business in this chapter 11 case;

(v)     The entry of an order reversing, staying or otherwise modifying in any way the terms of this Interim Order.

17.    *Remedies upon Occurrence of the Termination Date.*  The Debtor shall promptly provide notice to the Administrative Agent (with a copy to counsel for the Committee (if any) and the U.S. Trustee) upon the occurrence of any acts or omissions that may give rise to a Termination Event.  Upon the occurrence of (a) with respect to the Optional Termination Events, the date upon which such Optional Termination Event becomes effective, after taking into account the applicable cure or waiver period, if any, and (b) with respect to the Automatic Termination Events, the date upon which such Automatic Termination Event becomes effective (such date described in (a) and (b), the "Termination Date"), in order to exercise remedies, the Secured Lenders shall be required to file a motion with the Court seeking emergency relief from the automatic stay on at least five (5) business days' written notice to counsel to the Debtor, counsel to any Committee (if appointed), and the U.S. Trustee of the Secured Lenders' intent to exercise its rights and remedies (the "Remedies Notice Period"); *provided*, *however*, that during the Remedies Notice Period, the Debtor and the Committee may seek an emergency hearing before the Court to contest solely whether a Default has occurred.

18.     *Reservation of Rights.*  Notwithstanding any other provision hereof, the grant of adequate protection to the Secured Lenders pursuant hereto is without prejudice to the right of the Secured Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Secured Lenders, under the Loan Documents or in equity or law, and the Secured Lenders expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Loan Documents and/or equity or law in connection with all Termination Events and Defaults (as defined in the Loan Documents and whether arising prior to or after the Petition Date).  The entry of this Interim Order and the grant of adequate protection to the Secured Lenders shall be without prejudice to the rights of the Debtor to, following the occurrence of the Termination Date, seek authority to use Cash Collateral without the consent of the Secured Lenders.

19.     *Modification of Automatic Stay.*  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit (a) the Debtor to grant the Adequate Protection Liens and the Adequate Protection Claims, and to take all appropriate action to ensure that the Adequate Protection Liens granted thereunder are perfected and maintain the priority set forth herein, (b) the Debtor to pay all amounts referred to, required under, in accordance with, and subject to this Interim Order, and (c) the implementation of the terms of this Interim Order.

20.     *Perfection of Adequate Protection Liens.*

(a)     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any

jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, real property mortgage or security agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Secured Lenders to the priorities granted herein.

(b)     Notwithstanding the foregoing, the Administrative Agent, acting on behalf of the Secured Lenders, is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the Administrative Agent shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order. If the Administrative Agent determines to file any financing statements, notice of liens or similar instruments, the Debtor will cooperate and assist in any such filings as reasonably requested by the Administrative Agent, and the automatic stay shall be modified to allow such filings.

(c)     A certified copy of this Interim Order may, in the discretion of the Administrative Agent acting on behalf of the Secured Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(d)     The Debtor shall execute and deliver to the Administrative Agent all such agreements, financing statements, instruments and other documents as such agent may reasonably request to evidence, confirm, validate or perfect the applicable Adequate Protection Liens.

(e)     Effective upon entry of a final order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by Debtor in favor of the Secured Lenders in accordance with the terms of the Loan Documents or this Interim Order.

21.     *Reversal, Stay, Modification or Vacatur*.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect the rights and priorities of the Secured Lenders granted pursuant to this Interim Order.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral (including the Cash Collateral) or any Adequate Protection Obligations incurred, or Adequate Protection Liens granted, by Debtor (as applicable) hereunder, as the case may be, prior to the actual receipt of written notice by the Administrative Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Secured Lenders shall be entitled, as applicable, to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all applicable uses of the Prepetition Collateral (including the Cash Collateral) and all Adequate Protection Obligations and Adequate Protection Liens, as set forth herein.

22.    *Binding Effect; Successors and Assigns.*  Except as otherwise expressly set forth herein, the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in this chapter 11 case, including, without limitation, the Secured Lenders, any Committee, and the Debtor and its respective successors and assigns (including any Trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the Secured Lenders and the Debtor and their respective successors and assigns, *provided* that, except to the extent expressly set forth in this Interim Order, the Secured Lenders shall have no obligation to permit the use of the Prepetition Collateral (including the Cash Collateral) or extend any financing to any Trustee or similar responsible person appointed for the estate of Debtor.

