**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

ENTERED
11/20/2020

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| VOLUSION, LLC[1] | § | Case No. 20-50082 (DRJ) |
|  | § |  |
| Debtor. | § |  |
|  | § |  |

**ORDER CONFIRMING THE DEBTOR'S COMBINED PLAN OF REORGANIZATION**
**AND  APPROVING ON A FINAL BASIS THE DISCLOSURE STATEMENT**
**OF VOLUSION, LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned Debtor having:

a.      commenced on July 27, 2020 (the "Petition Date"), this chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition in the United States Bankruptcy Court for the Southern District of Texas (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.      continued to operate its business and manage its properties as debtor in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c.      filed, on November 3, 2020, the *Combined Plan of Reorganization and Disclosure Statement of Volusion, LLC Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, the "Disclosure Statement," "Plan and Disclosure Statement" or "Plan") [Docket No. 103], a copy of which is attached hereto as **Exhibit A**[2] as amended, supplemented, or otherwise modified from time to time;

d.      obtained, on November 3, 2020, entry of the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtor's Proposed Plan of Reorganization; (III) Approving the Form of Ballots, and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* (the "Disclosure Statement Order") [Docket No. 108], which conditionally approved the Plan and Disclosure Statement for the Debtor, the solicitation procedures (the "Solicitation Procedures"), and the related notices, forms, and ballots (collectively, the "Solicitation Packages");

e.      caused the Solicitation Packages, the Notice of Hearing to Consider (A) the Adequacy of the Debtor's Disclosure Statement and (B) Confirmation of the

---

[1]   The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Volusion, LLC (9037). The Debtor's service address is 1835A Kramer Lane, Suite 100, Austin, TX 78758.

[2]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

Debtor's Chapter 11 Plan of Reorganization, and the deadline for objecting to confirmation of the Plan to be distributed beginning on or about November 4, 2020 through November 5, 2020, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Declaration of Kendra Gradney Regarding Service of Solicitation Materials* (the "Declaration of Service") [Docket No. 117]; and

f.      filed, on November 19, 2020, the *Declaration of Kendra Gradney Regarding Voting and Tabulation of Ballots Cast on the Combined Plan of Reorganization and Disclosure Statement of Volusion, LLC Pursuant to Chapter 11 of the Bankruptcy Code* (the "Final Voting Report") [Docket No. 116].

This Court having:

a.      entered the Disclosure Statement Order conditionally approving the Disclosure Statement on November 3, 2020;

b.      set November 18, 2020, at 5:00 p.m. (prevailing Central Time) as the deadline for voting on the Plan;

c.      set November 18, 2020, at 5:00 p.m. (prevailing Central Time) as the deadline for filing objections in opposition to the Disclosure Statement and Plan (the "Plan Objection Deadline");

d.      set November 20, 2020, at 10:00 a.m. (prevailing Central Time) as the date and time for the commencement of the hearing on final approval of the Disclosure Statement and the Confirmation Hearing on the Plan (the "Confirmation Hearing") in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.      reviewed the Plan, Disclosure Statement, the Final Voting Report, and all pleadings, exhibits, declarations, affidavits, statements, responses, and comments regarding the Disclosure Statement and confirmation of the Plan, including all objections, statements, and reservations of rights filed by parties in interest on the docket of this Chapter 11 Case;

f.      held the Confirmation Hearing;

g.      heard the statements and arguments made by counsel in respect of confirmation of the Plan and final approval of the Disclosure Statement;

h.      considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings and other evidence presented at the Confirmation Hearing;

i.      made rulings on the record at the Confirmation Hearing held on November 20, 2020;

j.       overruled any and all objections to the Disclosure Statement, the Plan, and to confirmation of the Plan, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

k.       taken judicial notice of all papers and pleadings filed in this Chapter 11 Case.

NOW, THEREFORE, this Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation of the Plan and final approval of the Disclosure Statement have been adequate and appropriate as to all parties affected or to be affected by the Disclosure Statement and Plan and the transactions contemplated thereby, and the Bankruptcy Court having considered the record in this Chapter 11 Case, the Final Voting Report, the compromises and settlements embodied in and contemplated by the Plan, the arguments regarding confirmation of the Plan, the evidence regarding confirmation of the Plan, and the Confirmation Hearing having been held on November 20, 2020; and after due deliberation, and based upon the additional findings of fact and conclusions of law on the record pursuant to Bankruptcy Rule 7052, which are incorporated herein, it is HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND HELD THAT:

## A.       Jurisdiction and Venue

2.       Venue in this Court was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334. This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed and to enter a final order with respect thereto.

**B.**     **Commencement of this Chapter 11 Case**

3.     On the Petition Date, the Debtor commenced this Chapter 11 Case.  The Debtor has operated its business and managed its properties as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case.

**C.**     **Burden of Proof—Confirmation of the Plan**

4.     The Debtor, as a proponent of the Plan, has met its burden of proving the applicable elements of §§ 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Plan.  In addition, and to the extent applicable, the Plan is confirmable under a clear and convincing evidentiary standard.

**D.**     **Notice**

5.     As evidenced by the Declaration of Service and the Final Voting Report, the Debtor provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Confirmation Hearing, and all of the other materials distributed by the Debtor in connection with the confirmation of the Plan in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, 3020(b), the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and the procedures set forth in the Disclosure Statement Order.  The Debtor provided due, adequate, and sufficient notice of the Plan Objection Deadline, the Confirmation Hearing, and any applicable bar dates and hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order.

**E.**     **Voting**

6.     Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy

Procedure, and the orders of this Court.   Class 2, Class 3, Class 5, Class 7 and Class 8 are unimpaired, presumed to accept, and not entitled to vote on the Plan.  Class 1, Class 4 and Class 6 are impaired under the Plan and are entitled to vote on the Plan (the "Voting Classes").  All Voting Classes voted to accept the Plan.  [*See* Docket No. 116].

**F.      Approval of Disclosure Statement and Confirmation of the Plan**

7.      The Disclosure Statement is APPROVED on a final basis under Bankruptcy Code § 1125, and all objections, statements, and reservations of rights with respect to the Disclosure Statement are overruled.

8.      The Plan, a copy of which is attached hereto as **Exhibit A**, is CONFIRMED pursuant to § 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

9.      Any resolution or disposition of objections to confirmation of the Plan explained or otherwise ruled upon by this Court on the record at the Confirmation Hearing is hereby incorporated by reference.  All parties have had a full and fair opportunity to be heard on all issues raised by objections to confirmation of the Plan or approval of the Disclosure Statement.  Any and all objections to the confirmation of the Plan or approval of the Disclosure Statement that have not been withdrawn or resolved as of the entry of this Confirmation Order are hereby overruled on their merits.  All withdrawn objections are deemed withdrawn with prejudice.

10.     The exhibits to the Plan are integral to the Plan and are approved by the Bankruptcy Court, and the Debtor is authorized and directed to take all actions required or appropriate under the Plan and in all documents related to the Plan and the transactions contemplated thereby, including, for the avoidance of doubt, the transactions described more fully in Article VII of the Plan.

11.     The terms of the Plan and any exhibits thereto are incorporated herein by reference, and are an integral part of this Confirmation Order.  The terms of the Plan, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Plan Effective Date (unless different date(s) is/are specified in the applicable foregoing documents, in which case the applicable terms shall be effective and binding on such date(s)) on the Debtor and any holder of a Claim or Interest, whether or not the Claim or Interest is impaired under the Plan and whether or not the holder of such Claim or Interest has accepted the Plan and any other party in interest. The failure to specifically include or refer to any particular article, section, or provision of the Plan, the exhibits thereto, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

12.     The compromises and settlements set forth in the Plan (including exhibits thereto) are approved, and will be effective immediately and binding on all parties in interest on the Effective Date (unless different date(s) is/are specified in the applicable foregoing documents, in which case the applicable terms shall be effective and binding on such date(s)).

13.     On the Effective Date (unless different date(s) is/are specified in the applicable foregoing documents, in which case the applicable terms shall be effective and binding on such date(s)), the Debtor is authorized to consummate the Plan and the transactions contemplated thereby, including the distributions of cash and payment of fees contemplated thereby.

**G.      Assumption, Assignment and Rejection of Executory Contracts and Unexpired Leases**

14.     Pursuant to Article IX of the Plan, each of the Debtor's executory contracts and unexpired leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court shall be deemed assumed as of the Effective Date in accordance with the provisions and requirements of §§ 365 and 1123 of the Bankruptcy Code, except for any executory contract or

unexpired lease (1) that is the subject of a separate motion or notice to assume or reject filed by the Debtor and pending as of the Confirmation Hearing or (2) that previously expired or terminated pursuant to its own terms.

15.     Except as otherwise previously approved by an order of the Bankruptcy Court, entry of this Confirmation Order shall constitute an order, pursuant to §§ 365 and 1123 of the Bankruptcy Code, approving the assumptions and assignments, and the rejections of such executory contracts and unexpired leases as set forth in the preceding paragraph.  Unless otherwise indicated herein, assumptions and assignments, and rejections, of executory contracts and unexpired leases pursuant to this Plan shall be effective as of the Effective Date.

16.     To the maximum extent permitted by law, to the extent any provision (including, without limitation, any "change of control" provision) in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease, then such provision is hereby deemed modified such that the assumption and assignment contemplated by the Plan shall not entitle the counterparty thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto, except for asserting and pursuing payment of a Cure Cost consistent with the Plan.  Notwithstanding anything to the contrary in the Plan, the Debtor reserves the right to alter, amend, modify, or supplement the Plan prior to the Effective Date on no less than three days' notice to any counterparty to an executory contract or unexpired lease affected thereby.

17.     With respect to any executory contract or unexpired lease assumed by the Debtor, any Cure Cost amount shall be satisfied, pursuant to § 365(b)(1) of the Bankruptcy Code, by payment of the Allowed Amount of such Cure Cost in Cash on the Effective Date, subject to the

limitations described below, or on such other terms as the parties to any particular executory contract or unexpired lease may otherwise agree.  In the event of a dispute regarding: (1) the Allowed Amount of any Cure Cost; (2) the ability of the Debtor or Reorganized Debtor, as applicable, to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed; or (3) any other matter pertaining to assumption, no payments on account of the Cure Cost shall be made until such dispute is resolved by a Final Order.

18.     Payment of an Allowed Cure Cost upon the assumption and assignment of any executory contract or unexpired lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, under such executory contract or unexpired lease occurring at any time prior to the effective date of the assumption and assignment.

19.     All Claims arising from the rejection of executory contracts or unexpired leases must be filed with Court and served upon the Debtor's counsel within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection.  Any Claim arising from the rejection of executory contracts or unexpired leases that becomes an Allowed Claim is classified and shall be treated as a Class 5 General Unsecured Claim.  **Holders of Claims arising from the rejection of executory contracts and unexpired leases that are required to file but with respect to which no proof of Claim is timely filed will be forever barred from asserting a Claim against the Debtor, the Reorganized Debtor, the Estate or the property of any of the foregoing, unless otherwise expressly allowed by the Bankruptcy Court.**

**H.**     **Releases by the Debtor**

20.     The following release by the Debtor in Section XI.D of the Plan is approved:

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor, the Reorganized Debtor, and its Estate from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtor, that the Debtor, the Reorganized Debtor, or the Estate (as applicable) would have been legally entitled to assert in its own right or on behalf of the holder of any Claim against, or Interest in, the Debtor or that any holder of any Claim against, or Interest in, the Debtor could have asserted on behalf of the Debtor, based on or relating to, or in any manner arising from, in whole or in part: the Debtor (including the management, governance, ownership, or operation thereof), any securities issued by the Debtor and the ownership thereof, the Debtor's restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtor), the filing, administration and prosecution of the Chapter 11 Case, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Forbearance Agreement and any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Forbearance Agreement, the Chapter 11 Case, the filing, administration, and prosecution of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party under the Plan, or any document, instrument, or agreement (including the Forbearance Agreement) executed to implement the Plan or the Restructuring or (b) any individual from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor's release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor's release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to

facilitating the Restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor; (c) in the best interests of the Debtor and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor, the Reorganized Debtor, or the Debtor's Estate asserting any Claim or Cause of Action released pursuant to the Debtor's release.

I.    **Releases by the Releasing Parties**

21.    The following release by the Releasing Parties in Section XI.E of the Plan is

approved:

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have released and discharged each of the Debtor, Reorganized Debtor, and each other Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtor, the Reorganized Debtor, or the Estate (as applicable), that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, governance, ownership or operation thereof), any securities issued by the Debtor and the ownership thereof, the Debtor's restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtor), the Chapter 11 Case, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Forbearance Agreement, or any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Forbearance Agreement, the Chapter 11 Case, the filing, administration and prosecution of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity, including the Debtor and the Reorganized Debtor, under the Plan or any document, instrument, or agreement (including the Forbearance Agreement) executed to implement the Plan or (b) any individual from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Releases, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Releases are: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released; (e) in the best interests of the Debtor and its Estate; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action.

**J.     Discharge of the Debtor**

22.     The following discharge of the Debtor in Section XI.F of the Plan is approved:

Pursuant to § 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees/representatives of the Debtor prior to the Effective Date or that arise from a termination of employment, termination of retention of a professional or quasi-professional, or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, in this Chapter 11 Case whether or not: (a) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is filed or deemed filed pursuant to § 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to § 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. Subject to the terms of the Plan and the Confirmation Order, any default by the Debtor with respect to any Claim or Interest that existed immediately prior to or on account of the filing of this Chapter 11 Case shall be deemed satisfied on the Effective Date. Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, its Estate, the Reorganized Debtor and all successors thereto. As provided in § 524 of the Bankruptcy Code, subject to the terms of the Plan, such discharge shall void any judgment against the Debtor, its Estate, the Reorganized Debtor or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged,

and operates as an injunction against the prosecution of any action against the Reorganized Debtor or its property and assets to the extent it relates to a discharged Claim or Interest.

**K.      Exculpation**

23.     The following exculpation of the Exculpated Parties in Section XI.C of the Plan is approved:

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the filing, administration and prosecution of the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing of the Disclosure Statement, the Plan, the Forbearance Agreement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Case, the filing, administration and prosecution of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**L.      Injunction**

24.     The following injunction in Section XI.B of the Plan is approved:

The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtor, the Reorganized Debtor and their assets and properties and any proceedings not yet instituted against the Debtor, the Reorganized Debtor or their assets and properties, except as otherwise provided in the Plan. Except as otherwise

expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtor or its assets and properties are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor, or their assets and properties, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or the Reorganized Debtor, or their assets and properties, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Reorganized Debtor, or their assets and properties, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtor or the Reorganized Debtor, or the property of the Debtor, the Estate or the Reorganized Debtor with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtor, the Estate or the Reorganized Debtor except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.

## M.    Implementation of Other Necessary Documents and Agreements

25.    The Debtor or Reorganized Debtor, as applicable, is authorized, without further notice to, or action, order or approval of this Court or any other Person, to execute and deliver all agreements, documents, instruments and certificates relating to such documents and agreements and to perform their obligations thereunder, including, without limitation, to pay all fees, costs and expenses thereunder in accordance with the Plan.  The terms and conditions of such documents and agreements are reaffirmed or approved, as applicable, and shall, upon completion of documentation and execution, be valid, binding and enforceable.

**N.      No Action Required**

26.      Under § 1142(b) of the Bankruptcy Code and applicable nonbankruptcy law, no action of the managers or members of the Debtor is required to authorize the Debtor to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

**O.      Enforceability of Plan Documents**

27.      Pursuant to the provisions of this Confirmation Order and §§ 1123(a) and 1142(a) of the Bankruptcy Code, the Plan, the Disclosure Statement, this Confirmation Order, and all implementing Plan documents (collectively, the "Plan Documents") shall apply and be enforceable notwithstanding any otherwise applicable bankruptcy law.

**P.      Preservation of Claims and Rights**

28.      Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with § 1123(b) of the Bankruptcy Code, the Reorganized Debtor will retain and may enforce any Claims, demands, Rights of Action and Causes of Action that the Estate may hold against any Person to the extent not released under the Plan, this Confirmation Order, or otherwise, including the Avoidance Actions.  The Reorganized Debtor may pursue any such retained Claims, demands, Rights of Action or Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor.  The non-disclosure or non-discussion of any particular Claim, demand, Right of Action or Cause of Action is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, demand, Right of Action or Cause of Action.  The Debtor intends to preserve all such Claims, demands, Rights of Action and Causes of Action as Avoidance Actions.

**Q.     Waiver of 14-Day Stay**

29.     Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry, and not subject to any stay.

   **Signed:  November 20, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit A to the Confirmation Order**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VOLUSION, LLC[1] | ) Case No. 20-50082 (DRJ) |
| | ) |
| Debtor. | ) |
| | ) |

**COMBINED PLAN OF REORGANIZATION AND**
**DISCLOSURE STATEMENT OF VOLUSION, LLC**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
JACKSON WALKER L.L.P.
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
Email:  jwertz@jw.com

COUNSEL FOR THE DEBTOR AND
DEBTOR IN POSSESSION

---

[1]  The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Volusion, LLC (9037). The Debtor's service address is 1835A Kramer Lane, Suite 100, Austin, TX 78758.

## **TABLE OF CONTENTS**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME ...................5

    A.  Defined Terms....................................................................................................................5
    B.  Rules of Interpretation and Computation of Time.........................................................12

ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS ...............................................................12

    A.  Administrative Claims ....................................................................................................12
    B.  Final Fee Applications and Payment of Professional Fee Claims ..................................13
    C.  Allocation and Estimation of Professional Fees and Expenses .....................................13
    D.  Post-Confirmation Date Fees and Expenses...................................................................13
    E.  Priority Tax Claims ........................................................................................................13
    F.  Statutory Fees .................................................................................................................13

ARTICLE III DEBTOR'S HISTORY AND THE BANKRUPTCY CASE .............................................14

    A.  The Debtor's History......................................................................................................14
    B.  Liabilities and Claims of the Debtor ..............................................................................15
    C.  The Bankruptcy Case .....................................................................................................16
    D.  Main Bankruptcy Events ................................................................................................17

ARTICLE IV CLASSIFICATION OF CLAIMS AND INTERESTS .....................................................18

ARTICLE V IMPAIRMENT OF CLASSES AND RESOLUTION OF CLAIM CONTROVERSIES ...................18

    A.  Impaired Classes ............................................................................................................18
    B.  Unimpaired Classes ........................................................................................................19
    C.  Controversy Concerning Classification, Impairment or Voting Rights..........................19

ARTICLE VI CLASSIFICATION AND TREATMENT OF CLAIMS ..................................................19

    A.  Treatment of Impaired Classes.......................................................................................19
    B.  Treatment of Unimpaired Classes ..................................................................................21

ARTICLE VII PROVISIONS FOR IMPLEMENTATION OF THE PLAN ...........................................22

    A.  General Settlement of Claims, Interests, and Causes of Action .....................................22
    B.  Closing ...........................................................................................................................22
    C.  Employee and Retiree Benefits ......................................................................................22
    D.  Funding of the Case .......................................................................................................22
    E.  Forbearance Agreement ..................................................................................................22
    F.  Continuation of Operations of the Debtor .....................................................................23
    G.  Vesting of Assets ...........................................................................................................23
    H.  Continued Corporate Existence ......................................................................................23
    I.  Retention of Investment Banker.....................................................................................24
    J.  Sale of the Debtor's Assets ............................................................................................24
    K.  *Ad Valorem* Taxes .......................................................................................................24
    L.  General Powers of the Reorganized Debtor ...................................................................24

ARTICLE VIII CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF DISPUTED
    CLAIMS/INTERESTS AND PROCEDURES FOR ASSERTING CLAIMS ..............................25

    A.  Objection Process ..........................................................................................................25
    B.  Filing of Claims and Causes of Action..........................................................................26
    C.  Disallowance of Late Filed Proofs of Claim ..................................................................26
    D.  Provisions Governing Distributions ...............................................................................26

ARTICLE IX EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................................26

    A.  Executory Contracts and Unexpired Leases...................................................................26
    B.  Assumed Executory Contracts and Unexpired Leases ...................................................26

C. Claims Based on Rejection of Executory Contracts or Unexpired Leases ...................................... 27
D. Indemnification ......................................................................................................................... 27
E. Insurance Policies ..................................................................................................................... 27
F. Reservation of Rights ................................................................................................................ 28

ARTICLE X EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS ......................... 28

A. Impaired Classes to Vote ........................................................................................................... 28
B. Acceptance by Class .................................................................................................................. 28
C. Reservation of Cramdown Rights .............................................................................................. 28

ARTICLE XI SETTLEMENT, RELEASE, INJUNCTION AND EFFECT OF CONFIRMATION ......... 28

A. Legally Binding Effect ............................................................................................................... 28
B. Injunction ................................................................................................................................. 28
C. Exculpation. ............................................................................................................................. 29
D. Releases by the Debtor. ............................................................................................................. 29
E. Releases by the Releasing Parties. ............................................................................................. 30
F. Discharge of the Debtor ............................................................................................................. 31
G. Continuation of Anti-Discrimination Provisions of the Bankruptcy Code ................................... 31
H. Preservation of Claims and Rights ............................................................................................. 31

ARTICLE XII CONFIRMATION OF THE PLAN ............................................................................. 32

A. Confirmation Hearing ............................................................................................................... 32
B. Statutory Requirements for Confirmation of the Plan ................................................................. 32
C. Cramdown ................................................................................................................................ 34
D. Conditions Precedent to Effective Date ..................................................................................... 35
E. Annulment of Plan if Conditions Not Waived or Satisfied .......................................................... 35
F. Retention of Jurisdiction by Bankruptcy Court .......................................................................... 35

ARTICLE XIII NOTICE PROVISIONS ............................................................................................ 36

A. Notices ..................................................................................................................................... 36
B. Limitation on Notice ................................................................................................................. 37

ARTICLE XIV COMPROMISES AND SETTLEMENTS .................................................................. 37

A. Effect of Confirmation Order .................................................................................................... 37

ARTICLE XV MISCELLANEOUS PROVISIONS ............................................................................ 37

A. Bar Date for Administrative Claims ........................................................................................... 37
B. Objections to Administrative Claims .......................................................................................... 38
C. Payment of Professional Claims ................................................................................................ 38
D. Payment of United States Trustee Fees ...................................................................................... 38
E. Employee Benefits Plans ........................................................................................................... 38
F. Satisfaction of Liabilities .......................................................................................................... 38
G. Compliance with Tax Requirements ........................................................................................... 38
H. Amendment of the Plan ............................................................................................................. 38
I. Timing of Distributions ............................................................................................................. 38
J. Enforcement of Subordination Agreements/Settlement Agreements ............................................ 39
K. Filing of Documents in Public Records ...................................................................................... 39
L. Right to Seek Further Orders ..................................................................................................... 39
M. Regulatory Approvals ............................................................................................................... 39
N. Withdrawal of Plan ................................................................................................................... 39
O. Due Authorization by Creditors ................................................................................................. 39
P. Filing of Additional Documentation ........................................................................................... 39
Q. Implementation ......................................................................................................................... 39
R. Substantial Consummation ........................................................................................................ 40
S. Further Effect of Confirmation .................................................................................................. 40
T. Reservation of Claims ............................................................................................................... 40

U.  Dates ........................................................................................................................... 40
V.  Governing Law ............................................................................................................ 40
W.  Conflict ......................................................................................................................... 40
X.  Severability .................................................................................................................. 40
Y.  Setoffs .......................................................................................................................... 40
Z.  Further Action .............................................................................................................. 41
AA. Other Considerations ................................................................................................... 41
BB. Feasibility of the Plan ................................................................................................. 41
CC. Alternative Plans of Reorganizations ......................................................................... 41
DD. Liquidation under Chapter 7 ........................................................................................ 41
EE. Risk Factors ................................................................................................................. 41
FF. Taxation ....................................................................................................................... 42

ARTICLE XVI CAUSES OF ACTION ................................................................................... 43

A.  Preferences .................................................................................................................. 43
B.  Fraudulent Transfers .................................................................................................... 43

ARTICLE XVII VOTING PROCEDURES AND REQUIREMENTS ..................................... 44

A.  Ballots and Voting Deadline ....................................................................................... 44
B.  Creditors Entitled to Vote ............................................................................................ 44
C.  Voting Procedures ........................................................................................................ 45
D.  Vote Required for Class Acceptance ........................................................................... 45
E.  Cramdown and Withdrawal of the Plan ....................................................................... 45

ARTICLE XVIII CONCLUSION, RECOMMENDATION, AND CONFIRMATION REQUEST ......................... 45

**TABLE OF EXHIBITS**

Exhibit A                    Forbearance Agreement

Exhibit B [SEALED][2]        Sale Milestones

Exhibit C                    October Monthly Operating Report

---

[2] Exhibit B will be filed under seal, to protect the integrity of the Sale process to be undertaken by the Reorganized Debtor.