23.    *Final Hearing.*  The Final Hearing, is set for August  13 , 2020 at  3:15  p  m. (prevailing Central Time) before this Court.  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections upon: (a) the Debtor, 1835A Kramer Lane, Suite 100, Austin, Texas 78758; (b) proposed counsel to the Debtor, Jackson Walker L.L.P., 1401 McKinney Street, Suite 1900, Houston, Texas 77010 (Attention: Matthew D. Cavenaugh); (c) counsel to the Secured Lenders, Cole Schotz P.C., 301 Commerce Street, Suite 1700, Fort Worth, TX 76102 (Attention:  Michael D. Warner); (d) the Office of the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002; (e) the entities on the Consolidated List of Creditors Holding the 20 largest unsecured claims filed pursuant to Bankruptcy Rule 1007(d) or counsel to any statutory committee appointed in this chapter 11 case; and (f) all parties entitled to notice pursuant to Local Rule 9013, in each case to allow actual receipt by the foregoing no later than August  6   , 2020 at 4:00 p.m. (prevailing Central Time).  Any objection shall set forth in

writing and with particularity the factual and legal bases of the objection.  If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

24.     *Survival.*

(a)     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any plan of reorganization in any of this chapter 11 case, (ii) converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing this chapter 11 case or any successor case, or (iv) pursuant to which this Court abstains from hearing this chapter 11 case or any successor case.

(b)     The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the Secured Lenders, pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in this case, in any successor case, or following dismissal of this case or any successor case, and shall maintain their priority as provided by this Interim Order until all of the Loan Obligations and the Adequate Protection Obligations have been indefeasibly paid in full.  The terms and provisions concerning the releases of the Secured Lenders shall continue in this chapter 11 case, in any successor case, following dismissal of this chapter 11 case or any successor case, termination of this Interim Order, and/or the indefeasible repayment of the Loan Obligations and the Adequate Protection Obligations.

25.     *No Third-Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

26.     *Controlling Effects of Interim Order.*  To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control.

27.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness (including, without limitation, under Bankruptcy Rule 6004(h)) of this Interim Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

28.     *Headings.*  The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

29.     *Effect of this Interim Order.*  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable effective as of the Petition Date immediately upon entry hereof.

30.     *Jurisdiction*. This Court shall retain jurisdiction to enforce the terms of this Interim Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