## INTRODUCTION AND DISCLAIMERS

Volusion, LLC (the "Debtor"), in the above-captioned case proposes the following Combined Plan of Reorganization and Disclosure Statement of the Debtor Pursuant to Chapter 11 of the Bankruptcy Code (this "Disclosure Statement," "Plan and Disclosure Statement" or "Plan") for the resolution of the outstanding claims against and equity interests in the Debtor. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. Other agreements and documents supplement this Plan and have been or will be filed with the Bankruptcy Court. Such supplemental agreements and documents are referenced in this Plan and Disclosure Statement and will be available for review.

This Plan and Disclosure Statement references certain events, statutory provisions, and documents related to the Plan and Disclosure Statement that may be attached and are incorporated by reference. Although the Debtor believes that such information is fair and accurate, this information is qualified in its entirety to the extent that it does not set forth the entire text of such documents or statutory provisions or every detail of such events. The information contained herein or attached hereto is made only as of the date of this Plan and Disclosure Statement. There can be no assurances that the statements contained herein will be correct at any time after this date.

This Plan and Disclosure Statement has been prepared in accordance with sections 1123 and 1125 of the Bankruptcy Code and Bankruptcy Rule 3016 and not necessarily in accordance with federal or state securities laws or other nonbankruptcy laws. This Plan and Disclosure Statement has not been approved or disapproved by the United States Securities and Exchange Commission (the "SEC"), any state securities commission or any securities exchange or association, nor has the SEC, any state securities commission or any securities exchange or association passed upon the accuracy or adequacy of the statements contained herein. No other governmental or other regulatory agency approvals have been obtained as of the date of the mailing or e-mailing of this Plan and Disclosure Statement.

The Debtor submits this Plan and Disclosure Statement, as may be amended from time to time, under § 1125 of the Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to all of the Debtor's known Creditors and Interest Holders entitled to vote on the Plan.

The purpose of this Plan and Disclosure Statement is to provide adequate information to enable Creditors and Interest Holders who are entitled to vote on the Plan to arrive at a reasonably informed decision in exercising their respective right to vote on the Plan. All section references in this Plan and Disclosure Statement are to the Bankruptcy Code unless otherwise indicated.

Every effort has been made to inform Creditors and Interest Holders how various aspects of the Plan affect their respective positions. If any questions arise, the Debtor urges you to contact the Debtor's counsel. The Debtor's counsel will attempt to resolve your questions. You are also encouraged to consult with your own counsel. The counsel for the Debtor is likewise available to answer any questions that your counsel may have regarding this Plan and Disclosure Statement.

In preparing this Plan and Disclosure Statement, the Debtor relied on financial data derived from its books and records or that was otherwise made available to it at the time of such preparation and on various assumptions regarding the Debtor's business. Although the Debtor believes that such financial information fairly reflects the financial condition of the Debtor as of the date hereof and that the assumptions regarding future events reflect reasonable business judgments, no representations or warranties are made as to the accuracy of the financial information contained herein or assumptions regarding the Debtor's business and its future results and operations. Except where specifically noted, the financial information contained in this Plan and Disclosure Statement and in its Exhibits has not been audited by a certified public accountant and has not been prepared in accordance with generally accepted accounting principles in the United States or any other jurisdiction.

This Plan and Disclosure Statement does not constitute, and may not be construed as, an admission of fact, liability, stipulation or waiver. The Debtor may object to claims after the Confirmation Date or Effective Date of the Plan irrespective of whether this Plan and Disclosure Statement identifies any such objections to Claims.

The Debtor is making the statements and providing the financial information contained in this Plan and Disclosure Statement as of the date hereof, unless otherwise specifically noted. Although the Debtor may subsequently update the information in this Plan and Disclosure Statement, the Debtor has no affirmative duty to do so, and expressly disclaims any duty to publicly update any forward-looking statements, whether as a result of new information, future events or otherwise. Holders of Claims and Interests reviewing this Plan and Disclosure Statement should not infer that, at the time of their review, the facts set forth herein have not changed since this Plan and Disclosure Statement was filed. Information contained herein is subject to completion or amendment. The Debtor reserves the right to file an amended plan and disclosure statement.

Confirmation and effectiveness of the Plan are subject to certain material conditions precedent described in Article XII. There is no assurance that the Plan will be confirmed or, if confirmed, that such material conditions precedent will be satisfied or waived. You are encouraged to read this Plan and Disclosure Statement in its entirety, including, but not limited to Section XV.EE entitled "Risk Factors," before submitting your ballot to vote to accept or reject the Plan.

The Debtor has not authorized any entity to give any information about or concerning the Plan and Disclosure Statement other than that which is contained in this Plan and Disclosure Statement. The Debtor has not authorized any representations concerning the Debtor or the value of its property other than as set forth in this Plan and Disclosure Statement.

If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, all holders of Claims and Interests (including those holders of Claims or Interests who are not entitled to vote on the Plan) will be bound by the terms of the Plan and any transactions contemplated thereby.

The contents of this Plan and Disclosure Statement should not be construed as legal, business or tax advice. Each Creditor or holder of an Interest should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Interest. This Plan and Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

Nothing contained herein shall constitute an admission of any fact or liability by any party or be deemed evidence of the tax or other legal effects of the Plan on the Plan proponents or on holders of Claims or Interests.

## THE SOLICITATION

This Plan and Disclosure Statement is submitted by the Debtor to be used in connection with the solicitation of votes on the Plan describing the terms of the reorganization of the Debtor.

The Debtor requested that the Bankruptcy Court hold a hearing on approval of this Plan and Disclosure Statement to determine whether this Plan and Disclosure Statement contains "adequate information" in accordance with § 1125.[1] Pursuant to § 1125(a)(1), "adequate information" is defined as "information of a kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the Debtors and the condition of the Debtors' books and records … that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant Class to make an informed judgment about the plan …." All holders of Claims and Interests are encouraged to read and carefully consider this Plan and Disclosure Statement in its entirety before voting to accept or reject the Plan.

In making a decision to accept or reject the Plan, each holder of a Claim or Interest must rely on its own examination of the Debtor as described in this Plan and Disclosure Statement, including the merits and risks involved; thus, this Plan and Disclosure Statement shall not be construed to be providing any legal, business, financial or tax advice. Each holder of a Claim or Interest should consult with his, her, or its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan and Disclosure Statement, or the transactions contemplated thereby. Additionally, confirmation and consummation of the Plan are subject to conditions precedent that could lead to delays in consummation of the Plan. There can be no assurance that each of the conditions precedent

---

[1] All citations to "§" reference the applicable section of the Bankruptcy Code.

will be satisfied or waived or that the Plan will be consummated. Even after the Effective Date, distributions under the Plan may be subject to delay so that Disputed Claims can be resolved.

**The Debtor supports confirmation of the Plan and recommends all holders of Claims entitled to vote on the Plan to vote to accept the Plan.**

The Confirmation Hearing to consider the final approval of the Plan and Disclosure Statement and confirmation of the Plan has been set for November 20, 2020, at 10:00 a.m. Central Time.

Objections to the final approval of the Plan and Disclosure Statement or objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the Debtor to ensure receipt on or before 5:00 p.m. Central Time, on November 18, 2020. Bankruptcy Rule 3007 governs the form of any such objection.

## ANSWERS TO COMMONLY ASKED QUESTIONS

**What is chapter 11 Bankruptcy?**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code that allows financially distressed businesses to reorganize their debts or to liquidate their assets in a controlled fashion. The commencement of a chapter 11 case creates an "estate" containing all of the legal and equitable interests of the debtor in property as of the date the bankruptcy case is filed. During a chapter 11 bankruptcy case, the debtor remains in possession of its assets unless the Court orders the appointment of a trustee. No trustee has been appointed in the Debtor's case. The Plan is being proposed by the Debtor. The Debtor proposes a plan of reorganization in an effort to minimize the overall administrative costs associated with this bankruptcy case and maximize value to Creditors and Interest Holders.

**How do I determine how my claim or interest is classified?**

To determine the classification of your Claim or Interest, you must determine the nature of your Claim or Interest. Under the Plan, Claims and Interests are classified into a series of Classes. The pertinent Articles and Sections of the Plan and Disclosure Statement disclose, among other things, the treatment that each Class of Claims or Interests will receive if the Plan is confirmed.

**How do I determine what I am likely to recover on account of my Claim or Interest?**

After you determine the classification of your Claim or Interest, you can determine the likelihood and range of potential recovery with respect to your Claim or Interest by referring generally to the classification and treatment of Claims in Article IV, Article V and Article VI.

**What is necessary to confirm the Plan?**

Under applicable provisions of the Bankruptcy Code, confirmation of the Plan requires that, among other things, at least one class of impaired Claims or Interests vote to accept the Plan. Acceptance by a class of claims or interests means that at least two-thirds in the total dollar amount and more than one-half in number of the allowed Claims or Interests actually voting in the class vote in favor of the Plan. Because only those claims or interests who vote on a plan will be counted for purposes of determining acceptance or rejection of a plan by an impaired class, a plan can be approved with the affirmative vote of members of an impaired class who own less than two-thirds in amount and one-half in number of the claims/interests. Besides acceptance of the Plan by each class of impaired creditors or interests, a bankruptcy court also must find that the Plan meets a number of statutory tests before it may confirm the Plan. These requirements and statutory tests generally are designed to protect the interests of holders of impaired claims or interests who do not vote to accept the Plan but who will nonetheless be bound by the Plan's provisions if the bankruptcy court confirms the Plan.

If one or more classes vote to reject the Plan, the Debtor may still request that the bankruptcy court confirm the Plan under § 1129(b) of the Bankruptcy Code. To confirm a plan not accepted by all classes, the Plan proponent must

demonstrate that the plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and that has not accepted, the plan. This method of confirming a plan is commonly called a "cramdown." In addition to the statutory requirements imposed by the Bankruptcy Code, the plan itself also provides for certain conditions that must be satisfied as conditions to confirmation.

**Is there a Committee in this case?**

No. The Office of the United States Trustee was unable to form an official committee of unsecured creditors in this case.

**When is the deadline for returning my ballot?**

The Bankruptcy Court has directed that, to be counted for voting purposes, your ballot must be received by the Debtor's counsel not later than November 18, 2020 at 5:00 p.m. Central Time.

**It is important that all impaired Creditors and Interest Holders vote on the Plan. The Debtor believes that the Plan provides the best possible recovery to Creditors and Interest Holders. The Debtor therefore believes that acceptance of the Plan is in the best interest of Creditors and Interest Holders and recommends that all impaired Creditors and Interest Holders vote to accept the Plan.**

If you would like to obtain copies of this Plan and Disclosure Statement or any of the documents attached or referenced herein, or have questions about the solicitation and voting process or this Chapter 11 Case generally, please contact counsel for the Debtor, Jennifer Wertz, by either e-mail at jwertz@jw.com or telephone at 512-236-2247.

**OVERVIEW OF PLAN**

An overview of the Plan is set forth below. This overview is qualified in its entirety by reference to the specific provisions of the Plan and Disclosure Statement. If the Court confirms the Plan and, in the absence of any applicable stay, all other conditions set forth herein are satisfied, the Plan will take effect on the Effective Date.

The Debtor's plan to reorganize involves the Debtor reaching agreements with KSCO, a Warrant and Equity Interest Holder, Sproles, a holder of Unsecured Convertible Notes, and the Main Street Parties, whose claims are secured by liens on substantially all of the Debtor's assets, and whom are also Warrant and Equity Interest Holders and holders of Unsecured Convertible Notes, to provide for retention of those liens and repayment from operations of the Debtor and ultimately a sale of the Debtor or a refinancing of the Debtor's debt. Unsecured Creditors, other than Unsecured Convertible Note holders, will be paid in full in the regular course of business.

As of the Effective Date of the Plan, the Reorganized Debtor will be responsible for all payments and distributions to be made under the Plan to the holders of Allowed Claims, together with any payments that become due under any executory contract or unexpired lease assumed by the Debtor. Each executory contract and unexpired lease to which the Debtor is a party shall be deemed assumed unless the Debtor expressly rejects a particular executory contract or lease pursuant to the Plan or before the Effective Date.

# ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**A.      Defined Terms**

Capitalized terms used in this Plan and Disclosure Statement have the meanings set forth in this Section I.A. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.      <u>Administrative Claim</u>.  Any cost or expense of administration of the Chapter 11 Case incurred on or before the Effective Date entitled to priority under § 507(a)(2) and allowed under § 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, certain taxes, fines and penalties, any actual and necessary post-petition expenses of operating the Debtor's business, certain post-petition indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property, or for providing services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under chapter 123, title 28, United States Code.

2.      <u>Administrative Claim Bar Date</u>.  The last day to file an application for allowance of an Administrative Claim (other than quarterly U.S. Trustee fees) shall be 15 calendar days after the Effective Date unless otherwise established by a Final Order.

3.      <u>Agent</u>.  Main Street, as Administrative Agent and Collateral Agent under the Loan Documents (as defined therein).

4.      <u>Allowed</u>.  Any Claim (i) which has been scheduled by the Debtor pursuant to Bankruptcy Rule 1007 and (a) is not scheduled as disputed, contingent or unliquidated, (b) as to which no Proof of Claim has been filed and (c) as to which no objection to such scheduled Claim has been filed; (ii) as to which a timely Proof of Claim has been filed as of the Bar Date and no objection thereto has been made; (iii) that has been allowed by a Final Order, (iv) that is allowed, compromised, settled, or otherwise resolved pursuant to the terms of the Plan.  The Debtor or Reorganized Debtor may deem any Unimpaired Claim to be Allowed.

5.      <u>Allowed Administrative Claim</u>.  An Administrative Claim to the extent it is or becomes an Allowed Claim.

6.      <u>Allowed Amount</u>.  The amount of an Allowed Claim.

7.      <u>Allowed General Unsecured Claim</u>.  A General Unsecured Claim to the extent it is or becomes an Allowed Claim.

8.      <u>Allowed Interest</u>.  Any Equity Interest on the record date that has not been disallowed pursuant to the terms of the Plan or a Final Order of the Bankruptcy Court.  Any Interest that is allowed solely for purposes of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be deemed to be an Allowed Interest for purposes of Distributions under this Plan.

9.      <u>Allowed Priority Non-Tax Claim</u>.  A Priority Non-Tax Claim to the extent it is or becomes an Allowed Claim.

10.      <u>Allowed Priority Tax Claim</u>.  Any Claim, to the extent such Claim is an Allowed Claim and entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.  Allowed Priority Tax Claims shall be determined as of the Petition Date and paid pursuant to Section II.E.

11.      <u>Allowed Secured Claim</u>.  A Secured Claim of a Creditor to the extent such Claim is an Allowed Claim, and the Lien securing such Claim has not become an Avoided Lien.

12.     Avoidance Action.  Any and all rights, claims and causes of action arising under §§ 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code or similar rights, claims and causes of action under applicable state law.

13.     Avoided Lien.  A Lien to the extent it has been set aside, invalidated, or otherwise avoided pursuant to an Avoidance Action.

14.     Bankruptcy Code.  Title 11 of the United States Code, as in effect on the Confirmation Date.

15.     Bankruptcy Court.  The unit of the United States District Court for the Southern District of Texas, Laredo Division, having jurisdiction over this Chapter 11 Case, or in the event such Court ceases to exercise jurisdiction over this Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over this Chapter 11 Case in lieu of the United States Bankruptcy Court for the Southern District of Texas, Laredo Division, and any appellate or other court that is competent to exercise jurisdiction over the confirmation of this Plan.

16.     Bankruptcy Rules.  The Federal Rules of Bankruptcy Procedure, as amended, and the Bankruptcy Local Rules for the Southern District of Texas, as applicable to this Chapter 11 Case, each as in effect on the date of the event described herein.

17.     Bar Date.  November 30, 2020.

18.     Board.  The Debtor's Board of Managers, consisting of:  (i) Jeremy Rosenthal, (ii) Troy Pike, and (iii) Curt Lindeman.

19.     Business Day.  Any day other than a Saturday, Sunday or any other day on which commercial banks in Laredo, Texas are required or authorized to close by law or executive order.

20.     Cash.  Legal tender of the United States of America, denominated in U.S. dollars, and equivalents thereof.

21.     Cause of Action.  Any claim or cause of action, legal or equitable, now owned or hereafter acquired by the Debtor, whether arising under contract or tort, federal or state law, including but not limited to Avoidance Actions, whether commenced prior or subsequent to the Petition Date.

22.     Chapter 11 Case.  Case No. 20-50082 (DRJ) filed under chapter 11 of the Bankruptcy Code by the Debtor and pending before the Bankruptcy Court.

23.     Claim.  Any (i) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

24.     Claimant.  A person asserting a Claim against the Debtor, its property, or the Estate.

25.     Class.  A category of holders of Claims or Interests pursuant to section 1122(a) of the Bankruptcy Code.

26.     Collateral.  Any property or interest in property of the Estate subject to a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

27.     Company Agreement.  The Debtor's Second Amended and Restated Limited Liability Company Agreement, dated November 23, 2016, as amended, restated or amended and restated from time to time.

28.     Confirmation Date.  The date upon which the Bankruptcy Court enters the Confirmation Order.

6

29.     Confirmation Hearing.  The hearing to be conducted by the Bankruptcy Court to determine whether to approve the Plan.

30.     Confirmation Order.  The order of the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

31.     Conway.  Conway MacKenzie Management Services, LLC, as restructuring professional to the Debtor.

32.     Creditor.  Any person that holds a Claim against the Debtor that arose or is deemed to have arisen on or before the Petition Date, including an Allowed Claim against the Debtor's Estate of a kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code.

33.     CRO.  Timothy B. Stallkamp, the Chief Restructuring Officer of the Debtor.

34.     Cure Costs.  The amount necessary to cure all defaults under any executory contract or any unexpired lease to which the Debtor is a party and to compensate the non-debtor party for any actual pecuniary loss resulting from such defaults in order to assume and assign the executory contract or unexpired lease under §§ 365(a) and 365(f) of the Bankruptcy Code.

35.     D&O Liability Insurance Policies.  All insurance policies (including any "tail policy") of the Debtor for current or former directors', managers', officers', and/or employees' liability.

36.     Debtor.  Volusion, LLC, a Delaware limited liability company.

37.     Debtor in Possession.  The Debtor in its capacity as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

38.     Deficiency Claim.  The amount by which an Allowed Secured Claim exceeds the value of any Collateral securing such Claim as may be determined by the Bankruptcy Court in accordance with § 506(a) of the Bankruptcy Code.  A Deficiency Claim is a General Unsecured Claim.

39.     Disputed Claim.  A Claim against the Debtor as to which an objection has been filed on or before the deadline for objecting to a Claim and which objection has not been withdrawn, settled or otherwise resolved by Final Order.

40.     Distribution Date.  The date, occurring as soon as practicable after the Effective Date, on which distributions are made pursuant to the terms of the Plan to holders of Allowed Claims; provided, however, that should such Allowed Claims be paid in the ordinary course of business, the Distribution Date shall be the date such Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

41.     Distribution.  The Cash and other property required by the Plan to be distributed to the holders of Allowed Claims and Allowed Interests.

42.     Effective Date.  The first Business Day after (i) the date the Confirmation Order becomes a Final Order; and (ii) all conditions specified in Section XII.D hereof have been satisfied or waived.

43.     Employee Benefit Plans.  Any employment, compensation, welfare, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense, reimbursement, dependent care, retirement, savings, deferred compensation, supplemental pension, retention, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, severance or other compensation or benefit plan, agreement or arrangement for the benefit of the current or former directors, officers or employees (whether salaried or hourly, active or retired) of the Debtor.

44.     Equity Interest Holder or Interest Holder.  Equity Interest Holder or Interest Holder shall have the meaning ascribed to "equity security holder" in § 101(17) of the Bankruptcy Code.

45.     Equity Interest or Interest.  Equity Interest or Interest shall have the meaning ascribed to "equity security" in § 101(16) of the Bankruptcy Code.

46.     Estate.  The estate created upon the filing by the Debtor of this Chapter 11 Case pursuant to § 541 of the Bankruptcy Code, together with all rights, claims and interests pertaining thereto.

47.     Exculpated Party.  Individually and collectively, the Released Parties and the Professionals.

48.     Existing Defaults.  Various Events of Default (as defined in the Loan Documents) under the Loan Documents that have occurred and are continuing under the Loan Documents, all of which are set forth on Exhibit A attached to the Forbearance Agreement.

49.     Final Order.  An order or judgment which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for new trial, reargument or rehearing has expired and to which no appeal, petition for certiorari or other proceedings for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired.

50.     Forbearance.  Forbearance has the meaning set forth in Section VII.E.

51.     Forbearance Agreement.  The Forbearance Agreement with respect to the Loan Documents, entered into by the Debtor and/or the Reorganized Debtor, as applicable, KSCO, the Main Street Parties and the Agent, as of the Effective Date, in the form and substance of Exhibit A hereto.

52.     Forbearance Event of Default.  The Debtor's, the Reorganized Debtor's or KSCO's failure to comply with the terms of the Forbearance Agreement or the Plan or the occurrence of any Event of Default (as defined in the Loan Documents) (other than the Existing Defaults) pursuant to the Loan Documents.

53.     General Unsecured Claim.  A Claim other than a Secured Claim, an Administrative Claim, a Priority Claim, or a Subordinated Claim.

54.     Governmental Unit.  The term Governmental Unit shall have the meaning assigned in the Bankruptcy Code.

55.     HMS.  Collectively, HMS Income and HMS Equity.

56.     HMS Equity.  MSC Equity Holding, LLC f/k/a HMS Equity Holding, LLC, a Delaware limited liability company.

57.     HMS Income.  HMS Income Fund, Inc., a Maryland corporation.

58.     Indemnification Obligations.  The Debtor's indemnification provisions in place, whether in the Debtor's certificate of incorporation, Company Agreement, Board resolutions, management or indemnification agreements, employment contracts, or otherwise, for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents of the Debtor and such current and former directors', officers', and managers' respective affiliates.

59.     Interest.  Any equity security (as defined in section 101(16) of the Bankruptcy Code) in the Debtor, including options, warrants, rights, restricted stock awards, performance share awards, performance share units, stock-

8

settled restricted stock units, cash-settled restricted stock units or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership or profits interests of the Debtor (whether or not arising under or in connection with any employment agreement, separation agreement or employee incentive plan or program of the Debtor as of the Petition Date).

60.     Investment Banker.  The investment banking firm D.A. Davidson & Co., which the Debtor engaged on September 25, 2020.

61.     KSCO.  KSCO Holdings, Inc., a Texas corporation.

62.     Lien.  A charge against or interest in property to secure payment of a debt or performance of an obligation which has not been avoided or invalidated under any provision of the Bankruptcy Code or other applicable law.

63.     Loan Documents.  The Amended and Restated Loan Agreement by and among the Debtor, Secured Lenders, and Agent, dated November 23, 2016 (as amended, supplemented or restated from time to time), together with the documents, instruments, certificates, and agreements executed and delivered in connection therewith.  All details and references provided herein with respect to the Loan Documents and the transactions by and among the Debtor and the Main Street Parties are summaries only and the terms of the Loan Documents control and shall continue to control, except to the extent modified by the Plan and the Forbearance Agreement.