**Signed:  July 30, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## <u>Exhibit A</u>

**28 Day Budget**

Volusion, LLC
DIP Cash Flow Forecast
July 28, 2020

| Short-Term Cash Flow Forecast ($000s) | | | | | | | | | | | | | | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | Forecast 1 | Forecast 2 | Forecast 3 | Forecast 4 | Forecast 5 | Forecast 6 | Forecast 7 | Forecast 8 | Forecast 9 | Forecast 10 | Forecast 11 | Forecast 12 | Forecast 13 | Total |
| Week-Ending | 2-Aug | 9-Aug | 16-Aug | 23-Aug | 30-Aug | 6-Sep | 13-Sep | 20-Sep | 27-Sep | 4-Oct | 11-Oct | 18-Oct | 25-Oct | 13-Weeks |
| *Cash Receipts* | | | | | | | | | | | | | | |
| Credit Card Receipts: | $570 | $138 | $695 | $500 | $490 | $484 | $651 | $494 | $495 | $485 | $651 | $493 | $494 | $6,639 |
| Other Checks and Receipts: | 11 | 39 | 9 | 9 | 9 | 39 | 9 | 9 | 9 | 39 | 9 | 9 | 9 | 207 |
| Transfers In & Funding: | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Receipts** | **580** | **177** | **704** | **508** | **499** | **523** | **660** | **503** | **503** | **524** | **660** | **502** | **503** | **6,846** |
| *Cash Disbursements* | | | | | | | | | | | | | | |
| Payroll | - | 559 | 0 | 534 | 0 | 534 | 0 | 534 | 0 | 534 | 0 | 534 | - | 3,231 |
| Payroll Benefits | - | 160 | 40 | - | 40 | 120 | 40 | - | 40 | 120 | 40 | - | 40 | 640 |
| Monthly Commissions and Bonuses | - | - | 25 | - | - | - | 25 | - | - | - | 25 | - | - | 75 |
| Credit Card Payments | - | - | - | 151 | - | - | - | 221 | - | - | - | 186 | - | 557 |
| Equipment | - | 4 | 1 | - | - | 4 | 1 | - | - | 4 | 1 | - | - | 16 |
| Insurance | - | - | - | 100 | - | - | - | - | - | - | - | - | - | 100 |
| Rent | - | - | 71 | - | - | 71 | - | - | - | 71 | - | - | - | 213 |
| Utilities | - | 21 | 11 | 13 | 9 | 61 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 193 |
| Google Cloud Platform | - | - | - | 217 | - | - | - | 217 | - | - | - | 217 | - | 651 |
| Other AP Payments | - | - | 41 | 549 | 172 | 203 | 152 | 126 | 159 | 202 | 160 | 128 | 163 | 2,055 |
| PO's | - | - | - | - | - | 200 | - | - | - | 200 | - | - | - | 400 |
| Taxes | - | - | - | - | - | 50 | - | - | - | 50 | - | - | - | 100 |
| US Trustee Fees | - | - | - | - | - | - | - | - | - | 13 | - | - | - | 13 |
| Restructuring Fees - Debtor Related | - | - | - | - | 263 | 188 | 60 | 60 | 60 | 128 | 60 | 310 | 60 | 1,189 |
| Restructuring Fees - Creditor Related | - | - | - | - | - | 150 | - | - | - | 125 | - | - | - | 275 |
| **Total Cash Disbursements** | **-** | **744** | **190** | **1,564** | **485** | **1,581** | **290** | **1,169** | **270** | **1,459** | **298** | **1,386** | **274** | **9,708** |
| **Net Cash Flow** | **580** | **(567)** | **514** | **(1,055)** | **14** | **(1,058)** | **370** | **(666)** | **233** | **(934)** | **362** | **(884)** | **229** | **(2,862)** |
| Beginning Cash Balance | 7,401 | 7,981 | 7,414 | 7,928 | 6,872 | 6,886 | 5,828 | 6,198 | 5,532 | 5,766 | 4,831 | 5,194 | 4,310 | 7,401 |
| **Ending Cash Balance** | **$7,981** | **$7,414** | **$7,928** | **$6,872** | **$6,886** | **$5,828** | **$6,198** | **$5,532** | **$5,766** | **$4,831** | **$5,194** | **$4,310** | **$4,539** | **$4,539** |

**Volusion, LLC**
**DIP Cash Flow Forecast**
**July 28, 2020**

| Short-Term Cash Flow Forecast ($000s) | | | | | |
|---|---|---|---|---|---|
| **Week**<br>**Week-Ending** | **Forecast 1**<br>**2-Aug** | **Forecast 2**<br>**9-Aug** | **Forecast 3**<br>**16-Aug** | **Forecast 4**<br>**23-Aug** | **Forecast Total**<br>**4-Weeks** |
| *Cash Receipts* | | | | | |
| Credit Card Receipts: | $570 | $138 | $695 | $500 | $1,902 |
| Other Checks and Receipts: | 11 | 39 | 9 | 9 | 67 |
| Transfers In & Funding: | - | - | - | - | - |
| **Total Cash Receipts** | **580** | **177** | **704** | **508** | **1,969** |
| *Cash Disbursements* | | | | | |
| Payroll | - | 559 | 0 | 534 | 1,093 |
| Payroll Benefits | - | 160 | 40 | - | 200 |
| Monthly Commissions and Bonuses | - | - | 25 | - | 25 |
| Credit Card Payments | - | - | - | 151 | 151 |
| Equipment | - | 4 | 1 | - | 5 |
| Insurance | - | - | - | 100 | 100 |
| Rent | - | - | 71 | - | 71 |
| Utilities | - | 21 | 11 | 13 | 46 |
| Google Cloud Platform | - | - | - | 217 | 217 |
| Other AP Payments | - | - | 41 | 549 | 590 |
| PO's | - | - | - | - | - |
| Taxes | - | - | - | - | - |
| US Trustee Fees | - | - | - | - | - |
| Restructuring Fees - Debtor Related | - | - | - | - | - |
| Restructuring Fees - Creditor Related | - | - | - | - | - |
| **Total Cash Disbursements** | **-** | **744** | **190** | **1,564** | **2,498** |
| **Net Cash Flow** | **580** | **(567)** | **514** | **(1,055)** | **(529)** |
| Beginning Cash Balance | 7,401 | 7,981 | 7,414 | 7,928 | 7,401 |
| **Ending Cash Balance** | **$7,981** | **$7,414** | **$7,928** | **$6,872** | **$6,872** |