64.     Main Street.  Main Street Capital Corporation, a Maryland corporation, in all of its capacities, including as Administrative Agent, Collateral Agent and Lender.

65.     Main Street Entities.  Collectively, Main Street and Main Street Equity.

66.     Main Street Equity.  Main Street Equity Interests, Inc., a Delaware corporation.

67.     Main Street Parties.  Collectively, Main Street Entities and HMS.

68.     Main Street Secured Claim.  The secured claim of Main Street, as Agent for itself and HMS Income, in the amount of not less than $28,906,048.20 in unpaid principal as of October 30, 2020, plus accrued and unpaid interest, fees, costs, expenses and other obligations, including, without limitation, reasonable and documented attorney's fees, Agent's fees, other professional fees and disbursements and other obligations arising and payable, consist of not less than $1,723,854.63 as of October 30, 2020, under or in connection with the Loan Documents.  The Main Street Secured Claim is secured by liens on substantially all of the Debtor's assets, existing or acquired.

69.     NOL.  NOL has the meaning set forth in Section XV.FF.

70.     Employee Options.  The 9,182,403 options authorized pursuant to the 2015 Unit Option Plan of the Debtor.  Of the authorized Employee Options, 6,916,236 units have been granted and 2,360 of such granted units have been exercised.  2,263,807 units of authorized Employee Options have not been granted and remain available.

71.     Other Secured Claim.  Any Secured Claim against the Debtor, other than the Main Street Secured Claim.

72.     Other Priority Claim.  Any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

73.     Priority Claim.  Any Claim to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code.

74.     Person.  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a Governmental Unit or any agency or subdivision thereof or any other entity.

75.     Petition Date. July 27, 2020, the date on which the Debtor filed the voluntary chapter 11 petition commencing this Chapter 11 Case.

76.     (i) Plan and Disclosure Statement, (ii) Plan, or (iii) Disclosure Statement. This Combined Plan of Reorganization and Disclosure Statement of the Debtor Pursuant to Chapter 11 of the Bankruptcy Code, as it may be amended or modified from time to time.

77.     Pledge Agreement. That certain Pledge Agreement, dated as of January 26, 2015, as amended, supplemented or restated from time to time, by KSCO for the benefit of the Main Street Parties.

78.     Priority Non-Tax Claim. Any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code including, but not limited to, (i) Claims of an employee of the Debtor for wages, salaries, or commissions, including vacation, severance or sick leave pay, earned within 180 days prior to the Petition Date (to the extent of $13,650 per employee) as set forth in § 507(a)(4) of the Bankruptcy Code; (ii) Claims for contribution to an employee benefit plan as set forth in § 507(a)(5) of the Bankruptcy Code; (iii) Claims for deposits of up to $3,025 placed by individuals with the Debtor as set forth in § 507(a)(7) of the Bankruptcy Code; (iv) Claims based upon any commitment by the Debtor to a Federal depository institutions regulatory agency to maintain the capital of an insured depository institution as set forth in § 507(a)(9); and (v) Claims for death or personal injury resulting from the operation of a motor vehicle or vessel if such operation was unlawful because the Debtor was intoxicated from using alcohol, a drug or another substance as set forth in § 507(a)(10).

79.     Priority Tax Claim. Any Claim entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code. A Claim based upon an assessed ad valorem tax that is secured by a statutory lien on property that was administered during this Chapter 11 Case is a Secured Claim to the extent of the value of the property administered. Otherwise, such Claim is a General Unsecured Claim.

80.     Professional Fee Claims. Administrative Claims for Professional Fees from the Petition Date through the Confirmation Date.

81.     Professional Fees. All fees, costs and expenses incurred in this Chapter 11 Case by any professional person (within the meaning of §§ 327, 328 or 1103 of the Bankruptcy Code or otherwise) and awarded by Final Order of the Bankruptcy Court pursuant to §§ 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs and expenses which have been allowed pursuant to this Plan or by Final Order of the Bankruptcy Court.

82.     Professionals. Any Court-approved professional Person, including lawyers, accountants, financial advisors, investment bankers, interim managers and restructuring advisors, employed by the Debtor in this Chapter 11 Case at any time before the Effective Date.

83.     Proof of Claim. A proof of claim filed against the Debtor in the Chapter 11 Case by the applicable Bar Date.

84.     Released Party. Each of the following, solely in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Board, consisting of Jeremy Rosenthal, Troy Pike and Curt Lindeman; (d) KSCO, (e) Kevin Sproles, and with respect to each of the foregoing parties in clauses (a) through (d), each of such party's current (as of the Effective Date) directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals, and solely in such capacities to or for the entities in clauses (a) through (d); and (f) the Main Street Parties, and with respect to each of the parties in clause (f), each of such party's current and former predecessors, successors, participants, affiliates (regardless of whether such interests are held directly or indirectly), assigns, subsidiaries, direct and indirect equity holders or beneficiaries, funds, portfolio companies, and management companies, current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants,

10

financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals.

85.     <u>Releasing Parties</u>.  Each of the following, solely in its capacity as such: (a) KSCO and Kevin Sproles, and with respect to the foregoing parties in clause (a), such party's current (as of the Effective Date) directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals, and solely in such capacities to or for the entity in clause (a); and (b) the Main Street Parties, and with respect to the foregoing clause (b), each of such party's current and former predecessors, successors, participants, affiliates (regardless of whether such interests are held directly or indirectly), assigns, subsidiaries, direct and indirect equity holders or beneficiaries, funds, portfolio companies, and management companies, current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals.

86.     <u>Reorganized Debtor</u>.  As of the Effective Date of the Plan, the Debtor as reorganized under the terms of the Plan.

87.     <u>Right of Action</u>.  Includes (a) any avoidance, recovery, subordination or other action of the Debtor, the Estate or the Reorganized Debtor, (b) any Cause of Action of the Debtor, the Estate or the Reorganized Debtor, (c) any objection or other challenge to a Claim, and (d) any objection or other challenge to an Interest.

88.     <u>Sale</u>.  Sale has the meaning set forth in Section VII.J.

89.     <u>Schedules</u>.  The Debtor's Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in accordance with § 521(a)(1) of the Bankruptcy Code.

90.     <u>Secured Claim</u>.  A Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code, of any interest in property of any Debtor's Estate securing such Claim, or any Claim to the extent that it is subject to setoff under § 553 of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is a Deficiency Claim.

91.     <u>Secured Lenders</u>.  Collectively, Main Street and HMS Income.

92.     <u>Secured Note</u>.  That certain senior secured note dated January 26, 2015, as amended, supplemented and restated as of November 23, 2016, and as amended May 16, 2018, in the principal amount of $30 million.

93.     <u>Sproles</u>.  Kevin Sproles, an individual.

94.     <u>Subordinated Claim</u>.  An Unsecured Claim that is subordinated pursuant to 11 U.S.C. § 510 or other applicable non-bankruptcy law pursuant to Final Order.

95.     <u>Unsecured Claim</u>.  A Claim not secured by a charge, mortgage or lien against or interest in property of the Estate, including but not limited to any Deficiency Claim and any claim for damages resulting from the rejection of an executory contract or lease.

96.     <u>Unsecured Convertible Notes</u>.  Collectively, the (a) three Unsecured Convertible Promissory Notes each dated May 16, 2018, by and between the Debtor and (i) Sproles, (ii) Main Street Equity and (iii) HMS Equity, and (b) three Unsecured Convertible Promissory Notes each dated March 22, 2019, by and between the Debtor and (i) Sproles, (ii) Main Street Equity and (iii) HMS Equity.

97.     <u>Warrants</u>.  Collectively, the warrants issued by the Debtor in the quantity listed and held by the following entities:  (a) 500,000.0 warrants held by KSCO; (b) 1,831,355.2 warrants held by Main Street; and (c) 784,866.8 warrants held by HMS Equity.

**B.      Rules of Interpretation and Computation of Time**

      1.      **Rules of Interpretation**

For purposes of this Plan and Disclosure Statement, unless otherwise provided herein:  (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural; (b) any reference in this Plan and Disclosure Statement to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan and Disclosure Statement to an existing document or Exhibit filed or to be filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan and Disclosure Statement, the Confirmation Order or otherwise; (d) any reference to an entity as a holder of a Claim or Interest includes that entity's successors, assigns and affiliates; (e) all references to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan and Disclosure Statement; (f) the words "herein," "hereunder" and "hereto" refer to this Plan and Disclosure Statement in its entirety rather than to a particular portion of this Plan and Disclosure Statement; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan and Disclosure Statement; (h) subject to the provisions of any contract, articles or certificates of incorporation, company agreements, bylaws, codes of regulation, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with this Plan and Disclosure Statement, the rights and obligations arising under this Plan and Disclosure Statement shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code (other than subsection (5) thereof) shall apply to the extent not inconsistent with any other provision of this Section I.B.l.

      2.      **Computation of Time**

In computing any period of time prescribed or allowed by this Plan and Disclosure Statement, the provisions of Bankruptcy Rule 9006(a) shall apply.

      3.      **Controlling Document**

In the event of any inconsistency among this Plan and Disclosure Statement and any exhibit or schedule hereto, the provisions of this Plan and Disclosure Statement shall govern.  In the event of any inconsistency among this Plan and Disclosure Statement and any document or agreement filed and the Confirmation Order, the Confirmation Order shall control.

**ARTICLE II**
**ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article IV of this Plan.

**A.      Administrative Claims**

Except with respect to the Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code, and except to the extent that a holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment for such holder, or such holder has been paid by the Debtor on account of such Allowed Administrative Claim prior to the Effective Date, each holder of such an Allowed Administrative Claim will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if

an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 calendar days after the date on which the Reorganized Debtor Allows such Allowed Administrative Claim or the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter, as applicable; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such holder and the Debtor or the Reorganized Debtor, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, stopped, and enjoined from asserting such Administrative Claims against the Debtor or the Reorganized Debtor, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

**B.      Final Fee Applications and Payment of Professional Fee Claims**

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be filed no later than 15 calendar days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid up to the full Allowed Amount.

**C.      Allocation and Estimation of Professional Fees and Expenses**

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred before and as of the Confirmation Date, and shall deliver such estimate to the Debtor by the earlier of (a) five Business Days after the Confirmation Date and (b) two Business Days prior to the Effective Date; provided that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtor may estimate the unbilled fees and expenses of such Professional.

**D.      Post-Confirmation Date Fees and Expenses**

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtor will, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtor. Upon the Confirmation Date, any requirement that Professionals and ordinary course Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**E.      Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim and the Debtor agree to a less favorable treatment for such holder, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code beginning on the Effective Date and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

**F.      Statutory Fees**

13

All fees due and payable pursuant to section 1930 of title 28 of the United States Code prior to the Effective Date shall be timely paid by the Debtor. On and after the Effective Date, the Reorganized Debtor shall timely pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtor shall remain obligated to pay such quarterly fees to the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III
## DEBTOR'S HISTORY AND THE BANKRUPTCY CASE

**A.     The Debtor's History**

1.     **Debtor's Pre-petition Business**

The Debtor is a SaaS software developer based in Austin, Texas. The Debtor focuses on creating customer websites and e-commerce platforms for clients, concentrated in the small and mid-sized business segments. The Debtor serves approximately 14,000 customers across a variety of industries such as apparel, sporting goods, and specialty retailers. The Debtor's annual revenue approximates $40 million, and the Debtor has approximately 160 employees.

The Debtor was originally founded in 1999 as a sole proprietorship. In 2002, the Debtor was incorporated as "Blue Lift Corporation" in California. Subsequently in 2002, the Debtor changed its name to "Website Designers 2000 Inc." In 2003 the Debtor changed its name to "Volusion, Inc." In 2010, the Debtor reincorporated in Delaware pursuant to a merger. In 2015, Volusion, Inc. converted from a Delaware corporation to the Delaware limited liability company that it operates under today, Volusion, LLC.

In 2015, the Debtor formed Volusion Limited, its subsidiary organized in the United Kingdom, in an effort to expand sales and marketing. Since 2017, Volusion Limited has been dormant, with no operations. Volusion Limited will be terminated and dissolved pursuant to the Plan.

In October 2016, the Debtor consummated an asset sale, pursuant to which it sold its Mozu business (which developed, marketed and sold the Mozu enterprise e-commerce platform) for approximately $6 million.

2.     **Debtor's Business Overview**

The Debtor's in-house agency, known as Studio, provides a one stop shop for its clients: a store builder, ecommerce software and a marketing hub, all in one. Studio provides marketing services, site design services, optimization with quick wins, and credit card processing assistance.

Marketing Services. The Debtor provides the marketing expertise needed to accelerate a client's business. Studio helps clients identify the best marketing tactics for driving new customers to their websites. Through social media engagement, advertising and reporting, Studio will identify and engage a client's target audience, building a brand's reach and creating a loyal following. Studio increases a client's revenue by attracting customer traffic and turning such traffic into sales. Studio has successfully helped grow over 5,000 businesses.

Site Design Services. The Debtor offers unique design experiences for its clients, from ready-to-install free and premium themes to fully styled storefronts. The design themes are designed by experts and easily customizable for clients. Studio has professional and experienced designers and specialized ecommerce experts with extensive platform knowledge. Studio experts have successfully designed the sites and brands of more than 15,000 entrepreneurs.

Optimize with Quick Wins. The Debtor offers analytical and operational services. The Debtor's team utilizes services, including graphic design, tracking codes, and expert marketing strategy to set clients up for success. The Debtor offers Google analytics training, Facebook Pixel tracking, website homepage optimization services, and image ad asset creation to optimize a client's success.

      <u>Credit Card Processing</u>.  Through its credit card processing service, Volusion Payments, the Debtor assists clients in accepting credit card payments at the industry's most affordable rates.  Volusion Payments is designed to fully complement a client's online store, allowing a client to receive funds faster while promoting its customer confidence.

      3.      **Debtor's Capital Structure**

      Main Street and HMS Income are the Debtor's primary Secured Lenders.  On January 26, 2015, the Secured Lenders provided the Debtor with a senior secured term loan pursuant to the Loan Documents in the amount of $25 million, which principal amount was increased to $30 million in 2018.  In addition, affiliates of the Secured Lenders provided a $20 million direct equity investment for growth capital to fund the research and development, capitalized software costs and sales and marketing efforts associated with the development and implementation of the Debtor's Mozu platform.  On January 26, 2020, the outstanding Secured Note matured.

      In addition to Main Street, the Debtor has approximately 200 other Creditors, which consist of trade debt and Payroll Protection Program funding.  Total other liabilities are estimated at approximately $9.5 million.

**B.**      **Liabilities and Claims of the Debtor**

      1.      **Debtor's Financial Information**

      The Debtor is required to file monthly operating reports with the Bankruptcy Court which reflect current financial information and are publicly available for inspection at the office of the Clerk of the Court.  Attached hereto as Exhibit C is a copy of the latest monthly operating report filed by the Debtor.

      2.      **Debtor's Executory Contracts**

      The Debtor is a party to certain equipment leases and executory contracts. The Debtor's executory contracts will either be assumed or rejected on the Effective Date of the Plan.

      3.      **Liabilities and Claims Against the Debtor**

      The Schedules contain a detailed listing of Creditors, together with the estimated amounts of Claims. Creditors and Interest Holders are referred to the Debtor's Schedules.  The Debtor's respective Schedules generally organize Creditors into three general groupings:  (i) secured, (ii) priority, and (iii) unsecured.  Additional Proofs of Claims may be filed in the Chapter 11 Case.  The last day to file a Proof of Claim is November 30, 2020.

      4.      **Secured Claims**

      Pursuant to the Bankruptcy Code, Claims which are secured by a lien or other security interest may be categorized into a secured and an unsecured component.  In general, Claims are Secured Claims to the extent of the value of the collateral that secures the Claims and they are Unsecured Claims to the extent of any deficiency in the value of the collateral.

      The Debtor is party to the Loan Documents, dated November 23, 2016, as amended, supplemented and restated.  As of October 30, 2020, the Secured Lenders' claim consists of not less than (i) $28,906,048.20 in unpaid principal, plus (ii) accrued and unpaid interest, fees, costs, expenses and other obligations, including, without limitation, reasonable and documented attorney's fees, Agent's fees, other professional fees and disbursements and other obligations arising and payable, of not less than $1,723,854.63.  The Loan Documents provide the Secured Lenders with a security interest in substantially all of the Debtor's assets, existing or acquired.  On January 26, 2020, the outstanding term loan with the Secured Lenders matured.

      5.      **Priority Claims**

The Debtor's Schedules reflect no known past due Priority Claims. No Proofs of Claim have yet been filed asserting a Priority Claim. Priority Claims will be paid as they come due.

6.       **Unsecured Claims**

The Debtor's Schedule F which is based on the Debtor's books and records reflects undisputed unsecured claims of $9,426,774.72. Additional claims may be filed. The Debtor expects to file at least some objections to Proofs of Claims. Should additional or amended Proofs of Claim be filed, the Debtor will review such claims and may file additional objections. The Debtor is unable to predict the outcome of any anticipated claim objections that may be filed.

The Debtor issued (a) three Unsecured Convertible Promissory Notes, each dated May 16, 2018, by and between the Debtor and (i) Sproles, (ii) Main Street Equity and (iii) HMS Equity, and (b) three Unsecured Convertible Promissory Notes each dated March 22, 2019, by and between the Debtor and (i) Sproles, (ii) Main Street Equity and (iii) HMS Equity. As of October 30, 2020, the total amount owed on account of the Unsecured Convertible Promissory Notes, inclusive of accrued and unpaid interest, is approximately $5,891,780.82.

7.       **Deadline to File Proofs of Claim**

November 30, 2020 is the deadline for Proofs of Claim.

**The sole right of the Debtor and/or the Reorganized Debtor (whether existing or formed under the plan) to object to any claim filed in this case is expressly reserved. The inclusion of a claim or claims within this Plan and Disclosure Statement is not an admission regarding the validity or allowance of any claim. You should not assume that a vote for or against the plan will have any affect of the status of your claim. If anyone suggests that the status of your claim may be affected by your vote, you should report such incident to counsel for the Debtor immediately as any such suggestion may violate Title 18.**

**C.       The Bankruptcy Case**

1.       **Events Leading to the Chapter 11 Case**

The Debtor's restructuring efforts began in 2019 with a reassessment of its cost structure and the implementation of cost reduction initiatives. Such restructuring efforts included headcount reductions, reductions in operating expenses, migration to the Google Cloud Platform, changes in marketing strategy, and other cost reduction efforts.

In June 2020, the Board of Managers of the Debtor was replaced and reconstituted with a new slate of Managers by the Main Street Parties, pursuant to their rights under, *inter alia*, the Pledge Agreement.

The reconstituted Board continued and amplified the Debtor's restructuring efforts. On June 8, 2020, Conway MacKenzie Management Services, LLC (Conway) was engaged as a restructuring professional to the Debtor. On June 24, 2020, Timothy B. Stallkamp was appointed as Chief Restructuring Officer (CRO) of the Debtor. An Order approving the Conway retention was entered by the Court on September 24, 2020 [Docket No. 95].

Despite the restructuring efforts of the Debtor, the reconstituted Board and CRO did not receive sufficient collaboration or cooperation from certain members of then (pre-petition) existing management. It became increasingly more difficult for the Board to fulfill its duties and take the steps necessary to maintain the value of the Debtor. The Debtor was faced with disengaged and disobedient officers and Secured Lenders who had already exercised remedies with regards to its matured loan facility. As a result, the Debtor filed this Chapter 11 Case to prevent a foreclosure from occurring and to effectuate a restructuring, which will leave the Debtor's balance sheet strong and allow the Debtor to effectively address its matured loan facility and prevent further exercise of remedies by the Secured Lenders. The filing of this Chapter 11 Case has provided the Debtor with the breathing room necessary to work out its restructuring and ensure ongoing vitality and consistency in banking and vendor relationships. Under the Plan, all

disputes among (a) the Main Street Parties and the Debtor, and (b) the Main Street Parties, KSCO, Sproles and the Debtor, are resolved.

On September 25, 2020, the Debtor retained the Investment Banker, with the consent of the Main Street Parties and KSCO, to render financial advisory and investment banking services to the Debtor.[2]

**D.      Main Bankruptcy Events**

1.      **First Day Pleadings**

On and shortly after the Petition Date, along with its voluntary petition for relief under chapter 11 of the Bankruptcy Code, the Debtor filed several motions designed to facilitate the administration of the Chapter 11 Case and minimize disruption to the Debtor's operations, by, among other things, easing the strain on the Debtor's relationships with employees, vendors, and customers following the commencement of the Chapter 11 Case.

- *Cash Collateral Motion*:  Debtor's Emergency Motion for Authority to Use Cash Collateral and Granting Adequate Protection to Prepetition Secured Parties [Docket No. 4].  On August 13, 2020, the Court entered a final order on the Cash Collateral Motion [Docket No. 58].

- *Independent Managers Motion*:  Debtor's Motion for Entry of an Order (I) Authorizing the Appointment of Independent Managers Effective as of the Petition Date; (II) Directing the Debtor to Maintain the Independent Managers; (III) Authorizing the Payment of Manager Fees; and (IV) Authorizing the Debtor's Performance of its Obligations to Each of the Independent Managers Pursuant to the Company Agreement [Docket No. 5].  On August 27, 2020, the Court entered a final order on the Independent Managers Motion [Docket No. 81].

- *Schedules and SOFA Extension Motion*:  Debtors' Emergency Motion for Entry of an Order (I) Extending the Time to File Schedules of (A) Assets and Liabilities, (B) Schedules of Current Income and Expenditures, (C) Schedules of Executory Contracts and Unexpired Leases, and (D) Statements of Financial Affairs, and (II) Granting Related Relief [Docket No. 13].   On August 3, 2020, the Court entered a final order on the Schedules and SOFA Extension Motion [Docket No. 19].

- *Complex Case Procedures Motion*:  Debtor's Emergency Motion to Apply Complex Case Procedures to Chapter 11 Case [Docket No. 14].  On August 3, 2020, the Court entered a final order on the Complex Case Procedures Motion [Docket No. 20].

- *Wages Motion*:  Debtors' Emergency Motion for Entry of an Order Authorizing the Debtor to (I) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (II) Continue Employee Benefits Programs [Docket No. 15].  On August 3, 2020, the Court entered a final order on the Wages Motion [Docket No. 24].

- *Taxes Motion*:  Debtors' Emergency Motion for Entry of an Order Authorizing the Payment of Taxes and Fees [Docket No. 34].  On August 11, 2020, the Court entered a final order on the Taxes Motion [Docket No. 47].

- *Utilities Motion*:  Debtors' Emergency Motion for Entry of an Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, and (III) Approving the Debtor's

---

[2] The Investment Banker was retained by the Debtor with the support of the Main Street Parties and KSCO.  Since the Investment Banker will perform a majority of its work and will not be compensated until after the Effective Date, the Debtor has not submitted a retention application for the Investment Banker.

Proposed Procedures for Resolving Adequate Assurance Requests [Docket No. 35]. On August 11, 2020, the Court entered a final order on the Utilities Motion [Docket No. 48].

- Cash Management Motion: Debtors' Emergency Motion for Entry for Interim Order Authorizing the Debtor to Continue to Operate its Cash Management System and Maintain Existing Bank Accounts [Docket No. 45]. On September 18, 2020, the Court entered a final order on the Cash Management Motion [Docket No. 91].

### 2. Retention of Professionals

On August 26, 2020 the Debtor filed the Application of Debtor in Possession to Employ Jackson Walker LLP as Counsel for the Debtor [Docket No 74]. An order approving such application was entered on September 24, 2020 [Docket No. 94].

On August 26, 2020 the Debtor filed the Debtor's Application for Authority to (I) Retain and Employ Conway Mackenzie Management Services, LLC; (II) Designate Timothy B. Stallkamp to Serve as Chief Restructuring Officer; and (III) Provide Additional Personnel For Debtor [Docket No. 75]. An order approving such application was entered on September 24, 2020 [Docket No. 95].

### 3. The Bar Date

Monday, November 30, 2020 has been established as the deadline for Proofs of Claim.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

The Claims against and Interests in the Debtor are classified as follows:

| Class | Claim or Interest | Description | Status | Voting Rights |
|---|---|---|---|---|
| 1 | Main Street Secured Claim | Comprised of the Main Street Secured Claim. | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Comprised of all Other Secured Claims. | Unimpaired | Deemed to Accept |
| 3 | Priority Non-Tax Claims | Comprised of all Allowed Priority Non-Tax Claims. | Unimpaired | Deemed to Accept |
| 4 | Unsecured Convertible Notes | Comprised of Claims arising out of the Unsecured Convertible Notes. | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Comprised of all Allowed General Unsecured Claims. | Unimpaired | Deemed to Accept |
| 6 | Equity Interests | Comprised of all Allowed Equity Interests in the Debtor. | Impaired | Entitled to Vote |
| 7 | Existing Employee Options | Comprised of all Allowed Employee Options in the Debtor. | Unimpaired | Deemed to Accept |
| 8 | Existing Warrants | Comprised of all Allowed Warrants in the Debtor. | Unimpaired | Deemed to Accept |

## ARTICLE V
## IMPAIRMENT OF CLASSES AND RESOLUTION OF CLAIM CONTROVERSIES

### A. Impaired Classes

Only holders of Claims that are in impaired Classes may vote on the Plan. The following Classes of Claims and Interests are impaired under the Plan:

1. **Class 1 – Main Street Secured Claim.**
2. **Class 4 – Unsecured Convertible Notes.**

18

3.        **Class 6 – Equity Interests.**

B.        **Unimpaired Classes**

Holders of Claims that are in unimpaired Classes are deemed to have accepted the proposed Plan and are not entitled to vote on the Plan.  The following Classes of Claims are not impaired under the Plan:

1.        **Class 2 – Other Secured Claims.**
2.        **Class 3 – Priority Non-Tax Claims.**
3.        **Class 5 – General Unsecured Claims.**
4.        **Class 7 – Existing Employee Options.**
5.        **Class 8 – Existing Warrants.**

C.        **Controversy Concerning Classification, Impairment or Voting Rights**

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, prior to the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy.  Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the Chapter 11 Case.  In addition, the Bankruptcy Court may in accordance with § 506(b) of the Bankruptcy Code conduct valuation hearings to determine the Allowed Amount of any Secured Claim.

## ARTICLE VI
## CLASSIFICATION AND TREATMENT OF CLAIMS

A.        **Treatment of Impaired Classes**

1.        <u>Class 1 – Main Street Secured Claim</u>.  Pursuant to a compromise reached between the Debtor and the Main Street Parties, as embodied in this Plan and the Forbearance Agreement, the Main Street Secured Claim shall be paid as follows:

(a)        On the Effective Date, the Main Street Secured Claim shall be Allowed in the amount of $28,906,048.20[3] in unpaid principal, plus all accrued and unpaid interest, fees, costs, expenses and other obligations, including, without limitation, reasonable and documented attorney's fees, Agent's fees, other professional fees and disbursements and other obligations arising and payable pursuant to the Loan Documents.

(b)        Pursuant to the Forbearance Agreement, commencing on the Effective Date and continuing through and including the Forbearance Termination Date (as defined in the Forbearance Agreement), the Main Street Secured Claim shall accrue interest at the non-Default Rate (as defined in the Loan Documents); provided, however, upon the occurrence of a Forbearance Event of Default, the Main Street Secured Claim shall accrue interest at the Default Rate.

(c)        Commencing on the Forbearance Termination Date (including, for the avoidance of doubt, as a result of a Forbearance Event of Default) and continuing thereafter until the Main Street Secured Claim is indefeasibly paid or otherwise satisfied in full by virtue of the exercise by the Main Street Parties of their rights and remedies under the Loan Documents (including, without limitation, their right to foreclose on all collateral pledged to the Main Street Parties to secure the Debtor's obligations to the Main Street Parties under the Loan Documents), the Main Street Secured Claim shall accrue interest at the Default Rate.

---

[3] Amount includes the principal balance of the Main Street Secured Claim as of the Effective Date.

(d)     On the Effective Date, the Debtor or Reorganized Debtor, as applicable, shall make, via wire transfer, a one-time payment to the Agent in an amount equal to all then accrued and unpaid interest, fees and costs due and owing to the Main Street Parties under the Loan Documents.

(e)     Commencing on the Effective Date and continuing thereafter until the Forbearance Termination Date, the Debtor shall make monthly payments of interest only at the non-Default Rate to the Agent; provided, however, that upon the occurrence of a Forbearance Event of Default, the monthly interest payment to the Agent shall be calculated at the Default Rate.

(f)     If at the time of a monthly interest payment due date under the Loan Documents, the Debtor's cash balance is less than:

(i)     $3 million, then the Debtor will make a cash payment to the Agent equal to 50% of the monthly interest payment then due.  The remaining 50% the then due monthly interest payment will be accrued and added to the then outstanding principal balance of the Main Street Secured Claim and accrue interest in accordance with the Forbearance Agreement.

(ii)    $2.5 million, then the Debtor will make a cash payment to the Agent equal to 25% of the monthly interest payment then due.  The remaining 75% of the then due monthly interest payment will be accrued and added to the then outstanding principal balance of the Main Street Secured Claim and accrue interest in accordance with the Forbearance Agreement.

(iii)   $2.0 million, then the Debtor will not be required to make a cash payment to the Agent and the entire amount of then then due monthly interest payment will be accrued and added to the then outstanding principal balance of the Main Street Secured Claim and accrue interest in accordance with the Forbearance Agreement.

(g)     Should the Reorganized Debtor default in any provision of this Plan or the Forbearance Agreement, the Reorganized Debtor shall have ten (10) calendar days to cure such default, if curable, after written notification by the Agent.  If such default is not cured or is incurable, the Main Street Parties may exercise any or all of their contractual or state law rights and remedies without an election of remedies, including without limitation its right of foreclosure.

2.     <u>Class 4 – Unsecured Convertible Notes</u>.  Amounts payable with respect to the Unsecured Convertible Notes shall be repaid, together with all accrued and unpaid interest and all other amounts due or that may become due thereunder, from the net proceeds of a Sale pro rata pursuant to the Company Agreement, after the indefeasible payment in full of the then balance due and owing pursuant to the Main Street Secured Claim and the Forbearance Agreement.  For the avoidance of doubt, the Unsecured Convertible Notes will not be paid in accordance with the treatment of Allowed General Unsecured Claims.

3.     <u>Class 6 – Equity Interests</u>.  Subject to the occurrence of a Forbearance Event of Default, as of the Effective Date and until the Forbearance Termination Date, each Equity Interest Holder shall retain its respective Equity Interest in the Debtor in the following percentages:

| Equity Interest Holder | Units | %[4] |
|---|---|---|
| KSCO | 52,631,580.0 | 73.20% |
| Main Street Equity | 4,876,669.7 | 6.78% |
| HMS Equity | 2,090,001.3 | 2.91% |

---

[4] Chart represents percentages on a fully-diluted basis. The (i) outstanding Warrants and (ii) unexercised Employee Options are included in the chart only for illustrative purposes to show percentages on a fully-diluted basis.

| | | |
|---|---|---|
| Main Street (warrants) | 1,831,355.2 | 2.55% |
| HMS Equity (warrants) | 784,866.8 | 1.09% |
| KSCO (warrants) | 500,000.0 | 0.70% |
| Employee Options | 9,182,403.0[5] | 12.77% |

## B.    Treatment of Unimpaired Classes

The Unimpaired Classes will be treated as follows:

1.    <u>Class 2 – Other Secured Claims</u>.

In the sole discretion of the Reorganized Debtor, each holder of an Other Secured Claim shall receive (a) Cash equal to the full amount of the Allowed Claim, (b) reinstatement of such holder's Claim, (c) the return or abandonment of the Collateral securing such Claim to such holder, with the consent of the Agent, or (d) such other treatment as may otherwise be agreed to by such holder and the Debtor (with the consent of the Agent).

2.    <u>Class 3 – Priority Non-Tax Claims</u>.

Each holder of a Priority Non-Tax Claim will be paid in Cash and in full on the later of (i) the Distribution Date, (ii) the date on which such Claim becomes an Allowed Claim; or (iii) such other date as the Reorganized Debtor and the holder of the Allowed Priority Non-Tax Claim shall agree.

3.    <u>Class 5 – General Unsecured Claims</u>.

On or as soon as practicable after the later to occur of:  (i) the Effective Date and (ii) the date such claim becomes due in the ordinary course of business, each holder of an Allowed General Unsecured Clam shall receive (x) payment in full in Cash on account of such Allowed General Unsecured Claim, (y) such other treatment as would render such General Unsecured Claim unimpaired, or (z) such other treatment as may otherwise be agreed to by such holder and the Debtor (with the consent of the Agent).

4.    <u>Class 7 – Existing Employee Options</u>.

The Employee Options authorized to employees of the Debtor prior to the Petition Date shall remain in full force and effect after the Effective Date as follows:

| | **Units** |
|---|---|
| Employee Options | 9,182,403.0[6] |

5.    <u>Class 8 – Existing Warrants</u>.

All outstanding Warrants shall remain in full force and effect after the Effective Date as follows:

| **Holder** | **Units** |
|---|---|

---

[5] The total number of authorized Employee Options is 9,182,403 units.  Of the authorized Employee Options, 6,916,236 units have been granted and 2,360 of such granted units have been exercised.  2,263,807 units of authorized Employee Options have not been granted and remain available.

[6] The total number of authorized Employee Options is 9,182,403 units.  Of the authorized Employee Options, 6,916,236 units have been granted and 2,360 of such granted units have been exercised.  2,263,807 units of authorized Employee Options have not been granted and remain available.

| Main Street (warrants) | 1,831,355.2 |
| HMS Equity (warrants) | 784,866.8 |
| KSCO (warrants) | 500,000.0 |

## ARTICLE VII
## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

**A.      General Settlement of Claims, Interests, and Causes of Action**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Allowed Claims, Interests, Causes of Action, other than those reserved in Article XVI, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to this Plan.  This Plan shall be deemed a motion, proposed by the Debtor to approve the good-faith compromise and settlement of all Allowed Claims, Interests, Causes of Action, other than those reserved in Article XVI, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Allowed Claims, Interests, Causes of Action, other than those reserved in Article XVI, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, its Estate, and holders of Allowed Claims and Interests and is fair, equitable, reasonable, and in the best interest of the Debtor and its Estate.

**B.      Closing**

On the Effective Date, all property of the Estate shall be revested in the Reorganized Debtor free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363(f) and 11 U.S.C. § 1123(a)(5) to the maximum extent allowed by law; save and except the Liens securing (i) the Secured Note and (ii) *ad valorem* taxes.

**C.      Employee and Retiree Benefits**

Unless otherwise provided herein, all employee wages and Employee Benefit Plans in place as of the Effective Date with the Debtor shall be assumed by the Reorganized Debtor and shall remain in place as of the Effective Date, and the Reorganized Debtor will continue to honor such agreements, arrangements, programs, and plans.  For the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

**D.      Funding of the Case**

Through the Effective Date, the Chapter 11 Case shall be funded with the Debtor's cash on hand.  The Debtor will continue using prepetition collateral and cash collateral pursuant to the terms of the Final Cash Collateral Order [Docket No. 58].

**E.      Forbearance Agreement**

On the Effective Date, the Reorganized Debtor, KSCO, the Secured Lenders and the Agent will enter into the Forbearance Agreement, with respect to the Loan Documents, consisting of the following general terms[7]:

1.      The Secured Lenders shall agree to forbear, from the Effective Date until the earlier to occur of (a) 5:00 p.m. Central Time on June 30, 2021, and (b) the date the Forbearance Agreement otherwise terminates pursuant to the terms and conditions set forth therein, from exercising their rights and remedies

_____

[7] Exhibit B hereto contains additional terms to the Forbearance Agreement and the Plan that will be filed under seal, to protect the integrity of the Sale process to be undertaken by the Reorganized Debtor.

22

under the Loan Documents or otherwise at law or in equity against the Loan Parties arising as a result of the Existing Defaults (the "Forbearance").

2.      The Reorganized Debtor shall make monthly payments of interest only to the Agent as more particularly set forth in Section VI.A.1.

3.      The Debtor shall provide financial reporting to the Secured Lenders (i) as required by the Loan Documents and (ii) as may otherwise be reasonably requested by the Secured Lenders.  Such financial reporting provided to the Secured Lenders shall also contemporaneously be provided by the Reorganized Debtor to KSCO.

4.      Sale milestones (in connection with the Sale) as proposed by the Investment Banker and agreed to by the Debtor, the Main Street Parties and KSCO.  The terms of said sale milestones are as provided in Exhibit B filed under seal to avoid chilling the sale prices or otherwise interfering with such process.

The Forbearance Agreement shall also include the Secured Lenders' and the Agent's agreement to forbear from the exercise of their rights and remedies against KSCO, subject to KSCO's compliance with the terms of the Plan and the Forbearance Agreement and provided no Forbearance Event of Default occurs under the Forbearance Agreement.

**F.      Continuation of Operations of the Debtor**

The Debtor's current Board of Managers, consisting of: (i) Jeremy Rosenthal, (ii) Troy Pike, and (iii) Curt Lindeman, shall have sole and exclusive control over the Debtor's governance, both prior to the Effective Date and through the Forbearance Termination Date.

KSCO acknowledges and agrees that both prior to and after the Effective Date, the Main Street Parties shall have an irrevocable right to vote all of KSCO's units in the Debtor by virtue of the Main Street Parties' exercise of their rights and remedies under the Pledge Agreement, including, without limitation, with respect to the approval or rejection of a Sale.  The Agent and KSCO, shall each have rights of observers to the Board, without compensation, through the Forbearance Termination Date, subject to the terms of the applicable binding agreements governing such observer rights between the Debtor and the Agent and KSCO, respectively.

From and after the Effective Date of the Plan, the Reorganized Debtor is authorized to take such actions as are necessary to continue all operations.

**G.      Vesting of Assets**

Except as otherwise provided herein or in any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in the Debtor's Estate, all Causes of Action, and any property acquired by the Debtor under this Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances other than the Liens of the Agent and the Secured Lenders and such other Liens or other encumbrances as may be permitted thereby.  On and after the Effective Date, except as otherwise provided herein, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**H.      Continued Corporate Existence**

Except as otherwise provided herein or any agreement, instrument, or other document incorporated herein, on the Effective Date, or as otherwise may be agreed between the Debtor and the Secured Lenders, the Debtor shall continue to exist on and after the Effective Date as a limited liability company with all the powers of a limited liability company pursuant to the applicable law in the jurisdiction in which the Debtor is formed and pursuant to the certificate of incorporation and Company Agreement in effect on the Effective Date, except to the extent such certificate of incorporation or Company Agreement is amended by this Plan or otherwise, and to the extent any such document is

amended, such document is deemed to be amended pursuant to this Plan and requires no further action or approval (other than any requisite filings required under applicable state or federal law).

**I.      Retention of Investment Banker**

On September 25, 2020, the Debtor retained the Investment Banker to market the Reorganized Debtor for sale, both prior to the Effective Date and through the Forbearance Termination Date.  The Board has sole control over the direction and efforts of the Investment Banker.  Notwithstanding the foregoing, the Agent and/or KSCO may, as observers to the Board, provide input to the Board on such efforts of the Investment Banker.  The Investment Banker's efforts will be consistent with this Plan and the Forbearance Agreement.

**J.      Sale of the Debtor's Assets**

The Investment Banker was engaged by the Debtor to market the Debtor for sale on a cash free, debt free basis (a "Sale").  It is intended that the Investment Banker market substantially all assets of the Reorganized Debtor for sale as an ongoing concern once the Debtor has emerged from bankruptcy.

**K.      *Ad Valorem* Taxes**

Any *ad valorem* taxes will be paid by the Reorganized Debtor as the taxes become due and payable in the ordinary course of the Reorganized Debtor's business.

**L.      General Powers of the Reorganized Debtor**

Subject to any express limitations, the Reorganized Debtor, shall have all of the rights, powers and privileges set forth in the Plan and the Confirmation Order.  The Reorganized Debtor is authorized and shall have the obligation to take all such actions as in its judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

1.      Make all Distributions contemplated under the Plan.

2.      Take actions consistent with maintaining the value of the Reorganized Debtor's assets and operate its business in a lawful manner as it deems appropriate.

3.      Administer the resolution, settlement and payment of Claims and Equity Interests and the distributions to the holders of Allowed Claims and Allowed Equity Interests in accordance with the Plan.

4.      Enter into any agreement required by or consistent with the Plan and perform all of the obligations required of the Reorganized Debtor under the Plan.

5.      Abandon any of the assets of the Reorganized Debtor if the Reorganized Debtor concludes that such assets are of no benefit to the Creditors or Interest Holders.

6.      Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims, including without limitation all state and federal causes of action or any other litigation which constitutes an asset of the Estate/Reorganized Debtor and pursue settlement or judgment for such actions.

7.      Participate as a party-in-interest in any proceeding before the Bankruptcy Court involving this Chapter 11 Case.

8.      Take actions and exercise remedies against any entity that owes money to the Debtor/Estate/Reorganized Debtor, including without limitation, the remedies available under any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; make

24

compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and, declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document.

9.      Select and employ such professionals, agents or employees as the Reorganized Debtor deems necessary to assist in the administration of the affairs of the Reorganized Debtor and compensate such persons.

10.      Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with the Plan.

11.      Propose any amendment, modification or supplement to the Plan or the Reorganized Debtor's governance documents.

12.      Receive, conserve and manage the assets of the Reorganized Debtor and sell, pursuant to 11 U.S.C. § 363(f), 11 U.S.C. § 1123(a)(5) and/or the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Reorganized Debtor deems most beneficial to the Creditors and Interest Holders and execute such deeds, bills of sale, assignments and other instruments in connection therewith without the necessity of an order from the Court.

13.      Open and maintain bank accounts.

14.      Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections.

15.      Pay all lawful expenses, debts, charges and liabilities of the Reorganized Debtor.

16.      Enforce all provisions of the Plan and the Forbearance Agreement.

17.      Protect, perfect and defend the title to any of the assets of the Reorganized Debtor and enforce any bonds, mortgages or other obligations or liens owned by the Reorganized Debtor.

18.      Carry insurance coverage in such types and amounts as the Reorganized Debtor deems advisable or otherwise required to be carried under the Secured Note.

19.      Establish such reserves for taxes, assessments and other expenses of the Reorganized Debtor as may be necessary and appropriate for the proper operation of matters incident to the affairs of the reorganized Debtor and its obligations under the Plan.

20.      Exercise such other powers and duties as are necessary or appropriate in the Reorganized Debtor's discretion to accomplish the purposes of the Plan.

**ARTICLE VIII**
**CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF DISPUTED**
**CLAIMS/INTERESTS AND PROCEDURES FOR ASSERTING CLAIMS**

A.      **Objection Process**

The Reorganized Debtor shall have the sole right to object to the allowance of any Claims or Equity Interests provided for under the Plan.  The Reorganized Debtor shall have the authority to compromise, settle or otherwise resolve all objections without approval of the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall file and serve all objections to Claims and Equity Interests no later than (i) 90 calendar days after the later of (a) the Effective Date; or (b) the date on which a Proof of Claim, proof of interest or request for payment is filed with the Bankruptcy Court or (ii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

B.      **Filing of Claims and Causes of Action**

The Reorganized Debtor shall have the exclusive right to file and prosecute any Claims and Causes of Action, including all derivative Causes of Action.  The Reorganized Debtor shall have the authority to compromise, settle or otherwise resolve all Claims and Causes of Action without approval of the Bankruptcy Court.

C.      **Disallowance of Late Filed Proofs of Claim**

Except as otherwise provided in the Plan, any Proof of Claim filed by the holder of such Claim after the Bar Date is hereby disallowed and forever barred, without further Order of the Bankruptcy Court.

D.      **Provisions Governing Distributions**

1.      <u>Record Date for Claims and Equity Interests</u>.  The record date for Distributions to Allowed Claims and Allowed Equity Interests under the Plan shall be the Confirmation Date.  For purposes of Distributions to holders of Allowed Claims, the Reorganized Debtor shall rely on the claims docket maintained by the Clerk for Proofs of Claim filed in this Chapter 11 Case except to the extent a notice of transfer of Claim or Interest has been filed with the Court prior to the record date pursuant to Bankruptcy Rule 3001.

2.      <u>Delivery of Distributions to Holders of Allowed Claims</u>.  Subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the Proofs of Claim filed by such holders, or at the last known address of such holder if no Proof of Claim is filed, unless the holder of the Allowed Claim has otherwise notified the Reorganized Debtor in writing of a change of address, prior to the Effective Date.  If any holder's Distribution is returned as undeliverable, it will be treated in accordance with Section VIII.D.4.

3.      <u>Delivery of Distributions to Holders of Allowed Equity Interests</u>.  Distributions to holders of Allowed Equity Interests, to the extent they are entitled to distributions under the Plan, will be made at the address of the registered holder of each such Equity Interest as set forth in the Debtor's records.  If any holder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the Reorganized Debtor is notified in writing of such holder's then current address.

4.      <u>Unclaimed Distributions</u>.  The Reorganized Debtor shall file a Notice of Distribution within ten Business Days of the date on which Distributions are made under the Plan.  All claims for undeliverable Distributions must be made no later than the 75th calendar day following the date that the Notice of Distribution is filed.  After such date, all unclaimed Distributions will revert to the Reorganized Debtor and the remaining Claim or Equity Interest of any holder with respect to such Distribution will be discharged and forever barred.

5.      <u>Uncashed Checks</u>.  Checks issued in respect of Allowed Claims and/or Equity Interests will be null and void if not negotiated within 90 calendar days after the date of issuance thereof.  Distributions with respect to such un-negotiated checks will revert to the Reorganized Debtor and the remaining Claim or Equity Interest of any holder with respect to such Distribution will be discharged and forever barred.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      **Executory Contracts and Unexpired Leases**

The Debtor reserves the right to reject certain executory contracts and unexpired leases prior to the Effective Date, subject to the consent of the Agent.  All executory contracts and unexpired leases not expressly rejected will be deemed assumed pursuant to the Plan.

B.      **Assumed Executory Contracts and Unexpired Leases**

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject filed on or before the Confirmation Date. Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtor during this Chapter 11 Case shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Damages arising from the rejection of an executory contract or unexpired lease shall be a General Unsecured Claim against the Debtor unless subordinated under applicable law. Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be asserted in a Proof of Claim filed with the Bankruptcy Court no later than 20 calendar days following the latter of: (a) the date of entry of an order of the Bankruptcy Court approving such rejection, or (b) the Effective Date of the Plan. Any Claims not filed within such times shall be discharged and forever barred. The Reorganized Debtor shall mail or e-mail a notice to all known affected parties of the Debtor's rejection of executory contracts and unexpired leases, which shall include the deadline for asserting claims for damages arising from the rejection of such executory contracts and unexpired leases.

**D.      Indemnification**

On and as of the Effective Date, the Indemnification Obligations will be assumed, irrevocable with respect to any claims relating to acts or omissions occurring at or prior to the Effective Date, and will survive the effectiveness of the Plan. The Debtor shall provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtor's and the Reorganized Debtor's directors, officers, employees, or agents that were employed by, or serving on the Board, including but not limited to, Jeremy Rosenthal, Troy Pike and Curt Lindeman, as of the Effective Date, to the fullest extent permitted by law and at least to the same extent as the organizational documents of the Debtor on the Effective Date, against any Claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and, notwithstanding anything in the Plan to the contrary, the Reorganized Debtor will not amend and/or restate its organizational documents before or after the Effective Date to terminate or adversely affect the Reorganized Debtor's obligations to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights with respect to any claims relating to acts or omissions occurring at or prior to the Effective Date. Nothing in this provision is intended to limit or prohibit the Reorganized Debtor's right to challenge, dispute or otherwise address any claim of or for indemnification.

**E.      Insurance Policies**

Notwithstanding anything herein to the contrary, all of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto, including all D&O Liability Insurance Policies (including tail coverage liability insurance). Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's assumption of all such insurance policies, including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtor under the Plan as to which no Proof of Claim or Claim for Cure Costs need be filed, and shall survive the Effective Date.

**F.**      **Reservation of Rights**

Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an executory contract or unexpired lease or that the Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have 30 calendar days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## ARTICLE X
## EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

**A.**      **Impaired Classes to Vote**

Each impaired Class of Claims and Equity Interests shall be entitled to vote separately to accept or reject the Plan.  A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim or Equity Interest shown as fixed, liquidated and undisputed in the Debtor's Schedules and is not the subject of a subsequently filed objection as to such fixed, liquidated and undisputed amount.

**B.**      **Acceptance by Class**

A class shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Equity Interests of such class that have voted to accept or reject the Plan.

**C.**      **Reservation of Cramdown Rights**

In the event that any impaired class shall fail to accept this Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of § 1129(b) of the Bankruptcy Code.

## ARTICLE XI
## SETTLEMENT, RELEASE, INJUNCTION AND EFFECT OF CONFIRMATION

**A.**      **Legally Binding Effect**

The provisions of the Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan. On and after the Effective Date, all holders of Claims and Equity Interests shall be precluded and enjoined from asserting any Claim (i) against the Debtor, the Reorganized Debtor or its assets and properties based on any transaction or other activity of any kind that occurred prior to the Effective Date except as permitted under the Plan; and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

**B.**      **Injunction**

**The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtor, the Reorganized Debtor and their assets and properties and any proceedings not yet instituted against the Debtor, the Reorganized Debtor or their assets and properties, except as otherwise provided in the Plan.  Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtor or its assets and properties are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor, or their assets and properties, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or the Reorganized Debtor, or their assets and properties, (c) creating,**

perfecting, or enforcing any encumbrance of any kind against the Debtor or the Reorganized Debtor, or their assets and properties, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtor or the Reorganized Debtor, or the property of the Debtor, the Estate or the Reorganized Debtor with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtor, the Estate or the Reorganized Debtor except as specifically permitted by § 553 of the Bankruptcy Code.  Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.

**C.     Exculpation**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the filing, administration and prosecution of the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing of the Disclosure Statement, the Plan, the Forbearance Agreement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Case, the filing, administration and prosecution of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**D.     Releases by the Debtor**

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor, the Reorganized Debtor, and its Estate from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtor, that the Debtor, the Reorganized Debtor, or the Estate (as applicable) would have been legally entitled to assert in its own right or on behalf of the holder of any Claim against, or Interest in, the Debtor or that any holder of any Claim against, or Interest in, the Debtor could have asserted on behalf of the Debtor, based on or relating to, or in any manner arising from, in whole or in part:  the Debtor (including the management, governance, ownership, or operation thereof), any securities issued by the Debtor and the ownership thereof, the Debtor's restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtor), the filing, administration and prosecution of the Chapter 11 Case, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Forbearance Agreement and any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in

29

connection with the Disclosure Statement, the Plan, the Forbearance Agreement, the Chapter 11 Case, the filing, administration and prosecution of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party under the Plan, or any document, instrument, or agreement (including the Forbearance Agreement) executed to implement the Plan or the Restructuring or (b) any individual from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor's release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor's release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor; (c) in the best interests of the Debtor and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor, the Reorganized Debtor, or the Debtor's Estate asserting any Claim or Cause of Action released pursuant to the Debtor's release.

**E.**      **Releases by the Releasing Parties**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have released and discharged each of the Debtor, Reorganized Debtor, and each other Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtor, the Reorganized Debtor, or the Estate (as applicable), that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, governance, ownership or operation thereof), any securities issued by the Debtor and the ownership thereof, the Debtor's restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtor), the Chapter 11 Case, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Forbearance Agreement, or any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Forbearance Agreement, the Chapter 11 Case, the filing, administration and prosecution of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity, including the Debtor and the Reorganized Debtor, under the Plan or any document, instrument, or agreement (including the Forbearance Agreement) executed to implement the Plan or (b) any individual from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Releases, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Releases are:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released; (e) in the best interests of the Debtor and its Estate; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action.

F.       **Discharge of the Debtor**

        Pursuant to § 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees/representatives of the Debtor prior to the Effective Date or that arise from a termination of employment, termination of retention of a professional or quasi-professional, or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, in this Chapter 11 Case whether or not:  (a) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is filed or deemed filed pursuant to § 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to § 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan.  Subject to the terms of the Plan and the Confirmation Order, any default by the Debtor with respect to any Claim or Interest that existed immediately prior to or on account of the filing of this Chapter 11 Case shall be deemed satisfied on the Effective Date.  Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, its Estate, the Reorganized Debtor and all successors thereto.  As provided in § 524 of the Bankruptcy Code, subject to the terms of the Plan, such discharge shall void any judgment against the Debtor, its Estate, the Reorganized Debtor or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged, and operates as an injunction against the prosecution of any action against the Reorganized Debtor or its property and assets to the extent it relates to a discharged Claim or Interest.

G.       **Continuation of Anti-Discrimination Provisions of the Bankruptcy Code**

        A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtor, the Reorganized Debtor, or another Person with whom the Debtor has been or is associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.  Moreover, a Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to the Debtor or the Reorganized Debtor based upon any requirement that the Debtor or the Reorganized Debtor place a bond or other surety obligation with such Governmental Unit as a condition of receipt of such a license, permit, charter, franchise, or other similar grant to the Debtor or the Reorganized Debtor.  All licenses, permits, charters, franchises, or other similar grants to the Debtor are hereby transferred and assigned on the Effective Date (which transfer and assignment is without the assumption of any liabilities arising prior to the Effective Date which liabilities arise out of such license, permit, charter, franchise or similar grant) to the Reorganized Debtor without the need for further application or approval by any Governmental Unit.

H.       **Preservation of Claims and Rights**

        Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless the Plan or the Confirmation Order specifically and unambiguously so provides.  The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

        **The Reorganized Debtor reserves any and all Claims and rights against any and all third parties, whether such Claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the record date and/or any Distribution Date, including, without limitation, any and all Causes of Action, Rights of Action and/or Claims for relief that the Debtor or the Reorganized Debtor may have against (i) any**

31

**insurer and/or insurance policies in which either the Debtor and/or its current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers; or (ii) any recipient of a transfer by the Debtor occurring either before or during this Chapter 11 Case. The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Reorganized Debtor relating to any Claims, Causes of Action or Rights of Action referred to in this Article XI, or otherwise. The Reorganized Debtor shall constitute the representative of the Estate for purposes of retaining, asserting and/or enforcing Rights of Action under § 1123(b)(3)(B) of the Bankruptcy Code. On the Effective Date, the Reorganized Debtor shall be substituted as a party of record in all pending litigation brought by or against the Debtor without need for further order of the Bankruptcy Court.**

## ARTICLE XII
## CONFIRMATION OF THE PLAN

### A.      Confirmation Hearing

Section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan (the Confirmation Hearing). The Confirmation Hearing has been scheduled before the Honorable David R. Jones, Chief United States Bankruptcy Judge, on November 20, 2020 at 10:00 a.m. Central Time. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) provides that any party in interest may object to confirmation of the Plan. However, an impaired Creditor, who votes to accept the Plan, may not have standing to object to the Plan. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014 and any applicable Local Rules of the Bankruptcy Court. The deadline for filing objections to confirmation of the Plan is November 18, 2020 at 5:00 p.m. Central Time. Objections to confirmation must be filed with the Clerk of Court.

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY FILED AND SERVED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

### B.      Statutory Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in § 1129 of the Bankruptcy Code, these requirements are as follows:

1.      The Plan complies with the applicable provisions of the Bankruptcy Code.

2.      The proponent of the Plan complies with the applicable provisions of the Bankruptcy Code.

3.      The Plan has been proposed in good faith and not by any means forbidden by law.

4.      Any payment made or to be made by the Plan proponent, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.

5.      The proponent of the Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, or a successor to the Debtor under the Plan; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and with public policy; and the proponent of the Plan has disclosed the identity of any insider that will be employed or retained by the Debtor, and the nature of any compensation for such insider.

6.      Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor, has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

7.      With respect to each class of impaired claims or equity interests:

(a)      each holder of a claim or interest of such class:

(i)       has accepted the Plan; or

(ii)      will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date; or

(b)      if § 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the Plan on account of such claim property of a value, as of the effective date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secured such claims.

8.      With respect to each Class of claims or interests:

(a)      such Class has accepted the Plan; or

(b)      such Class is not impaired under the Plan.

9.      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that:

(a)      with respect to a claim of a kind specified in § 507(a)(1) or § 507(a)(2) of the Bankruptcy Code, on the effective date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(b)      with respect to a class of claims of a kind specified in §§ 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive:

(i)       if such class has accepted the Plan, deferred cash payments of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or

(ii)      if such class has not accepted the Plan, cash on the effective date of the Plan equal to the allowed amount of such claim; and

(c)      with respect to a claim of a kind specified in § 507(a)(8) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the Plan, equal to the allowed amount of such claim.

10.     If a class is impaired under the Plan, at least one class of claims that is impaired has accepted the Plan, determined without including any acceptance of the Plan by any insider.

11.     Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Plan proponent or any successor to the Plan proponent under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtor believes that the Plan satisfies all the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposal of the Plan is made in good faith.

The Debtor further believe that the holders of all Claims impaired under the Plan will receive payments or distributions under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received by such holders if the Debtor were liquidated in a case under Chapter 7 of the Bankruptcy Code.

Finally, the Debtor does not believe that the confirmation of the Plan will likely be followed by the need for further financial reorganization of the Debtor.

## C.     Cramdown

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan does not discriminate unfairly and is "fair and equitable."   A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity interests.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in § 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

1.     **With respect to a class of secured claims, the Plan provides:**

(a)     (i)     that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Plan proponent or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)     that each holder of a claim of such class receives on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)     for the sale, subject to § 363(k) of the Bankruptcy Code, of any property that is subject to the Liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subsection; or

(c)     for the realization by such holders of the indubitable equivalent of such claims.

2.     **With respect to a class of unsecured claims, the Plan provides:**

(a)     that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or

(b)     the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property.

3.     **With respect to a class of interests, the Plan provides:**

(a)     that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the Plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(b)     the holder of any interest that is junior to the interests of such class will not receive or retain under the Plan on account of such junior interest any property.

The Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims.  The Debtor believes that the Bankruptcy Court will find these requirements satisfactory and will confirm the Plan.

**D.     Conditions Precedent to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, which may be waived in writing by agreement of the Debtor, the Agent, and KSCO:

1.      the Confirmation Order, in a form and in substance reasonably satisfactory to the Debtor, the Agent, and KSCO shall have been entered by the Bankruptcy Court;

2.      the form of all documents necessary or appropriate to give effect to the transactions contemplated under this Plan, if any, have been approved and executed;

3.      all required consents, approvals, and authorizations, including Bankruptcy Court approval, if any, have been obtained and in full force and effect and shall not be subject to unfulfilled conditions;

4.      there shall be no stay of the Confirmation Order in effect;

5.      the final version of the Plan, the Forbearance Agreement, and all other documents contained in any supplement to the Plan, including any exhibits, schedules, amendments, modifications, or supplements thereto or other documents contained therein shall have been executed or filed, as applicable; and

6.      all other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

The Effective Date is the day selected by the Debtor that is no earlier than the first Business Day after (i) the date the Confirmation Order becomes a Final Order; and (ii) all conditions precedent specified above have been satisfied or waived.

**E.     Annulment of Plan if Conditions Not Waived or Satisfied**

The Debtor reserves the right to waive any of the conditions precedent to the Effective Date, with the consent of the Agent and KSCO.  If any of the conditions precedent are not waived, and are not satisfied within the specified time periods or can no longer occur, the Confirmation Order will be annulled and the Debtor and all parties in interest will return to the status quo ante immediately before the entry of the Confirmation Order.

**F.     Retention of Jurisdiction by Bankruptcy Court**

The Bankruptcy Court shall retain and have exclusive jurisdiction over this Chapter 11 Case to the maximum extent provided by law for the following purposes following the Confirmation Date:  (a) to determine any and all objections to the allowance and classification of Claims or Interests; (b) to determine the validity and priority of any Lien; (c) to determine the Allowed Amount of any Claim, whether secured or unsecured; (d) to allow any and all applications for allowances of compensation and reimbursement of expenses payable from the Estate; (e) to determine any and all applications or motions pending before the Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any executory contract or unexpired lease; (f) to consider and approve any modification of the Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order; (g) to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument

35

or other document governing or related to any of the foregoing; (h) to consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor; (i) to issue orders in aid of execution and implementation of the Plan and the Confirmation Order, to the extent authorized by 11 U.S.C. § 1142 or provided by the terms of the Plan; (j) to hear and determine matters concerning federal, state or local taxes in accordance with §§ 346, 505 or 1146 of the Bankruptcy Code, and (k) to consider any Cause of Action asserted by the Debtor, including any claim for offset, set off, recoupment.

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## ARTICLE XIII
## NOTICE PROVISIONS

**A.     Notices**

All notices, requests, elections or demands in connection with this Plan, including any change of address of any Creditor or Interest Holder for the purposes of receiving Distributions under the Plan and to avoid forfeiting the same pursuant to this Plan, shall be in writing and shall be delivered personally, by facsimile, overnight courier or first class mail.  Such notice shall be deemed to have been given when received or, if mailed by first class mail, five Business Days after the date of mailing, or if by overnight courier, the next Business Day following the date of mailing. Notices required to be sent to the following parties under this Plan shall be addressed to:

    1.     **To the Debtor/Reorganized Debtor:**

Volusion, LLC
1835A Kramer Lane, Suite 100
Austin, TX  78758
Attention:  Troy Pike
E-mail:     troy.pike@volusion.com

with a copy, which shall not constitute notice, to:

Jackson Walker LLP
1401 McKinney Street, Suite 1900
Houston, TX  77010
Attention:  Matthew D. Cavenaugh
                   Jennifer F. Wertz
Email:     mcavenaugh@jw.com
                   jwertz@jw.com

    2.     **To the Agent and/or the Secured Lenders:**

Main Street Capital Corporation
1300 Post Oak Blvd, 8th Floor
Houston, TX  77056
Attention:  Jesse E. Morris
E-mail:     jmorris@mainstcapital.com

with a copy, which shall not constitute notice, to:

Cole Schotz P.C.
301 Commerce Street, Suite 1700
Fort Worth, TX  76102
Attention:  Michael D. Warner
E-mail:     MWarner@coleschotz.com

**B.      Limitation on Notice**

The Debtor/Reorganized Debtor shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of such matters with no requirement for any additional or further notice:

1.      **Notice of Entry of Confirmation Order**

Notice of the Effective Date shall be sufficient if mailed or e-mailed to all known holders of Claims and Equity Interests (which have not become Disallowed as of the date of mailing).  Such notice shall be mailed or e-mailed within five Business Days of the Effective Date.

Post Confirmation Date Service.  From and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process filed with the Court prior to such date shall no longer be effective.  No further notices (other than notice of entry of the Confirmation Order) shall be required to be sent to any entities or Persons, except those Persons specified in the Plan, the Office of the U.S. Trustee and any Creditor or Interest Holder who files a renewed request for service of pleadings and whose Claim has not been fully satisfied.

2.      **General Notice To Creditors**

All notices and requests to Creditors or Interest Holders of any Class shall be sent to them at the addresses or e-mail addresses set forth on the Proofs of Claim or, if no Proof of Claim was filed, to their last known address or e-mail address as reflected in the Debtor's records.  Any Creditor or Interest Holder may designate in writing any other address for purposes of this Article XIII, which designation shall be effective upon receipt by the Reorganized Debtor.

**ARTICLE XIV**
**COMPROMISES AND SETTLEMENTS**

**A.      Effect of Confirmation Order**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

**ARTICLE XV**
**MISCELLANEOUS PROVISIONS**

**A.      Bar Date for Administrative Claims**

No Administrative Claim, other than Professional Fees and United States Trustee fees and administrative claims for the actual cost of goods and services provided to the Debtor in the ordinary course of business, will be paid unless the holder of such Administrative Claim files an application for payment of such Administrative Claim on or before the Administrative Claim Bar Date.  Upon the filing of any application for payment, the entity seeking payment of an Administrative Claim shall provide notice by United States Mail in accordance with the Bankruptcy Rules.  Any Administrative Claim, other than Professional Fees, United States Trustee fees and administrative claims for the actual cost of goods and services provided to the Debtor in the ordinary course of business, not filed in accordance with the Plan shall be barred and the Debtor and the Reorganized Debtor shall have no liability for payment of any such Administrative Claim, without further order of the Bankruptcy Court.

**B.      Objections to Administrative Claims**

Objections to Applications for payment of Administrative Claims may be filed by any party in interest.  In order to be considered, such objections must be filed on or before the 21st calendar day following the date on which the application was filed.  Any objections will be determined by the Bankruptcy Court.

**C.      Payment of Professional Claims**

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash, in full, on the Effective Date, or, if such Claim has not been approved by the Bankruptcy Court on or before the Effective Date, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order.  Final fee applications for any Professional Fee Claim that has not been approved as of the Effective Date shall be filed within 45 calendar days of the Effective Date and such applications and objections thereto (if any) shall be filed in accordance with and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the applicable Local Rules.  The failure to file an application by the foregoing deadline shall constitute a waiver of all such Professional Fee Claim, without further order of the Bankruptcy Court.

**D.      Payment of United States Trustee Fees**

Within 30 calendar days of the date that such payments are due, the Reorganized Debtor shall pay all amounts owing to the United States Trustee as fees and costs imposed in connection with this Chapter 11 Case.

**E.      Employee Benefits Plans**

Any Employee Benefit Plans maintained by the Debtor shall be continued by the Reorganized Debtor in accordance with applicable law.

**F.      Satisfaction of Liabilities**

The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction and release of all Claims and Interests of any nature whatsoever against the Debtor or its Estate, assets, properties, or interests in property.  Neither the Debtor nor the Reorganized Debtor shall be responsible for any pre-Effective Date obligations of the Debtor, except pursuant to the terms of the Plan.

**G.      Compliance with Tax Requirements**

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Reorganized Debtor shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Reorganized Debtor within 30 calendar days from the date of such request, the Reorganized Debtor may, at its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

**H.      Amendment of the Plan**

The Plan may be amended or modified by the Debtor with the consent of the Agent and KSCO before, or by the Reorganized Debtor after the Effective Date, as provided in § 1127 of the Bankruptcy Code.

**I.      Timing of Distributions**

When a provision of the Plan requires that a payment shall be made on a certain date, such payment may be made (i) at any time prior to the date on which such payment is due; (ii) in more frequent intervals than set forth in such provision of the Plan; or (iii) not more than 14 calendar days after the date any such payment is due.

Notwithstanding the foregoing and unless specifically set forth to the contrary in the Plan, no payment shall be considered late or otherwise result in a default unless the Reorganized Debtor has failed to make the payment after the passage of 30 calendar days following the receipt by the Reorganized Debtor of a written notice advising that a payment has not been received in accordance with the times set forth in this Section XV.I.

**J.      Enforcement of Subordination Agreements/Settlement Agreements**

Any written (i) subordination agreement between holders of Allowed Claims; and (ii) settlements approved by the Bankruptcy Court during this Chapter 11 Case will be honored according to their terms for the purposes of distribution under the Plan.

**K.      Filing of Documents in Public Records**

Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security or the making of an instrument of transfer under this Plan (including without limitation the filing of any mortgage, deed of trust, security agreement, uniform commercial code financing statement or other similar document) shall not be taxed under any law imposing a stamp tax or similar tax.  All state or local governmental officials or agents are hereby directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**L.      Right to Seek Further Orders**

The Reorganized Debtor, if and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions, of the Plan.

**M.      Regulatory Approvals**

As the Plan is not intended to modify or supplant any regulatory authority over the Debtor or the Reorganized Debtor, all regulatory approvals required in connection with the Plan will be sought and obtained.

**N.      Withdrawal of Plan**

The Debtor reserves the right to withdraw the Plan at any time prior to the Confirmation Date.  If the Debtor withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtor, the Estate or any other person, or to prejudice in any manner the rights of the Debtor, the Estate or any person in any further proceedings involving the Debtor.

**O.      Due Authorization by Creditors**

Each and every Creditor who elects to participate in the Distributions provided for herein (i) warrants that it is authorized to accept in consideration of its Claim against the Debtor the Distributions provided for in the Plan; (ii) states that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan; and (iii) indemnifies and holds harmless the Reorganized Debtor and their professionals and representatives with respect to such Distributions.

**P.      Filing of Additional Documentation**

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Q.      Implementation**

The Debtor and the Reorganized Debtor shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

**R.      Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

**S.      Further Effect of Confirmation**

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim or Cause of Action unless the Plan or the Confirmation Order specifically so provides.  The non-disclosure or non-discussion of any particular Claim or Cause of Action is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim or Cause of Action.

**T.      Reservation of Claims**

The Debtor and the Reorganized Debtor reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the record date and/or any Distribution Date, including, without limitation, any and all Claims and Causes of Action for relief that the Debtor, the Reorganized Debtor or the Reorganized Debtor may have against any director, officer, any insurer under any insurance policy, or any other person or entity.  The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Debtor or the Reorganized Debtor relating to any Claims or Causes of Action.

**U.      Dates**

The provisions of Bankruptcy Rule 9006 shall govern the calculation of any dates or deadlines referenced in the Plan.

**V.      Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law principles.

**W.      Conflict**

Except as otherwise provided in this Plan, to the extent the Plan is inconsistent with the Confirmation Order and/or any agreement entered into between the Debtor and any third party, the Plan controls any such agreements and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan.

**X.      Severability**

The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtor and such severance would constitute a permissible modification of this Plan pursuant to § 1127 of the Bankruptcy Code.

**Y.      Setoffs**

The Reorganized Debtor may, but shall not be required to, set off against any Claims and the payments or Distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature whatsoever that the Estate or the Reorganized Debtor may have against the holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Reorganized Debtor of any such claims they may have against such holder of any Claim, and all such claims shall be reserved for and retained by the Reorganized Debtor.

**Z.      Further Action**

Nothing contained in the Plan shall prevent the Reorganized Debtor from taking such actions as may be necessary to consummate the Plan, even though such actions may not specifically be provided for within the Plan.

**AA.      Other Considerations**

The Plan affords holders of Claims the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of such holders.  If the Plan is not confirmed, however, the theoretical alternatives include: (a) continuation of the Chapter 11 Case; (b) alternative plans of reorganization/liquidation; (c) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code; and (d) dismissal of the Chapter 11 Case.

**BB.      Feasibility of the Plan**

Pursuant to the Plan, the Debtor proposes to restructure its indebtedness to the Secured Lenders and provide for payment to unsecured Creditors.  Therefore, the Plan is feasible.

**CC.      Alternative Plans of Reorganizations**

If the Plan is not confirmed, another party in interest in the case could attempt to formulate and propose a different plan or plans.  Such plans might, theoretically, involve some other form of reorganization or liquidation of the Debtor's property.  Any alternative plans, however, would likely result in additional administrative expenses to the Estate and would provide little or no benefit.  The Plan proposed by the Debtor is straightforward, meets the requirements of § 1129 and provides the best outcome for Creditors.

**DD.      Liquidation under Chapter 7**

The Debtor does not believe that the case should be converted to Chapter 7.  Conversion to Chapter 7 would result in the loss of the going concern value of the Debtor as well as the additional administrative expenses attributable to statutory trustee fees and professional fees for the trustee's professionals.  In a Chapter 7 liquidation, the Debtor believes that the Secured Lenders would be permitted to foreclose on its security interest and that no payments would be made to other Creditors other than the ad valorem taxing authorities.  To the contrary, under the Plan, all secured Creditors should be paid in full, and funds will be available for the payment of administrative, priority and other unsecured claims.  This is an estimate only and constitutes the Debtor's best estimation based upon the data currently available.

**EE.      Risk Factors**

Both failure to achieve confirmation of the Plan, and consummation of the Plan, are subject to certain risks.  The effectiveness of the Plan is contingent on execution of documents acceptable to the Main Street Parties and KSCO.  A number of factors can impact the satisfaction of the conditions precedent to the Effective Date, including factors that are outside of the Debtor's control.  While the Debtor believes that the conditions precedent will be accomplished, there is always some risk involved in the type of transaction that is contemplated.

In addition, there are certain risks inherent in the administration process under the Bankruptcy Code.  If certain standards set forth in the Bankruptcy Code are not met, the Bankruptcy Court will not confirm the Plan even if Creditors and Interest holders accept the Plan.  Although the Debtor believes that the Plan meets such standards, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  If the Bankruptcy Court were to determine that such requirements were not met, it could require the Debtor to resolicit acceptances, which could delay and/or jeopardize confirmation of the Plan.  The Debtor believes that the solicitation of votes on the Plan will comply with § 1126(b) and that the Bankruptcy Court will confirm the Plan.  The Debtor cannot, however, provide assurance that modifications of the Plan will not be required to obtain confirmation of the Plan, or that such modifications will not require a resolicitation of acceptances.

**FF.     Taxation**

    1.     **Introduction**

The following discussion summarizes certain federal income tax consequences of the transactions described herein.  This discussion is for informational purposes only and does not constitute tax advice.  This summary is based upon the Internal Revenue Code and the Treasury Regulations promulgated thereunder, including judicial authority and current administrative rulings and practice as of the date of this Plan and Disclosure Statement and will not be updated for subsequent tax or factual developments.  Neither the impact on foreign holders of claims and equity interests nor the tax consequences of these transactions under state and local law is discussed.  Also, special tax considerations not discussed herein may be applicable to certain classes of taxpayers, such as financial institutions, broker-dealers, insurance companies, mutual funds, regulated investment companies, real estate investment trusts, trusts, S corporations, dealers and traders in securities and currencies, partnerships and other entities classified as partnerships for federal tax purposes and tax-exempt organizations.  Furthermore, due to the complexity of the transactions contemplated in the Plan, and the unsettled status of many of the tax issues involved, the tax consequences described below are subject to significant uncertainties including subsequent legislative and other tax changes.  No opinion of counsel has been obtained and no ruling has been requested from the Internal Revenue Service on these or any other tax issues.  There can be no assurance that the Internal Revenue Service will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.  HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE THEREFORE URGED TO CONSULT WITH THEIR TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN.

    2.     **Tax Consequences to the Debtor**

As of December 31, 2019, the Debtor had no federal net operating loss ("NOL") carryforwards, federal tax credit carryforwards, nor state NOL and tax credit carryforwards.  The Debtor had no interest expense deductions that have been deferred under Section 163(j) of the Tax Code.

The transactions contemplated in the Plan are not expected to give rise to any gain or loss to the Debtor.  The Debtor's tax attributes generally will, subject to the rules of sections 382 and 383 of the Tax Code survive the restructuring process and potentially be usable by the Reorganized Debtor going forward.

    3.     **Tax Consequences to Creditors**

<u>In General</u>.  The federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, on: (a) whether its Claim constitutes a debt or security for federal income tax purposes, (b) whether the Claimant receives consideration in more than one tax year, (c) whether the Claimant is a resident of the United States, (d) whether all the consideration by the Claimant is deemed to be received by that Claimant as part of an integrated transaction, (e) whether the Claimant utilizes the accrual or cash method of accounting for tax purposes, and (f) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

<u>Gain or Loss on Exchange</u>.  Generally, a holder of an Allowed Claim will realize a gain or loss on the exchange under the Plan of his Allowed Claim for cash and other property in an amount equal to the difference between (i) the sum of the amount of any cash and the fair market value on the date of the exchange of any other property received by the holder (other than any consideration attributable to accrued but unpaid interest on the Allowed Claim), and (ii) the adjusted basis of the Allowed Claim exchanged therefore (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income).  Any gain recognized generally will be a capital gain (except to the extent the gain is attributable to accrued but unpaid interest or accrued market discount, as described below) if the Claim was a capital asset in the hand of an exchanging holder, and such gain would be a long-term capital gain if the holder's holding period for the Claim surrendered exceeded one year at the time of the exchange.

The tax treatment of an Allowed Claim for accrued unpaid interest will depend on the Claimant's tax basis in such Claim, which primarily depends on whether the Claimant has previously recognized income for the accrual of such interest and/or recognized a loss with respect to same. Any such holders should consult with its tax advisor regarding the tax treatment of any such accrued unpaid interest.

### 4. Information Reporting and Backup Withholding

Under the backup withholding rules of the Internal Revenue Code, holders of Claims may be subject to backup withholding with respect to payments made pursuant to the Plan unless such holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalties of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividends and interest income. Any amount withheld under these rules will be credited against the holder's federal income tax liability. Holders of Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

### 5. Importance of Obtaining Professional Assistance

THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN. TO COMPLY WITH TREASURY DEPARTMENT CIRCULAR 230, YOU ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT, THE PLAN OR ANY RELATED MATERIALS, IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY YOU, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON YOU UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED; AND (B) ANY SUCH DISCUSSIONS ARE BEING USED ONLY IN CONNECTION WITH SATISFYING THE REQUIREMENTS IMPOSED UNDER THE BANKRUPTCY CODE FOR DISCLOSURE STATEMENTS, AND (C) YOU SHOULD SEEK ADVICE FROM AN INDEPENDENT TAX ADVISOR WITH RESPECT TO YOUR FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES BASED ON YOUR PARTICULAR CIRCUMSTANCES.

## ARTICLE XVI
## CAUSES OF ACTION

### A. Preferences

Under the Bankruptcy Code, the Debtor may recover certain preferential transfers of property, including cash, made while insolvent during the 90 calendar days immediately prior to the filing of its bankruptcy petition with respect to pre-existing debts, to the extent the transferee received more than it would have in respect of the pre-existing debt had the Debtor been liquidated under Chapter 7 of the Bankruptcy Code. In the case of "insiders," the Bankruptcy Code provides for a one-year preference period. There are certain defenses to such recoveries. Transfers made in the ordinary course of the Debtor's and transferee's business according to the ordinary business terms in respect of debts less than 90 calendar days before the filing of a bankruptcy are not recoverable. Additionally, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case), such extension of credit may constitute a defense to recovery, to the extent of any new value, against an otherwise recoverable transfer of property. If a transfer is recovered by the Debtor, the transferee has an Unsecured Claim to the extent of the recovery. The Reorganized Debtor reserves the right to bring preferential transfer claims.

### B. Fraudulent Transfers

Under the Bankruptcy Code and various state laws, the Debtor may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered the Debtor insolvent. The Reorganized Debtor reserves the right to bring fraudulent conveyance claims.

The Debtor conducted an analysis of potential recoveries under Chapter 5 of the Bankruptcy Code and Texas law. The Debtor concluded that potential claims do exist with regards to certain former professionals, quasi-professionals, consultants, employees and a contractor. A list of the known payments are set forth in the Debtor's statements of financial affairs, which are incorporated herein. The failure to schedule a payment in the Schedules is not to be deemed to be a waiver of any Cause of Action to recover such payment. The recipients of these payments are advised that if they received a voidable transfer, they may be sued whether or not they vote to accept the Plan. All avoidance actions and rights pursuant to §§ 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 and 724 of the Bankruptcy Code and all causes of action under state, federal or other applicable law shall be retained and may be prosecuted or settled by the Reorganized Debtor in its sole discretion.

## ARTICLE XVII
## VOTING PROCEDURES AND REQUIREMENTS

**A.     Ballots and Voting Deadline**

A ballot to be used to vote to accept or reject the Plan is enclosed. A Creditor who is voting must (1) carefully review the ballot and instructions thereon, (2) complete and execute the ballot indicating the Creditor's vote to either accept or reject the Plan, and (3) return the executed ballot to the address indicated thereon by the deadline specified by the Bankruptcy Court.

The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtor no later than November 18, 2020, at 5:00 p.m. Central Time.

If you hold an impaired Claim against the Debtor return your ballot to:

> Jackson Walker LLP
> 1401 McKinney Street, Suite 1900
> Houston, TX  77010
> Attention: Jennifer F. Wertz
> Phone:     512-236-2247
> Fax:        512-391-2147
> Email:      jwertz@jw.com

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED NO LATER THAN NOVEMBER 18, 2020, AT 5:00 P.M. CENTRAL TIME.**

**B.     Creditors Entitled to Vote**

Any (i) Creditor whose Claim is impaired and (ii) Interest Holder whose Interest is impaired under the Plan is entitled to vote, if either (1) the Debtor has scheduled its Claim on its Statement of Liabilities and such Claim is not scheduled as disputed, contingent or unliquidated, or (2) such Creditor has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for filing Proofs of Claim and no objection has been filed to such Claim.

Holders of Disputed Claims are not entitled to vote on the Plan. Any Claim to which an objection has been filed and remains pending, is not entitled to vote unless the Bankruptcy Court, upon motion by the Creditor who holds a Disputed Claim, temporarily allows the Claim in an amount that it deems proper for accepting or rejecting the Plan. Any such motion must be heard and determined by the Bankruptcy Court before the date established by the Bankruptcy Court as the final date to vote on the Plan. In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by the Creditor was not solicited or obtained in good faith or according to the provisions of the Bankruptcy Code.

Classes of Claims that are not impaired are deemed to have accepted a plan of reorganization pursuant to § 1126(f) and, therefore, are not entitled to vote on a plan. Pursuant to § 1126, only classes of claims or interests that are "impaired" are entitled to vote on a plan of reorganization. Generally, a claim is impaired if the plan of reorganization alters the legal, equitable, or contractual rights to which the holder of such claim is otherwise entitled.

44

C.      **Voting Procedures**

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, revocation, or withdrawal of ballots will be determined by the Debtor, in its sole discretion, and the Debtor's determination will be final and binding.  The Debtor also reserves the right to reject any ballot not in proper form, the acceptance of which would, in the opinion of the Debtor or its counsel, be unlawful. The Debtor further reserves the right to waive any defects or irregularities or conditions or delivery as to any particular ballot.  The interpretation by the Debtor of the provisions of this Plan and Disclosure Statement and the ballots will be final and binding on all parties in interest unless otherwise directed by the Bankruptcy Court.  Unless waived, any defects or irregularities concerning deliveries of ballots must be cured within such time as the Debtor (or the Bankruptcy Court) determine.  Neither the Debtor nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of ballots nor will any of them incur any liability for failure to provide such notification.  Unless otherwise directed by the Bankruptcy Court, delivery of ballots will not be deemed to have been made and will be invalidated unless or until all defects and irregularities have been timely cured or waived.

D.      **Vote Required for Class Acceptance**

The Bankruptcy Code defines acceptance of a chapter 11 plan by a class of Claims as the acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half in number of the allowed Claims of the class actually voting to accept or reject the proposed plan.  The Bankruptcy Code defines acceptance of a chapter 11 plan by a class of Interests as the acceptance by holders of at least two-thirds (2/3) in amount of the allowed Interests in the class actually voting to accept or reject the proposed plan.

E.      **Cramdown and Withdrawal of the Plan**

If the Plan is not accepted by all Classes of impaired Creditors, the Debtor reserves the right to withdraw the Plan.  If the Plan is accepted by one or more Classes of impaired Creditors of the Debtor, the Debtor reserve the right to request the Bankruptcy Court to approve the Plan under 11 U.S.C. § 1129(b).

**ARTICLE XVIII**
**CONCLUSION, RECOMMENDATION, AND CONFIRMATION REQUEST**

The Debtor believes that confirmation of the Plan is desirable and in the best interests of all holders of Claims and Interests.  The Debtor therefore urges you to vote to accept the Plan and to evidence such acceptance by returning your ballot so it will be received by the deadline.

The Debtor requests confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.


Dated:  November 19, 2020                    Respectfully submitted,

                                             Volusion, LLC


                                             By:     /s/  Troy Pike
                                             Name:   Troy Pike
                                             Title:  Interim Chief Executive Officer

**Exhibits**

| | |
|---|---|
| **Exhibit A** | **Forbearance Agreement** |
| **Exhibit B** | **Sale Milestones** |
| **Exhibit C** | **October Monthly Operating Report** |

**Exhibit A**
**Forbearance Agreement**

[attached]

## SECOND FORBEARANCE AGREEMENT

THIS SECOND FORBEARANCE AGREEMENT (hereinafter, this "**Agreement**") is made as of [✱], 2020, by and among Volusion, LLC, a Delaware limited liability company (the "**Company**"), and each of the Company's Subsidiaries (other than Excluded Subsidiaries) party to the Loan Agreement (defined below) (together with the Company, each a "**Borrower**" and collectively, the "**Borrower**"), KSCO Holdings, Inc., a Texas corporation ("**KSCO**" and together with Borrower, the "**Loan Parties**"), the financial institutions party to the Loan Agreement as Lenders (each a "**Lender**" and collectively, the "**Lenders**"), and Main Street Capital Corporation, as Administrative Agent and Collateral Agent for itself and the Lenders (in such capacity, the "**Agent**").  The Loan Parties, the Lenders, and the Agent may hereafter be referred to individually as a "**Party**" and collectively as the "**Parties**".

## RECITALS

**WHEREAS,** the Borrower entered into that certain Amended and Restated Loan Agreement, dated November 23, 2016, among the Borrower, the Lenders, and the Agent (as amended, amended and restated, supplemented or otherwise modified from time to time, the "**Loan Agreement**");

**WHEREAS,** prior to July 22, 2020, the Lenders and the Agent alleged that certain Events of Default under the Loan Agreement have occurred and are continuing, including, without limitation, the Borrower's failure to pay the Principal Debt on the Maturity Date (collectively, the "**Initial Defaults**"), and the Lenders, through the Agent, have exercised certain, but not all, of their rights and remedies under the Loan Documents as a result thereof;

**WHEREAS,** on July 22, 2020, the Borrower, the Lenders, and the Agent entered into that certain forbearance letter agreement (the "**First Forbearance Agreement**") pursuant to which the Lenders agreed to forbear from any further exercise of their rights and remedies solely against Borrower as a result of the Initial Defaults pursuant to the terms thereof;

**WHEREAS,** on July 27, 2020, the Company commenced a Chapter 11 Case in the United States Bankruptcy Court for the Southern District of Texas, Laredo Division (the "**Bankruptcy Case**"), assigned case number 20-50082 (DRJ), captioned In Re: Volusion, LLC;

**WHEREAS,** various Events of Default under the Loan Agreement have occurred and are continuing under the Loan Agreement, all of which are set forth on Exhibit "A" attached hereto (collectively, the "**Existing Defaults**"); and

**WHEREAS,** the Parties have agreed to support a Plan of Reorganization (the "**Plan**") for the Borrower; and subject to such Plan becoming effective on the Effective Date (as such term is defined in the Plan) the Parties hereto have agreed to enter into concurrent with the Effective Date this Agreement pursuant to which the Borrower has requested that the Lenders and the Agent forbear from any further exercise of their rights and remedies under the Loan Documents as a result of the Existing Defaults, and the Lenders and the Agent are willing to forbear from any further exercise of their rights and remedies with respect to the Existing Defaults, on the terms specifically set forth herein and for the consideration set forth herein.

**NOW, THEREFORE,** in consideration of the premises herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

**ARTICLE I**

**Definitions**

**1.01**    Capitalized terms used in this Agreement, to the extent not otherwise defined herein, shall have the same meaning as in the Loan Agreement or the Plan, as applicable.

**ARTICLE II**

**Existing Defaults**

**2.01**    **Existing Defaults**.  The Loan Parties hereby acknowledge, confirm and agree that (a) each Existing Default has occurred and is continuing, (b) each Existing Default constitutes a Default under and as defined in the Loan Agreement, and (c) as a result of such Existing Defaults, the Agent and Lenders are entitled to exercise their rights and remedies pursuant to and subject to the terms and conditions of the Loan Documents subject to the Bankruptcy Case.  The Loan Parties, and by their acceptance hereof, the Agent and the Lenders, acknowledge and agree that as of the date hereof they have no knowledge of any Default other than the Existing Defaults and the continuation of the Forbearance shall be governed by the terms hereof, including the terms set forth in Section 5.02 and Section 5.03 with respect to the termination thereof upon the occurrence of certain events and the documents referenced herein.

**ARTICLE III**

**Forbearance; Certain Agreements**

**3.01**    In reliance upon the representations, warranties and covenants of the Loan Parties contained in this Agreement and subject to the terms and conditions of this Agreement and any document or instrument executed in connection herewith, the Agent and Lenders hereby agree to forbear, from the date hereof until the earlier to occur of (a) 5:00 p.m. (Central time) on June 30, 2021, and (b) the date this Agreement otherwise terminates pursuant to the terms and conditions set forth herein (the "**Forbearance Termination Date**"), from exercising their rights and remedies under the Loan Documents or otherwise at law or in equity against the Loan Parties arising as a result of the Existing Defaults (the "**Forbearance**").

**3.02**    In addition to the Agent and the Lenders' agreement to forbear from the exercise of their rights and remedies against the Borrower until the Forbearance Termination Date pursuant to Sections 3.01 above, subject to the terms and conditions of this Agreement (including, without limitation, Sections 5.02 and 5.03 hereof) and any document or instrument executed in connection herewith, the Agent and the Lenders also agree to forbear from the exercise of their rights and remedies against KSCO under the Loan Documents to which it is a party or otherwise at law or in equity until the Forbearance Termination Date, subject to KSCO's compliance with the terms of this Agreement and the Plan.

**3.03**    Nothing contained in this Agreement shall be construed as a waiver or forgiveness by the Agent or Lenders, or as a cure of, (x) the Existing Defaults, (y) any other Default under and as

2

defined in the Loan Agreement or (z) any Forbearance Event of Default (as defined herein) under this Agreement, in each instance whether now existing or hereafter occurring, as against or with respect to the Loan Parties.  The Forbearance shall terminate on the Forbearance Termination Date, and at any time from and after the Forbearance Termination Date, the Agent and Lenders shall be entitled to exercise their rights and remedies under this Agreement and the Loan Documents without notice, except as provided herein, so long as any Existing Default or any other Default or Forbearance Event of Default shall be continuing.  Except as limited and/or modified by this Agreement, the Plan, and by the documents executed in connection herewith, the Loan Documents shall be deemed to be in full force and effect during the period of this Agreement, and all provisions of the Loan Documents relating to the rights and remedies of all parties thereto shall continue to be in effect until such time as all Obligations have been finally paid in full in cash.

## ARTICLE IV
## Other Agreements

**4.01    Confirmation of Existing Indebtedness and Ratification of Loan Documents**.

(a)    The Loan Parties hereby unconditionally acknowledge and confirm that, as of the date hereof, Borrower is in default under the Loan Documents as set forth above and that the Borrower is absolutely and unconditionally liable and indebted to the Lender for all existing and future indebtedness evidenced by the Loan Documents, without claim, counterclaim, right of recoupment, defense or set-off of any kind or nature whatsoever, which indebtedness, as of the date hereof, is in the amount of [$_____].

(b)    The Loan Parties unconditionally ratify, confirm and reaffirm, in all respects and without condition, all of the terms, covenants and conditions set forth in the Loan Documents and hereby acknowledge, confirm, and agree that the Loan Parties remain unconditionally liable to Lenders in accordance with the respective terms, covenants and conditions of such instruments, agreements and documents and that the Agent has and shall continue to have valid, enforceable and perfected first-priority liens upon and security interests in all of the collateral heretofore granted to the Agent, for the benefit of the Lenders, pursuant to the Loan Documents or otherwise granted to or held by the Agent, for the benefit of the Lender, and that the same shall continue to secure the Obligations as the same may be modified by the terms of this Agreement and the Plan.

(c)    Neither this Agreement nor any other agreement entered into in connection herewith or pursuant to the terms hereof shall be deemed or construed to be a compromise, satisfaction, reinstatement, accord and satisfaction, novation, or release of any of the Loan Documents or any obligations of any Obligor thereunder, or a waiver by Lender of any of its rights under the Loan Documents or at law or in equity.

(d)    Lender has no further obligation to advance any additional moneys under the Loan Documents.

(e)    Except as specifically provided herein, neither this Agreement nor any other agreement executed in connection herewith or pursuant to the terms hereof, nor any actions taken pursuant

3

to this Agreement or such other agreement shall be deemed to cure the Existing Defaults, or to be a waiver by Lender of the Existing Defaults, or of any rights or remedies in connection therewith or with respect thereto, it being the intention of the parties hereto that the obligations of the Loan Parties with respect to the Loan Documents are and shall remain in full force and effect.

(f)    All liens, security interests, rights, and remedies granted to Lender in the Loan Documents are hereby renewed, confirmed, and continued, and shall also secure the performance by Obligors of their obligations hereunder.

(g)    If at any time a payment or payments made by Borrower on any part of the Obligations are subsequently invalidated, declared to be fraudulent or preferential, and are set aside or are required to be repaid to a trustee, receiver, or any other person or entity under the Bankruptcy Code or any state or federal law, common law or equitable cause, then to the extent of such payment or payments, the Obligations intended to be satisfied shall be revived and continued in full force and effect as if such payment or payments had not been made.

**4.02    Interest**.    During the period commencing on the date hereof and ending on the Forbearance Termination Date (the "**Forbearance Period**"), all outstanding Obligations shall accrue interest at the non-Default Rate under the Loan Documents, all of which shall be due and owing in full at the expiration of the Forbearance Period; provided, however, upon the occurrence of a Forbearance Event of Default, interest will accrue at the Default Rate. Commencing on the Forbearance Maturity Date (including, for the avoidance of doubt, as a result of a Forbearance Event of Default), and continuing thereafter until the Obligations are indefeasibly paid or otherwise satisfied in full by virtue of the exercise by Agent and/or the Lenders of their rights and remedies under the Loan Documents including, without limitation, their right to foreclose on all collateral pledged to the Agent and the Lenders to secure the Borrower' obligations to the Agent and the Lenders under the Loan Documents (or the peaceful surrender thereof by Borrower, guarantor and/or pledgor under the Loan Documents), the Loan shall accrue interest at the Default Rate.

**4.03    Monthly Interest Payments**.

(a)    If at the time of a monthly interest payment due date under the Loan Documents, the Company's cash balance is less than $3,000,000, then the Company will make a cash payment to the Agent and the Lenders equal to fifty percent (50%) of the monthly interest payment then due.  The remaining fifty percent (50%) of the then due monthly interest payment will be accrued and added to the then outstanding principal balance of the Loan and accrue interest in accordance with Section 4.02 above.

(b)    If at the time of a monthly interest payment due date under the Loan Documents, the Company's cash balance is less than $2,500,000, then the Company will make a cash payment to the Agent and the Lenders equal to twenty-five percent (25%) of the monthly interest payment then due.  The remaining seventy-five percent (75%) of the then due monthly interest payment will be accrued and added to the then outstanding principal balance of the Loan and accrue interest in accordance with Section 4.02 above.

(c)    If at the time of a monthly interest payment due date under the Loan

Documents, the Company's cash balance is less than $2,000,000, then the Company will not be required to make a cash payment to the Agent and the Lenders and the entire amount of then then due monthly interest payment will be accrued and added to the then outstanding principal balance of the Loan and accrue interest in accordance with Section 4.02 above.

## ARTICLE V
## Conditions Precedent and Additional Covenants

**5.01    Conditions to Effectiveness.**  Notwithstanding anything herein to the contrary, the Forbearance shall be effective upon the Parties having executed and delivered this Agreement, and the Effective Date of the Plan.

**5.02    Failure to Comply; Default.**  If Borrower or KSCO fails to comply with the terms of this Agreement or the Plan or should there occur any Default (other than the Existing Defaults) pursuant to the Loan Documents, such occurrence shall be considered an event of default hereunder (a "**Forbearance Event of Default**").  The occurrence of a Forbearance Event of Default shall entitle Lender, without further notice or demand, to terminate the Forbearance and pursue all of the rights and remedies set forth in the Loan Documents as well as those rights that are available to Lender at law or in equity, or pursuant to the Plan.

**5.03    Covenants Upon Which Continuing Effectiveness of Forbearance is Conditioned.**  Unless each of the following covenants shall be and shall continue to be fully satisfied, at the Lenders' option, the Forbearance shall terminate (each covenant being separate and independent of each other covenant, such that the satisfaction of any one or more, or the waiver of satisfaction by the Lenders of any one or more, shall not affect the absolute obligation of Borrower to satisfy each separate covenant):

        (a)    No breach, default (excluding the Existing Defaults), or failure to perform under this Agreement shall occur and be continuing.

        (b)    No Forbearance Event of Default shall occur or be continuing.

        (c)    No Material Adverse Event shall occur and be continuing.

        (d)    The representations and warranties contained in this Agreement shall be true and correct in all material respects.

        (e)    The Borrower shall continue to operate its businesses in their ordinary course consistent with past practice and the terms of the Plan unless otherwise consented to by the Agent and the Lenders.

        (f)    The Borrower and KSCO shall comply with all of the terms and provisions of the Plan.

        (g)    Except with respect to the Existing Defaults or as otherwise stated herein, the Borrower shall comply with all of the terms and provisions of the Loan Documents.

**5.04    Failure of Covenant/Condition.**    The termination by the Lenders of the Forbearance pursuant to Section 5.02 or Section 5.03 above shall release the Agent and the Lenders from any obligation arising hereunder and shall entitle the Agent and the Lenders to exercise any and all of their rights and remedies available under the Loan Documents.  Following the date that the Forbearance shall become effective, the failure of the Borrower to satisfy or continue to satisfy any covenant or other condition in this Agreement shall constitute a Default under and as defined in the Loan Agreement and a default under this Agreement, and upon such occurrence and continuance, the Agent and Lenders shall be entitled to terminate the Forbearance and to exercise any and all of their rights and remedies under the Loan Documents or at law or in equity.

## ARTICLE VI
### No Waiver

**6.01**    Subject to the Forbearance hereunder, nothing contained herein shall be construed as a waiver by the Agent or any Lender of any covenant or provision of the Loan Agreement, the other Loan Documents, this Agreement, or of any other contract or instrument between Borrower or KSCO, on the one hand, and the Agent or any Lender, on the other hand, and the failure by the Agent or any Lender at any time or times hereafter to require strict performance by Borrower or KSCO of any provision thereof shall not waive, affect or diminish any right of the Agent or such Lender to thereafter demand strict compliance therewith.  Subject to the Forbearance hereunder, the Agent and each Lender hereby reserves all rights granted under the Loan Agreement, the other Loan Documents, this Agreement and any other contract or instrument between Borrower and/or KSCO, on the one hand, and the Agent and Lenders, on the other hand.  This Agreement is not to be construed as a cure, waiver or forgiveness of any Existing Default or of any other Default under and as defined in the Loan Agreement now existing or hereafter arising.

## ARTICLE VII
### Ratifications, Representations and Warranties

**7.01    Ratifications**.  For the period during which the Forbearance is effective, the terms and provisions set forth in this Agreement and the Plan shall modify and supersede all inconsistent terms and provisions set forth in the Loan Documents, and except as expressly modified and superseded by this Agreement and the Plan, the terms and provisions of the Loan Documents are ratified and confirmed and shall continue in full force and effect.  The Loan Parties hereby agree that the Loan Agreement, as amended hereby, and the other Loan Documents shall continue to be legal, valid, binding and enforceable in accordance with their respective terms.

**7.02    Representations and Warranties**.  Each of the Loan Parties hereby represents and warrants to the Agent and the Lenders that (a) the execution, delivery and performance of this Agreement, the Plan, and any and all other Loan Documents executed and/or delivered in connection herewith and therewith have been authorized by all requisite limited partnership, limited liability company or corporate action, as applicable, and will not violate the organizational documents or governing documents of such party; and (b) each of the Loan Parties at the Agent's or any Lender's request, shall promptly execute or cause to be executed and shall deliver to the Agent and the Lenders any and all reasonably requested documents, instruments and agreements deemed necessary by the Agent or any Lender to give effect to or

carry out the terms or intent of this Agreement and the Plan.

**7.03    Power and Authority.**  Subject to the Pledge Agreement, KSCO hereby represents and warrants that Sproles has full power and authority to cause KSCO to comply with the terms of this Agreement and the Plan.

## ARTICLE VIII
### Miscellaneous Provisions

**8.01    Legal Fees/Costs**.  All legal fees and other charges and costs incurred by Agent and the Lenders following the occurrence of a Forbearance Event of Default shall be added to the principal balance of the Loan and shall bear interest at the Default Rate.

**8.02    Acceptance of Payments.**  Any and all payments delivered to Lender by or on behalf of the Borrower, whether or not required hereunder, whether partial or full payments, and whether or not a Default under and as defined in the Loan Agreement or a Forbearance Event of Default has occurred, may nevertheless be accepted by Lender without prejudice to its rights and remedies hereunder or under the Loan Documents.

**8.03    No Impairment of Collateral.**  Nothing herein contained shall impair any rights of the Agent and/or the Lenders with respect to any Collateral heretofore, now or hereafter pledged to the Agent and/or the Lenders as security for the Obligations.

**8.04    Survival of Representations and Warranties**.  The representations and warranties made in this Agreement, including, without limitation, any document furnished in connection with this Agreement, shall survive the execution and delivery of this Agreement, and no investigation by the Agent or any Lender, or any closing shall affect such representations and warranties or the right of the Agent and Lenders to rely upon them.

**8.05    Severability**.  Any provision of this Agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Agreement and the effect thereof shall be confined to the provision so held to be invalid or unenforceable.

**8.06    Successors and Assigns; No Third Party Beneficiaries**.  This Agreement is binding upon and shall inure to the benefit of each party hereto and their respective successors and assigns, underlined provided that neither the Borrower nor KSCO may assign or transfer any of their rights or obligations hereunder without the prior written consent of the Agent and each Lender.  Except as expressly provided in the preceding sentence, neither this Agreement nor any of the provisions hereof shall inure to the benefit of any Person other than the parties hereto.

**8.07    Counterparts**.  This Agreement may be executed in one or more counterparts, each of which when so executed shall be deemed to be an original, but all of which when taken together shall constitute one and the same instrument.  Delivery of an executed counterpart to this Agreement by facsimile or other electronic means shall be effective as delivery of a manually executed counterpart to this Agreement.

**8.08    Effect of Waiver**.  No consent or waiver, express or implied, by the Agent or any Lender to or for any breach of or deviation from any covenant or condition by Borrower or KSCO shall be deemed a consent to or waiver of any other breach of the same or any other covenant, condition or duty.

**8.09    Headings**.  The headings, captions, and arrangements used in this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

**8.10    Applicable Law.**  This Agreement and any other Loan Documents executed pursuant hereto shall be deemed to have been made and to be performable in and shall be governed by and construed in accordance with the laws of the State of Texas.   Each of the Parties hereby submits to the sole and exclusive jurisdiction of the Bankruptcy Court in any action or proceeding arising out of relating to this Agreement and agrees that all claims in respect of the action or proceeding shall be heard and determined in any such Court.

**8.11    Final Agreement.**   This Agreement and the Loan Documents represent the entire agreement of the Parties with respect to the subject matter hereof on  the date this Agreement is executed.  This Agreement and the Loan Documents may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the Parties.  There are no unwritten oral agreements between the Parties.  No modification, rescission, waiver, release or amendment of any provision of this Agreement shall be made except by a written agreement signed by each Party hereto.

**8.12    RELEASE.   EACH OF THE LOAN PARTIES HEREBY ACKNOWLEDGES THAT IT, HE OR SHE, AS APPLICABLE, HAS NO DEFENSE, COUNTERCLAIM, OFFSET, CROSS-COMPLAINT, CLAIM OR DEMAND OF ANY KIND OR NATURE WHATSOEVER THAT CAN BE ASSERTED TO REDUCE OR ELIMINATE ALL OR ANY PART OF ITS LIABILITY TO REPAY THE "LOAN" OR ANY "OBLIGATIONS" (AS DEFINED IN THE LOAN AGREEMENT) OR TO SEEK AFFIRMATIVE RELIEF OR DAMAGES OF ANY KIND OR NATURE FROM THE AGENT OR ANY LENDER. EACH OF THE LOAN PARTIES HEREBY VOLUNTARILY AND KNOWINGLY RELEASES AND FOREVER DISCHARGES THE AGENT AND THE LENDERS, AND THEIR RESPECTIVE PREDECESSORS, AGENTS, ADVISORS, EMPLOYEES, SUCCESSORS AND ASSIGNS (THE "<u>RELEASEES</u>"), FROM ALL POSSIBLE CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, AND OBLIGATIONS WHATSOEVER, KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT, OR CONDITIONAL, AT LAW OR IN EQUITY ("<u>CLAIMS</u>"), ORIGINATING IN WHOLE OR IN PART ON OR BEFORE THE DATE THIS AGREEMENT IS EXECUTED, WHICH SUCH PARTY MAY NOW OR HEREAFTER HAVE AGAINST ANY OF THE RELEASEES, IF ANY, AND IRRESPECTIVE OF WHETHER ANY SUCH CLAIMS ARISE OUT OF CONTRACT, TORT, VIOLATION OF LAW OR REGULATIONS, OR OTHERWISE, AND ARISING IN CONNECTION WITH THIS AGREEMENT OR THE LOAN DOCUMENTS, INCLUDING, WITHOUT LIMITATION, ANY CONTRACTING FOR, CHARGING, TAKING, RESERVING, COLLECTING OR RECEIVING INTEREST IN EXCESS OF THE HIGHEST LAWFUL RATE APPLICABLE, THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER**

**THE LOAN DOCUMENTS, AND NEGOTIATION FOR AND EXECUTION OF THIS AGREEMENT.   THE PROVISIONS OF THIS SECTION 8.12 SHALL SURVIVE TERMINATION OF THE FORBEARANCE PERIOD AND TERMINATION OF THIS AGREEMENT.**

**8.13   COVENANT NOT TO SUE.   EACH OF THE LOAN PARTIES HEREBY ABSOLUTELY, UNCONDITIONALLY AND IRREVOCABLY, COVENANTS AND AGREES WITH AND IN FAVOR OF EACH RELEASEE THAT IT, HE OR SHE, AS APPLICABLE, WILL NOT SUE (AT LAW, IN EQUITY, IN ANY REGULATORY PROCEEDING OR OTHERWISE) ANY RELEASEE ON THE BASIS OF ANY CLAIM RELEASED, REMISED AND DISCHARGED BY SUCH PARTY PURSUANT TO SECTION 8.12 ABOVE.   IF ANY SUCH PARTY VIOLATES THE FOREGOING COVENANT, SUCH PARTY, FOR ITSELF AND ITS SUCCESSORS AND ASSIGNS, AND ITS PRESENT AND FORMER SHAREHOLDERS, AFFILIATES, SUBSIDIARIES, DIVISIONS, PREDECESSORS, DIRECTORS, OFFICERS, ATTORNEYS, EMPLOYEES, AGENTS AND OTHER REPRESENTATIVES, AGREES TO PAY, IN ADDITION TO SUCH OTHER DAMAGES AS ANY RELEASEE MAY SUSTAIN AS A RESULT OF SUCH VIOLATION, ALL ATTORNEYS' FEES AND COSTS INCURRED BY ANY RELEASEE AS A RESULT OF SUCH VIOLATION.   THE PROVISIONS OF THIS SECTION 8.13 SHALL SURVIVE TERMINATION OF THE FORBEARANCE PERIOD AND TERMINATION OF THIS AGREEMENT.**

**8.14   Reviewed by Attorneys.**  Each of the Loan Parties hereby represents and warrants to the Agent and the Lenders that it, he or she, as applicable, (a) understands fully the terms of this Agreement and the consequences of the execution and delivery of this Agreement, (b) has been afforded an opportunity to discuss this Agreement with, and have this Agreement reviewed by, such attorneys and other persons as such party may wish, and (c) has entered into this Agreement and executed and delivered all documents in connection herewith of its own free will and accord and without threat, duress or other coercion of any kind by any Person.  The parties hereto acknowledge and agree that neither this Agreement nor the other documents executed pursuant hereto shall be construed more favorably in favor of one than the other based upon which party drafted the same, it being acknowledged that all parties hereto contributed substantially to the negotiation and preparation of this Agreement and the other documents executed pursuant hereto or in connection herewith.

**8.15   Loan Document**.  This Agreement shall be deemed to constitute a Loan Document for all purposes and in all respects.

**8.16   Waiver of Jury Trial**.   EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND FOR ANY COUNTERCLAIM THEREIN.

*[signature pages follow]*

**IN WITNESS WHEREOF,** the parties have caused this Second Forbearance Agreement to be duly executed as of the date first written above.

Volusion, LLC,
a Delaware limited liability company


By: _____
Name:
Title:


Main Street Capital Corporation,
a Maryland corporation, as Agent and Lender


By: _____
Name:
Title:


HMS Income Fund, Inc., a Maryland corporation


By: _____
Name:
Title:


KSCO Holdings, Inc.


By: _____
Name: Kevin Sproles
Title:

Exhibit "A"

Existing Defaults

Capitalized terms used in this Exhibit A, to the extent not otherwise defined herein, shall have the same meaning as in the Loan Agreement.

1.      All Section references in this Section 1 are cross references to the Loan Agreement.

      a.      Section 11.1 (Payment Obligations)

           i.      Failure to pay the Principal Debt on the Maturity Date; and

           ii.      Failure to pay scheduled interest payments within 3 Business Days of the due date for the months of April 2020, May 2020, June 2020, July 2020, August 2020, September 2020, and October 2020.

      b.      Section 11.2 (Covenants)

           i.      Breach of the covenants set forth in Section 8.14(b) of the Loan Agreement in regards to Borrower's failure to give the Lender Representatives notice of the meeting of the Board held late within the first quarter of 2020 and failure to provide to the Lender Representatives the notices, documents and information furnished to the Board Members in connection with such Board meeting, including copies of the minutes of such meeting at the time such minutes were furnished to the Board Members.

           ii.      Breach of the covenants set forth in Section 8.1 of the Loan Agreement with respect to (a) the delivery to Lender of reviewed financial statements for the Borrower's fiscal year ending December 31, 2019 and (b) the delivery of internally-certified unaudited financial statements within 30 days of the last day of March 2020 and April 2020 (Section 8.1(b)).

           iii.      Breach of the covenant set forth in Section 9.22 of the Loan Agreement with respect to the establishment of new bank accounts without the execution and delivery of Deposit Account Control Agreements relating to such accounts and the subsequent diversion of funds into such new bank accounts.

2.      All defaults set forth in that certain letter agreement from Main Street Capital Corporation to Volusion, LLC, dated March 7, 2020, are hereby incorporated by reference.

**Exhibit B**
**Sale Milestones**

[filed under seal]

**Exhibit C**
**October Monthly Operating Report**

[attached]

**United States Bankruptcy Court**
**Southern and Western District of Texas**
**Laredo Division**
**MOR-1**

Petition Date: 7/27/2020
Case Number: 20-50082

**Case Name: Volusion, LLC**

**Monthly Operating Report Summary for Month of October 2020**

| | Filing Date to July 31, 2020 | Month of August 2020 | Month of September 2020 | Month of October 2020 |
|---|---|---|---|---|
| Revenues (MOR-6) | $ 2,586,344 | $ 2,875,414 | $ 3,013,357 | $ 2,863,585 |
| Income Before Int, Depreciation, Tax (MOR-6) (1) | 1,390,628 | 152,828 | 407,239 | 288,580 |
| Net Income (Loss) (MOR-6) (1) | 1,028,571 | (209,362) | 55,206 | (70,933) |
| Payments to Insiders (MOR-9) | - | 108,575 | 131,227 | 112,168 |
| Payments to Professionals (MOR-9) | - | - | - | - |
| Total Disbursements (MOR-8) | $ 22,728 | $ 1,897,471 | $ 2,934,615 | $ 2,833,393 |

| | | |
|---|---|---|
| Are all accounts receivable being collected within terms? | (Yes) | No |
| Are all post-petition liabilities, including taxes, being paid within terms? (2) | (Yes) | No |
| Have any pre-petition liabilities been paid? | (Yes) | No |
|    If so, describe: _Pre-petition taxes and wages payable have been paid per Court orders received._ | | |
| Are all funds received being deposited into DIP bank accounts? (3) | (Yes) | No |
| Were any assets disposed of outside the normal course of business? | Yes | (No) |
|    If so, describe: _N/A_ | | |
| Are all U.S. Trustee Quarter Fee Payments current? | (Yes) | No |
| What is the status of your Plan of Reorganization? _The Debtor filed its Plan of Reorganization_ | | |

_on November 2, 2020 with a confirmation hearing scheduled for November 20,2020._

| Required Insurance Maintained as of Signature Date | Exp Date | | |
|---|---|---|---|
| Casualty | 11/1/2021 | (Yes) | No |
| Liability | 11/1/2021 | (Yes) | No |
| Vehicle | 11/1/2021 | (Yes) | No |
| Worker's | 11/1/2021 | (Yes) | No |
| Other | 11/1/2021 | (Yes) | No |

**Attorney Name:** Jennifer Wertz
**Firm:** Jackson Walker LLP
**Address:** 100 Congress Ave
**Address:** Suite 1100
**City, State, Zip:** Austin, TX, 78701
**Telephone:** 512-236-2247

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

Signed 
(Original Signature)

Title _Chief Restructuring Officer_

***Notes:***
(1) A fee estimate was trued up for the month of September 2020 after filing of the MOR; this adjustment resulted in an increase to net income for the month in the amount of $38,000. No further adjustments were made to prior periods.

(2) All undisputed post-petition liabilities, including taxes, are being paid within terms. There are a few open invoices that are subject to active conversations between the Debtor and the vendor that are on hold and have not yet been paid.

(3) Funds are being deposited into the Debtor's accounts located at Frost Bank and Silicon Valley Bank. Silicon Valley Bank accounts have been designated as Debtor In Possession accounts. The US Trustee is in contact with Frost Bank regarding making this designation to the Frost Bank accounts.

**United States Bankruptcy Court**
**Southern and Western District of Texas**
**Laredo Division**
**MOR-2**

Case Name: Volusion, LLC

Case Number: 20-50082

| Comparative Balance Sheet | | | | | |
|---|---|---|---|---|---|

| Assets | As of Filing Date July 27, 2020 | As of July 31, 2020 | As of August 31, 2020 | As of September 30, 2020 | As of October 30, 2020 |
|---|---|---|---|---|---|
| **Current Assets** | | | | | |
| Cash | $ 7,615,181 | $ 7,870,554 | $ 8,713,559 | $ 9,655,721 | $ 9,593,822 |
| Accounts Receivable Net | 256,233 | 340,387 | 674,527 | 234,609 | 390,778 |
| Inventory: Lower of Cost or Market | - | - | - | - | - |
| Prepaid Expenses | 992,907 | 873,580 | 798,644 | 773,245 | 747,205 |
| Investments | - | - | - | - | - |
| Deposits & Other Current Assets | 235,908 | 612,352 | 622,762 | 486,723 | 437,146 |
| **Total Current Assets** | **9,100,230** | **9,696,873** | **10,809,492** | **11,150,297** | **11,168,950** |
| Property, Plant & Equipment @ Cost | 13,073,033 | 13,072,759 | 13,072,759 | 13,072,759 | 13,072,759 |
| Less Accumulated Depreciation | (12,237,077) | (12,275,671) | (12,314,231) | (12,352,721) | (12,388,223) |
| **Net Book Value of Property, Plant & Equipment** | **835,957** | **797,088** | **758,528** | **720,038** | **684,536** |
| Other Assets: | | | | | - |
| 1. Tax Deposits | - | - | - | - | - |
| 2. Investments in Subs | 2 | 2 | 2 | 2 | 2 |
| 3. Intangibles | 107,870 | 107,870 | 107,870 | 107,870 | 107,870 |
| 4. Deposits, Prepaids, Other | 855,234 | 897,172 | 897,170 | 694,294 | 694,294 |
| **Total Assets** | **$ 10,899,292** | **$ 11,499,004** | **$ 12,573,062** | **$ 12,672,501** | **$ 12,655,652** |

2

**United States Bankruptcy Court**
**Southern and Western District of Texas**
**Laredo Division**
**MOR-3**

Case Name: Volusion, LLC

Case Number: 20-50082

| Comparative Balance Sheet | | | | | |
|---|---|---|---|---|---|

| Liabilities & Owner's Equity | | As of Filing Date July 27, 2020 | As of July 31, 2020 | As of August 31, 2020 | As of September 30, 2020 | As of October 30, 2020 |
|---|---|---|---|---|---|---|
| Liabilities: | | | | | | |
| Post-Petition Liabilities (MOR-4) | | $ - | $ 1,864,168 | $ 3,279,223 | $ 3,371,281 | $ 3,431,063 |
| Pre-Petition Liabilities: | | | | | | |
| Notes Payable-Secured | | 30,281,896 | 30,281,896 | 30,281,896 | 30,281,896 | 30,281,896 |
| Priority Debt | | 128,017 | 128,017 | 87,024 | 39,199 | 33,502 |
| Federal Income Tax | | - | - | - | - | - |
| FICA / Withholding / Deductions | | 90,644 | 90,644 | - | - | - |
| Unsecured Debt | | 9,662,768 | 9,662,768 | 9,662,768 | 9,662,768 | 9,662,768 |
| Other | | 2,416,382 | 2,416,382 | 2,416,382 | 2,416,382 | 2,416,382 |
| **Total Pre-Petition Liabilities** | | **42,579,707** | **42,579,707** | **42,448,070** | **42,400,245** | **42,394,548** |
| **Total Liabilities** | | **42,579,707** | **44,443,874** | **45,727,294** | **45,771,526** | **45,825,611** |
| Owner's Equity (Deficit): | | | | | | |
| Preferred Stock | | - | - | - | - | - |
| Common Stock | | 28,823,781 | 28,977,058 | 29,129,990 | 29,282,922 | 29,435,854 |
| Additional Paid-In Capital | | 732,132 | 732,132 | 732,132 | 732,132 | 732,132 |
| Warrants | | 1,530,878 | 1,530,878 | 1,530,878 | 1,530,878 | 1,530,878 |
| Retained Earnings: Filing Date | | (62,767,206) | (62,767,206) | (62,767,206) | (62,767,206) | (62,767,206) |
| Retained Earnings: Post Filing Date | | - | (1,417,733) | (1,780,026) | (1,877,752) | (2,101,617) |
| **Total Owner's Equity (Net Worth)** | | **(31,680,415)** | **(32,944,870)** | **(33,154,232)** | **(33,099,026)** | **(33,169,959)** |
| **Total Liabilities & Owner's Equity** | | **$ 10,899,292** | **$ 11,499,004** | **$ 12,573,062** | **$ 12,672,501** | **$ 12,655,652** |

**United States Bankruptcy Court**
**Southern and Western District of Texas**
**Laredo Division**
**MOR-4**

Case Name: Volusion, LLC

Case Number: 20-50082

| Schedule of Post-Petition Liabilities |
|---|

| Trade Accounts Payable | | As of July 31, 2020 | As of August 31, 2020 | As of September 30, 2020 | As of October 30, 2020 |
|---|---|---|---|---|---|
| **Tax Payable** | | | | | |
| Federal Payroll Taxes | | $ 6,062 | $ 124,536 | $ - | $ 3,586 |
| State Payroll & Sales | | 5,455 | 62,537 | 66,191 | 54,853 |
| Ad Valorem Taxes | | - | - | - | - |
| Other Taxes | | 5,258 | 15,318 | 10,396 | 16,866 |
| **Total Taxes Payable** | | **16,775** | **202,391** | **76,586** | **75,305** |
| | | | | | |
| Secured Debt Post-Petition | | - | - | - | - |
| Accrued Interest Payable | | 36,936 | 135,430 | 224,691 | 323,186 |
| Accrued Professional Fees | | - | 332,888 | 587,775 | 693,056 |
| **Other Accrued Liabilities** | | | | | |
| 1. Payroll | | 234,908 | 603,487 | 218,547 | 199,825 |
| 2. Trade Accounts | | 261,599 | 607,687 | 703,492 | 683,058 |
| 3. Deferred Revenue & Costs, Other | | 1,313,950 | 1,397,340 | 1,560,190 | 1,456,634 |
| **Total Post-Petition Liabilities (MOR-3)** | | $ 1,864,168 | $ 3,279,223 | $ 3,371,281 | $ 3,431,063 |

*Note: Post-petition liabilities are increasing due to the timing of payments, disputes and month-end. Payments*
*continue to be made within terms and in accordance with bankruptcy guidelines.*

4

**United States Bankruptcy Court**
**Southern and Western District of Texas**
**Laredo Division**
**MOR-5**

Case Name: Volusion, LLC                                Case Number: 20-50082

| **Aging of Post-Petition Liabilities** |
| **Month of October 2020** |

| Days | Total | Trade Accounts | Fed Taxes | State Taxes | Ad-Valorem, Other Taxes | Other |
|------|-------|----------------|-----------|-------------|-------------------------|-------|
| 0-30 | $ 3,397,767 | $ 649,763 | $ 3,586 | $ 54,853 | $ 16,866 | $ 2,672,700 |
| 31-60 | 1,262 | 1,262 | - | - | - | - |
| 61-90 | 17,265 | 17,265 | - | - | - | - |
| 91+ | 14,769 | 14,769 | - | - | - | - |
| Total | $ 3,431,063 | $ 683,058 | $ 3,586 | $ 54,853 | $ 16,866 | $ 2,672,700 |

| **Aging of Accounts Receivable** |
| **Month of October 2020** |

| Days | Total | Trade Accounts | Fed Taxes | State Taxes | Ad-Valorem, Other Taxes | Other |
|------|-------|----------------|-----------|-------------|-------------------------|-------|
| 0-30 | $ 390,778 | $ 390,778 | $ - | $ - | $ - | $ - |
| 31-60 | - | - | - | - | - | - |
| 61-90 | - | - | - | - | - | - |
| 91+ | - | - | - | - | - | - |
| Total | $ 390,778 | $ 390,778 | $ - | $ - | $ - | $ - |

*Note: Post-petition liabilities are increasing due to the timing of payments, disputes and month-end. Payments*
*continue to be made within terms and in accordance with bankruptcy guidelines.*

**United States Bankruptcy Court**
**Southern and Western District of Texas**
**Laredo Division**
**MOR-6**

Case Name: Volusion, LLC                                                    Case Number: 20-50082

| Statement of Income (Loss) | | | | | |
|---|---|---|---|---|---|
| | **Filing Date to July 31, 2020** | **Month of August 2020** | **Month of September 2020** | **Month of October 2020** | **Filing to Date** |
| Revenue (MOR-1) | $2,586,344 | $2,875,414 | $3,013,357 | $2,863,585 | $11,338,700 |
| Total Cost of Revenue | 812,970 | 876,928 | 881,402 | 882,719 | 3,454,020 |
| **Gross Profit** | **1,773,374** | **1,998,486** | **2,131,955** | **1,980,866** | **7,884,680** |
| | | | | | |
| **Operating Expenses** | | | | | |
| Selling & Marketing | 40,687 | 376,902 | 358,372 | 304,661 | 1,080,621 |
| General & Administrative | 308,824 | 1,055,383 | 980,230 | 1,086,175 | 3,430,612 |
| Insiders Compensation | 33,236 | 80,485 | 131,227 | 106,168 | 351,116 |
| Professionals Fees | - | 332,888 | 254,887 | 195,281 | 783,056 |
| Other (Income) / Expense | - | - | - | - | - |
| **Total Operating Expenses** | **382,746** | **1,845,658** | **1,724,715** | **1,692,285** | **5,645,405** |
| | | | | | |
| **Income Before Int, Depr/Tax (MOR-1)** | **1,390,628** | **152,828** | **407,239** | **288,580** | **2,239,276** |
| | | | | | |
| Interest Expense | 320,223 | 320,223 | 309,893 | 320,223 | 1,270,562 |
| Depreciation | 38,594 | 38,560 | 38,491 | 35,502 | 151,147 |
| Other (Income) Expense | (442) | - | - | - | (442) |
| Other Items | 3,681 | 3,407 | 3,650 | 3,789 | 14,527 |
| **Total Int, Depr & Other Items** | **362,056** | **362,190** | **352,033** | **359,514** | **1,435,794** |
| | | | | | |
| Net Income Before Taxes | 1,028,571 | (209,362) | 55,206 | (70,933) | 803,482 |
| Federal Income Taxes | - | - | - | - | - |
| **Net Income (Loss) (MOR-1)** | $ 1,028,571 | $ (209,362) | $ 55,206 | $ (70,933) | $ 803,482 |

*Note: A fee estimate was trued up for the month of September 2020 after filing of the MOR; this adjustment resulted in an increase to net income for the month in the amount of $38,000. No further adjustments were made to prior periods.*

6

**United States Bankruptcy Court**
**Southern and Western District of Texas**
**Laredo Division**
**MOR-7**

Case Name: Volusion, LLC

Case Number: 20-50082

| Cash Receipts and Disbursements | | | | | |
|---|---|---|---|---|---|

| Cash Receipts and Disbursements | Filing Date to July 31, 2020 | Month of August 2020 | Month of September 2020 | Month of October 2020 | Filing to Date |
|---|---|---|---|---|---|
| **1. Cash - Beginning of Month** | $ 7,615,181 | $ 7,870,554 | $ 8,713,559 | $ 9,655,721 | $ 7,615,181 |
| **Receipts:** | | | | | |
| 2. Cash Sales | - | - | - | - | - |
| 3. Collection of Accounts Receivable | 278,099 | 2,733,079 | 3,457,298 | 2,766,063 | 9,234,538 |
| 4. Loans & Advances | - | - | - | - | - |
| 5. Sale of Assets | - | - | - | - | - |
| 6. Other | 2 | 7,398 | 419,479 | 5,431 | 432,310 |
| **Total Receipts** | **278,101** | **2,740,476** | **3,876,777** | **2,771,494** | **9,666,848** |
| **Disbursements:** | | | | | |
| 7. Net Payroll | - | 860,294 | 1,163,148 | 921,587 | 2,945,029 |
| 8. Payroll Taxes Paid | 7,916 | 281,258 | 427,470 | 311,923 | 1,028,567 |
| 9. Sales, Use and Other Taxes Paid | - | 40,993 | 52,651 | 71,678 | 165,321 |
| 10. Secured / Rental / Leases | - | 71,720 | 77,633 | 77,686 | 227,039 |
| 11. Utilities | - | 35,515 | 19,074 | 19,429 | 74,018 |
| 12. Insurance | - | - | - | 2,836 | 2,836 |
| 13. Inventory Purchases | - | - | - | - | - |
| 14. Vehicle Expenses | - | - | - | - | - |
| 15. Travel & Entertainment | - | - | - | - | - |
| 16. Repairs, Maintenance & Supplies | - | - | - | - | - |
| 17. Administrative & Selling | 14,812 | 305,275 | 785,905 | 1,051,867 | 2,157,860 |
| 18. Other - Ordinary Course Consulting Fees | - | - | 35,000 | 22,665 | 57,665 |
| 18. Other - Adequate Protection (Interest) | - | 187,755 | 187,755 | 188,085 | 563,596 |
| 18. Other - Employee Benefits | - | 102,660 | 173,979 | 137,238 | 413,877 |
| **Total Disbursements from Operations** | **22,728** | **1,885,471** | **2,922,615** | **2,804,993** | **7,635,807** |
| | | | | | |
| 19. Professionals Fees | - | - | - | - | - |
| 20. U.S. Trustee Fees | - | - | - | 10,400 | 10,400 |
| 21. Other Reorganization Expenses - Board Fees | - | 12,000 | 12,000 | 18,000 | 42,000 |
| **Total Disbursements** | **22,728** | **1,897,471** | **2,934,615** | **2,833,393** | **7,688,207** |
| | | | | | |
| 22. Net Cash Flow | 255,373 | 843,005 | 942,162 | (61,899) | 1,978,641 |
| **23. Cash - End of Month** | $ 7,870,554 | $ 8,713,559 | $ 9,655,721 | $ 9,593,822 | $ 9,593,822 |

United States Bankruptcy Court
Southern and Western District of Texas
Laredo Division
MOR-8

Case Name: Volusion, LLC

Case Number: 20-50082

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Account Reconciliation** | | | | | | | | | | | | |
| **Month of October 2020** | | | | | | | | | | | | |

| Bank Name: | Frost Bank | Frost Bank | Frost Bank | Frost Bank | Silicon Valley Bank | Silicon Valley Bank | Silicon Valley Bank | Silicon Valley Bank | Silicon Valley Bank | Texas Security Bank | Texas Security Bank | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Account Number:** | -1768 | -1911 | -1776 | -2144 | -0909 | -1447 | -3995 | -4003 | -0811 | -380 | -956 | |
| **Account Type:** | Operating Account | Merchant Account | Payroll Account | Deposit Account | Dev Test Account | MP Merchant Account | Merchant Account | Operating Account | MMA Collateral | Commercial Checking Account | Money Market Account | |
| Bank Balance | $ 8,089,920 | $ 401,992 | $ 396,969 | $ 631,164 | $ 232 | $ 20,032 | $ 750 | $ 141,726 | $ 25,000 | $ 20,000 | $ 51 | $ 9,727,835 |
| Deposit in Transit | - | - | - | - | - | - | - | - | - | - | - | |
| Outstanding Checks | (133,687) | - | - | - | - | - | - | (326) | - | - | - | (134,013) |
| **Adjusted Bank Balance** | **7,956,232** | **401,992** | **396,969** | **631,164** | **232** | **20,032** | **750** | **141,400** | **25,000** | **20,000** | **51** | **9,593,822** |
| | | | | | | | | | | | | |
| Beginning Cash - Per Books | 6,975,093 | 943,328 | 325,247 | 577,111 | 63 | 20,032 | 802 | 768,974 | 25,000 | 20,000 | 71 | 9,655,721 |
| Receipts | - | 2,438,434 | 5,431 | 54,086 | - | - | - | 273,543 | 0 | - | - | 2,771,494 |
| Transfers Between Accounts | 2,579,742 | (2,979,742) | 1,300,000 | - | 200 | - | - | (900,200) | (0) | - | - | (0) |
| Checks / Other Disbursements | (1,598,602) | (28) | (1,233,709) | (33) | (31) | - | (52) | (917) | - | - | (20) | (2,833,393) |
| **Ending Cash - Per Books** | **$ 7,956,232** | **$ 401,992** | **$ 396,969** | **$ 631,164** | **$ 232** | **$ 20,032** | **$ 750** | **$ 141,400** | **$ 25,000** | **$ 20,000** | **$ 51** | **$ 9,593,822** |

United States Bankruptcy Court
Southern and Western District of Texas
Laredo Division
MOR-9

Case Name: Volusion, LLC

Case Number: 20-50082

| Payments to Insiders | | | | | | |
|---|---|---|---|---|---|---|

| Insiders: Name | Position / Comp Type | | Filing Date to July 31, 2020 | Month of August 2020 | Month of September 2020 | Month of October 2020 |
|---|---|---|---|---|---|---|
| 1. Bardia Dejban | Former CEO / Payroll | $ | - | $ 13,667 | $ - | $ - |
| 2. Curt Lindeman | Independent Manager / Manager Fee | | - | 6,000 | 6,000 | 12,000 |
| 3. Eric Sproles | Founder's Relative (Solutions Engineer) / Payroll | | - | 5,436 | 8,154 | 5,436 |
| 4. Jeremy Rosenthal | Independent Manager / Manager Fee | | - | 6,000 | 6,000 | 6,000 |
| 5. Kevin Sproles | Founder and Former Chairman of the Board of Managers / Payroll | | - | 14,423 | - | 14,683 |
| 6. Randon Kelly | Vice President of Finance / Payroll | | - | 24,971 | 37,457 | 24,971 |
| 7. Roxanne Sproles | Founder's Relative (Accounting Manager) / Payroll | | - | 5,078 | 7,616 | 5,078 |
| 8. Troy Pike | Interim Chief Executive Officer / Manager Fee | | - | 33,000 | 66,000 | 44,000 |
| Total Insiders (MOR-1) | | $ | - | $ 108,575 | $ 131,227 | $ 112,168 |

| Payments to Professionals | | | | | | |
|---|---|---|---|---|---|---|

| Professionals: Name | Order Date | | Filing Date to July 31, 2020 | Month of August 2020 | Month of September 2020 | Month of October 2020 |
|---|---|---|---|---|---|---|
| 1. Conway MacKenzie | 9/24/2020 | $ | - | $ - | $ - | $ - |
| 2. Jackson Walker | 9/24/2020 | | - | - | - | - |
| Total Professionals (MOR-1) | | $ | - | $ - | $ - | $ - |

*Note: Monthly manager fees for Curt Lindeman in October 2020 represent two months of payment due to timing of payment.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | |
|---|---|
| In re:<br><br>VOLUSION, LLC[1]<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Chapter 11

Case No. 20-50082 (DRJ)

### NOTICE TO CONTRACT COUNTERPARTIES OF ASSUMPTION, OR ASSUMPTION AND ASSIGNMENT, OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE THAT** on November 3, 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order Approving Debtor's Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtor's Proposed Plan of Reorganization; (III) Approving the Form of Ballots, and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 108] (the "Disclosure Statement Order") (a) authorizing Volusion, LLC, as debtor and debtor in possession (the "Debtor"), to solicit votes on the *Combined Plan of Reorganization and Disclosure Statement of Volusion, LLC Pursuant to Chapter 11 of the Bankruptcy Code* (as may be modified, amended, or supplemented from time to time and including all exhibits and supplements, the "Disclosure Statement," "Plan and Disclosure Statement" or "Plan"); (b) conditionally approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.[2]

The **Combined Hearing will commence on November 20, 2020, at 10:00 a.m., prevailing Central Time**, before the Honorable David R. Jones, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Texas.

**The Debtor hereby files the attached *Schedule of Assumed Executory Contracts and Unexpired Leases* (the "Assumption Schedule") with the Court as part of the Plan. The Debtor or the Reorganized Debtor, as applicable, reserves the right to add to or remove an Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases and move it to the Schedule of Rejected Executory Contracts and Unexpired Leases until the later of (a) the date by which objections to the proposed**

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Volusion, LLC (9037). The Debtor's service address is 1835A Kramer Lane, Suite 100, Austin, TX 78758.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

**assumption must be filed or (b) if an objection is filed, prior to the date of a decision by the Bankruptcy Court with respect to that objection.**

You are receiving this notice because the Debtor's records reflect that you are a party to an **Executory Contract(s) or Unexpired Lease(s)** that is listed on the Assumption Schedule. You are advised to carefully review the information contained in this notice and the related provisions of the Plan, including the Assumption Schedule.[3]

Bankruptcy Code section 365(b)(1) requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtor has conducted a thorough review of its books and records and has determined the amounts required to cure defaults, if any, under the assumed Executory Contact(s) and Unexpired Lease(s), which amounts are listed in the Assumption Schedule. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtor believes that there is no cure amount outstanding for such contract or lease.

If you object to the proposed assumption or assumption and assignment or if you disagree with the proposed Cure Claim, you must file an objection with the Bankruptcy Court and serve it **no later than December 4, 2020 at 5:00 p.m., prevailing Central Time** (the "Cure Objection Deadline"). Any objection must (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) set forth the name and address of the objector and the nature and amount of Cure Claims held or asserted by the objector against the Debtor's Estate or property; (d) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification that would resolve such objection; and (e) be filed with the Court and served upon the following parties so as to be actually received on or before the Cure Objection Deadline: (i) Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attn.: Jennifer Wertz (jwertz@jw.com); (ii) counsel to the Secured Lenders, Cole Schotz P.C., Attn: Michael D. Warner (mwarner@coleschotz.com); and (iii) each of the entities listed on the most recently filed Master Service List, which is available electronically (a) at no charge by requesting a copy from the Debtor's counsel by emailing Jennifer Wertz (jwertz@jw.com) or calling Jennifer Wertz at 512-236-2247; or (b) for a fee via PACER at https://ecf.txsb.uscourts.gov/ (account required).

**PLEASE TAKE FURTHER NOTICE THAT** if no objection to (a) the Cure Claim(s) or (b) the proposed assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which you are a counterparty is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Claim as determined by the Debtor is correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Claim under the proposed assigned Executory Contract or Unexpired Lease, and (iii) you will be

---

[3] Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumption Schedule, nor anything contained in the Plan, the Plan Supplement, or the Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that the Debtor or Reorganized Debtor has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement. Further, the Debtor or Reorganized Debtor, as applicable, expressly reserves the right to (a) add to or remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, at any time through the Effective Date and (b) dispute any Cure Claim asserted in connection with assumption of any Executory Contract or Unexpired Lease.

forever barred, estopped, and enjoined from objecting to any assumption or assumption and assignment of the Executory Contract or Unexpired Lease to which you are a counterparty.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtor assumes such Executory Contract or Unexpired Lease. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases will be deemed assumed, in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123, other than: (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have previously been rejected by a Final Order; (3) those that are the subject of a motion to reject an Executory Contract or Unexpired Lease that is pending on the Confirmation Date; or (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

**Please review the Plan and Disclosure Statement for details regarding the possible assumption, assumption and assignment, and rejection of executory contracts and unexpired leases. You may wish to seek legal advice concerning the Plan and the Plan's treatment of your executory contract or unexpired lease.**

November 19, 2020

/s/ *Jennifer F. Wertz*
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
Email: jwertz@jw.com

**COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION**

**Certificate of Service**

     I certify that on the 19th day of November 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and via email to the affected parties on the attached list.

*/s/ Jennifer F. Wertz*
Jennifer F. Wertz

## Schedule 6

## List of Assumed Contracts or Unexpired Leases

| Counterparty | Description of Contract/Unexpired Lease | Counterparty Address | Cure |
|---|---|---|---|
| AKF3 Kramer, LLC | Lease Agreement Between PR Braker, LLC, as Landlord, and Volusion, Inc., as Tenant, as amended pursuant to the First Amendment to Lease Agreement dated February 14, 2017, and pursuant to the Rental Deferral Agreement dated June 11, 2020 (the "Facility Lease"). | AK4 Kramer, LLC c/o Deborah M. Perry Munsch Hardt Kopf & Harr, P.C. 500 N. Akard Street, Suite 3800 Dallas, Texas 75201-6659 and Beth M. Brownstein Arent Fox 1301 Avenue of the Americas New York, New York 10019 | $35,817.87 |
| Precourt Sports Ventures, LLC | Sublease Agreement entered into effective as of December 17, 2019 (the "Facility Sublease"). | Attn:  Andy Loughnane President, Austin FC 1835-A Kramer Lane, Suite 600 Austin, Texas 78758 | $0 |
| Impact Tech, Inc. | Referral and Affiliate Program Platform and Related Services agreement dated as of January 2, 2020. | 223 E. De La Guerra Santa Barbara, CA 93101 | $13,997.53 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VOLUSION, LLC[1] | ) | Case No. 20-50082 (DRJ) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## NOTICE TO CONTRACT COUNTERPARTIES OF REJECTION
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE THAT** on November 3, 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order Approving Debtor's Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtor's Proposed Plan of Reorganization; (III) Approving the Form of Ballots, and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 108] (the "Disclosure Statement Order") (a) authorizing Volusion, LLC, as debtor and debtor in possession (the "Debtor"), to solicit votes on the *Combined Plan of Reorganization and Disclosure Statement of Volusion, LLC Pursuant to Chapter 11 of the Bankruptcy Code* (as may be modified, amended, or supplemented from time to time and including all exhibits and supplements, the "Disclosure Statement," "Plan and Disclosure Statement" or "Plan"); (b) conditionally approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.[2]

The **Combined Hearing will commence on November 20, 2020, at 10:00 a.m., prevailing Central Time**, before the Honorable David R. Jones, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Texas.

**The Debtor filed the *Schedule of Rejected Executory Contracts and Unexpired Leases* (the "Rejection Schedule") with the Court as part of the Plan. The Debtor or the Reorganized Debtor, as applicable, reserves the right to add to or remove an Executory Contract or Unexpired Lease from the Schedule of Rejected Executory Contracts and Unexpired Leases and move it to the Schedule of Assumed Executory Contracts and Unexpired Leases until the later of (a) the date by which objections to the proposed rejection**

---

[1]  The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Volusion, LLC (9037). The Debtor's service address is 1835A Kramer Lane, Suite 100, Austin, TX 78758.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

**must be filed or (b) if an objection is filed, prior to the date of a decision by the Bankruptcy Court with respect to that objection.**

You are receiving this notice because the Debtor's records reflect that you are a party to an **Executory Contract(s) or Unexpired Lease(s)** that is listed on the Rejection Schedule. You are advised to carefully review the information contained in this notice and the related provisions of the Plan, including the Rejection Schedule.

Any objection to the Debtor's decision to reject the Executory Contract or Unexpired Lease must (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) set forth the name and address of the objector and the nature and amount of Claims held or asserted by the objector against the Debtor's Estate or property; (d) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification that would resolve such objection; and (e) be filed with the Court and served upon the following parties so as to be actually received **no later than December 4, 2020 at 5:00 p.m., prevailing Central Time** (the "Objection Deadline"): (i) Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attn.: Jennifer Wertz (jwertz@jw.com); (ii) counsel to the Secured Lenders, Cole Schotz P.C., Attn: Michael D. Warner (mwarner@coleschotz.com); and (iv) each of the entities listed on the most recently filed Master Service List, which is available electronically (a) at no charge by requesting a copy from the Debtor's counsel by emailing Jennifer Wertz (jwertz@jw.com) or calling Jennifer Wertz at 512-236-2247; or (b) for a fee via PACER at https://ecf.txsb.uscourts.gov/ (account required).

**PLEASE TAKE FURTHER NOTICE THAT** if you do not object to the proposed rejection of any Executory Contract or Unexpired Lease to which you are a counterparty by the Objection Deadline, then you will be forever barred, estopped, and enjoined from asserting a future objection with regard to any Executory Contract or Unexpired Lease to which you are a counterparty.

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases will be deemed assumed, in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123, other than: (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have previously been rejected by a Final Order; (3) those that are the subject of a motion to reject an Executory Contract or Unexpired Lease that is pending on the Confirmation Date; or (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

If the Debtor rejects an Executory Contract(s) or Unexpired Lease(s) to which you are a counterparty, you may be entitled to an Unsecured Claim for which a Proof of Claim must be filed. Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within 30 calendar days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, its Estate, or property of the foregoing parties without the need for any objection by the Debtor, or further notice to, or action, order, or approval of the Bankruptcy Court. Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims under the Plan.

Please review the Plan and Disclosure Statement for details regarding the possible assumption, assumption and assignment, and rejection of executory contracts and unexpired leases. You may wish to seek legal advice concerning the Plan and the Plan's treatment of your executory contract or unexpired lease.

November 19, 2020

*/s/ Jennifer F. Wertz*
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
Email: jwertz@jw.com

**COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION**

**<u>Certificate of Service</u>**

      I certify that on the 19th day of November 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and via email to the affected parties on the attached list.

*/s/ Jennifer F. Wertz*                
Jennifer F. Wertz

**List of Rejected Executory Contracts**

| Counterparty | Description of Contract | Counterparty Address | Rejection Date |
|---|---|---|---|
| Austin Business Journal | Provides for advertising and marketing services | 504 Lavaca Street, Suite 1008 Austin, TX 78701 cjoseph@bizjournals.com | November 20, 2020 |
| AppsFlyer Ltd. | Provides for a marketing analytics tool | 100 1st Street, 25th Floor San Francisco, CA 94105 mitchell@appsflyer.com | November 20, 2020 |