**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| VOLUSION, LLC[1] | Case No. 20-50082 (DRJ) |
| Reorganized Debtor. | |

**REORGANIZED DEBTOR'S MOTION TO ENFORCE CONFIRMATION ORDER**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

TO THE CHIEF UNITED STATES BANKRUPTCY JUDGE DAVID R. JONES:

The above-captioned reorganized debtor (prior to the Effective Date, the "Debtor," and after the Effective Date, the "Reorganized Debtor") files this motion (the "Motion") to enforce the Confirmation Order.

## INTRODUCTION

1. Bardia Dejban is the Reorganized Debtor's former CEO. His sister is Bahar Dejban, a personal injury and mass tort lawyer, who was engaged by him as the Debtor's "general counsel" through her "consulting" company, which she owns with her husband, a California

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is: Volusion, LLC (9037). The Reorganized Debtor's service address is 1835A Kramer Lane, Suite 100, Austin, TX 78758.

lawyer who was disbarred in 2016.[2] Unsurprisingly, Mr. Dejban's decision to hire his sister and his disbarred brother-in-law did not provide value to the Debtor. In order to get the Debtor ready to file this chapter 11 case and on a path toward a viable restructuring, the Debtor terminated Mr. Dejban's employment and Ms. Dejban's engagement immediately prior to filing this case.

2. Two months after the Effective Date of the Plan, and following the filing of the Claim Objections, on March 18, 2021, Bardia and Bahar Dejban (the "Dejbans" or "Plaintiffs") filed a lawsuit in California alleging various employment claims against the Debtor's CRO and Independent Managers. The Debtor's Plan enjoins the Dejbans' claims as the Independent Managers and the CRO are all Released and Exculpated Parties, and the California Lawsuit impedes the implementation of the Plan. The Debtor requests that the Court enforce the Confirmation Order and require the Dejbans to dismiss the California Lawsuit with prejudice.

## JURISDICTION & VENUE

3. This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This Court retains jurisdiction to enforce its own Confirmation Order. *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 325 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders.").

4. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

[2] Mr. Khorammi failed to maintain approximately $16,000 in client funds in his client trust account, misappropriated $15,993.36 in client funds for his own purposes and did not respond to multiple status inquiries from a client or provide his client with an accounting. In addition, he failed to cooperate with a California State Bar investigation.

## RELEVANT BACKGROUND

5. On July 27, 2020 (the "Petition Date"), Volusion, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.

6. In direct contemplation of and as a crucial part of the Debtor's restructuring, the Debtor appointed Tim Stallkamp as its Chief Restructuring Officer ("CRO") and Troy Pike as Interim CEO, and also appointed Troy Pike, Jeremy Rosenthal, and Curt Lindeman as its Independent Managers. The Court approved Tim Stallkamp as the CRO by its Order at Docket No. 95[3] and the Court approved the appointment of the Independent Managers by its Order at Docket No. 81.[4]

7. On October 20, 2020, this Court entered its *Order Confirming the Debtor's Combine Plan of Reorganization and Approving on a Final Basis the Disclosure Statement of Volusion, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 128] (the "Confirmation Order") confirming the *Combined Plan of Reorganization and Disclosure Statement of Volusion, LLC Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") [Docket No. 103]. A copy of the Confirmation Order is attached as **Exhibit A**.

8. The Plan went effective on January 19, 2021 (the "Effective Date"). *See* Docket No. 158.

[3] *See* Order Authorizing Debtor to (I) Retain and Employ Conway MacKenzie Management Services, LLC; (II) Designate Timothy B. Stallkamp to Serve as Chief Restructuring Officer; and (III) Provide Additional Personnel for Debtor.

[4] *See* Order (I) Authorizing the Appointment of Independent Managers Effective as of the Petition Date; (II) Directing the Debtor to Maintain the Independent Managers; (III) Authorizing the Payment of Manager Fees; and (IV) Authorizing the Debtor's Performance of its Obligations to Each of the Independent Managers Pursuant to the Company Agreement.

9. The CRO and the Independent Managers are each a "Released Party" under the Plan. *See* Plan, Art.I.A, ¶ 84.[5]

10. The CRO and the Independent Managers are also each an "Exculpated Party" under the Plan. *See id.*, ¶ 47.[6]

***The Debtor's Objections to the Dejban Claims***

11. On November 30, 2020, Bahar Dejban filed claim nos. 16, 21, and 22, each in the amount of $9,250,000. *See* **Exhibit B**.

12. Also on November 30, 2020, Bardia Dejban filed claim nos. 15, 20, and 23, each in the amount of $11,875,000 (together with Bahar's claims 16, 21, and 22, the "Bankruptcy Claims"). *See* **Exhibit C**.

13. On February 26, 2021, the Reorganized Debtor filed its *Objection to the Proofs of Claim Nos. 16 and 22 Filed by Bahar Dejban* [Docket No. 169] and its *Objection to the Proofs of Claim Nos. 15, 20, and 23* Filed by Bardia Dejban (together with the Bahar Dejban claim objection, the "Claims Objections") [Docket No. 170].[7]

14. As set forth in the Claims Objections, Mr. Dejban was terminated, among other reasons, for being an ineffective CEO, hiring his sister and paying her almost $900,000.00 in just

[5] Released Party. Each of the following, solely in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Board, consisting of ***Jeremy Rosenthal, Troy Pike, and Curt Lindeman***; (d) KSCO, (e) Kevin Sproles, and with respect to each of the foregoing parties in clauses (a) through (d), each of such party's current (as of the Effective Date) ***directors, officers,*** members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals, and solely in such capacities to or for the entities in clauses (a) through (d); and (f) the Main Street Parties, and with respect to each of the parties in clause (f), each of such party's current and former predecessors, successors, participants, affiliates (regardless of whether such interests are held directly or indirectly), assigns, subsidiaries, direct and indirect equity holders or beneficiaries, funds, portfolio companies, and management companies, current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals. (emphasis added).

[6] Exculpated Party. Individually and collectively, the Released Parties and the Professionals.

[7] The Claim Objections are set for hearing on May 5, 2021.

under a year, and for his insubordinate refusal to pay the Debtor's secured lender despite board requests to do so.

15. Ms. Dejban's engagement was terminated, among other reasons, because she provided no value to the Debtor and was an unnecessary burden and expense on the Debtor's estate.

16. The Claim Objections are set for hearing on May 5, 2021.

***The California Lawsuit***

17. On March 18, 2021, after the Effective Date and after the Debtor filed its Claims Objections, the Plaintiffs filed their lawsuit in California, which is pending as *Bardia Dejban and Bahar Dejban vs. Jeremy Rosenthal, Curt Lindeman, Troy Pike, Tim Stallkamp*, Case No. 21SMCV00517, in the Superior Court in the State of California for the County of Los Angeles (the "California Lawsuit")[8] against the following defendants:

- Tim Stallkamp (the Debtor's CRO)
- Jeremy Rosenthal (the Debtor's Independent Manager)
- Troy Pike (the Debtor's Independent Manager and Interim CEO)
- Curt Lindeman (the Debtor's Independent Manager)

(collectively, the "Defendants").

18. The bases of the Dejbans' claims in the California Lawsuit are identical to those they allege in their Bankruptcy Claims that are the subject of the Claim Objections.

19. Under the Confirmation Order, the Plaintiffs are enjoined from pursuing the California Lawsuit against the Defendants, as they are Released and Exculpated Parties under the Plan, and the California Lawsuit should be dismissed.

[8] A copy of the Complaint filed in the California Lawsuit is attached as **Exhibit D.**

**ARGUMENTS AND AUTHORITIES**

20. The Court should order the Dejbans to immediately dismiss the California Lawsuit with prejudice as they cannot proceed in the face of the Confirmation Order, which is a Final Order and entitled to res judicata. A confirmation order that has become final cannot be collaterally attacked by parties in the case. *In re Davis Offshore, L.P.,* 644 F. 2d 259, 265 (5th Cir. 2011).

21. Courts uniformly agree that res judicata applies to bankruptcy proceedings. "[A] bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes." *Eubanks v. F.D.I.C.,* 977 F. 2d 166, 170 (5th Cir. 1992). Although the doctrine of res judicata typically applies to bar a subsequent challenge to a final judgment in a separate case, the doctrine has been applied to attacks on confirmation orders made in a proceeding in the same bankruptcy case in which the confirmation order had been issued. *See, e.g., Traveler Indem. Co. v. Bailey,* 557 U.S. 137, 153-55 (2009) (holding that res judicata precludes a collateral attack upon a confirmation order in a later proceeding in the same bankruptcy case). In fact, all collateral attacks on a confirmation order—whether made in a post-confirmation proceeding in the same bankruptcy court or in a difference case in a non-bankruptcy court as here—are impermissible attacks under the doctrine of res judicata and violate the principles of finality for confirmation orders. *See id.*

22. Under the Confirmation Order, all of the Plaintiffs' claims alleged in the California Lawsuit are discharged and enjoined.

23. First, they are discharged by operation of the Plan's Discharge Provision:

> . . [T]he Plan shall be in complete satisfaction, discharge, and release of all Claims, Interests, and Causes of Action of any nature whatsoever, . . .[and of] any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees/representatives of the Debtor prior to the Effective Date or that arise from a termination of employment, termination of retention of a professional or quasi-professional . . . .

*See* Plan, XI.F (the "Discharge Provision").[9] The Discharge Provision plainly discharges the claims brought in the California Lawsuit as they "relate to services performed by employees/representatives of the Debtor prior to the Effective Date or that arise from a termination of employment, termination of retention of a professional or quasi-professional."

24. The Plan also enjoins the Plaintiffs from pursuing the California Lawsuit against the Defendants.

> The entry of the Confirmation Order will operate as a general resolution with prejudice . . . of . . . any proceedings not yet instituted against the Debtor, the Reorganized Debtor. Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

[9] "Pursuant to § 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, the distributions, rights, and treatment that are provided in the Plan ***shall be in complete satisfaction, discharge, and release***, effective as of the Effective Date, ***of all Claims, Interests, and Causes of Action of any nature whatsoever***, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, ***any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees/representatives of the Debtor prior to the Effective Date or that arise from a termination of employment, termination of retention of a professional or quasi-professional***, or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, in this Chapter 11 Case whether or not: (a) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is filed or deemed filed pursuant to § 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to § 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. Subject to the terms of the Plan and the Confirmation Order, any default by the Debtor with respect to any Claim or Interest that existed immediately prior to or on account of the filing of this Chapter 11 Case shall be deemed satisfied on the Effective Date. Subject to the terms of the Plan, the ***Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, its Estate, the Reorganized Debtor and all successors thereto***. As provided in § 524 of the Bankruptcy Code, subject to the terms of the Plan, such discharge shall void any judgment against the Debtor, its Estate, the Reorganized Debtor or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged and operates as an injunction against the prosecution of any action against the Reorganized Debtor or its property and assets to the extent it relates to a discharged Claim or Interest." (emphasis added).

*See* Plan, XI.B (the "Injunction").[10]

25. By filing the California Lawsuit, the Plaintiffs are directly taking "actions to interfere with the implementation" as well as the "consummation of the plan," which the Injunction forbids. The means for implementation of the Plan center around the Forbearance Agreement with Main Street, which expressly includes as a material component the Debtor's achievement of sale-related milestones. *See* Plan, Art. VII, E. The Plan also provided for the continued operations of the Debtor, under the governance of the Defendants Rosenthal, Pike, and Lindeman. *See* Plan, Art. VII, E. The assertion of multimillion dollars in claims in the California Lawsuit against these Defendants has a very real prospect of seriously undermining the Debtor's ability to implement and consummate the Plan—exactly what the Injunction is designed to prevent. The pendency of a lawsuit alleging baseless claims of this nature in California against the Debtor may materially affect its ability to consummate the sale-related milestones or chill the process, resulting in less value to the Reorganized Debtor. In addition, at a bare minimum, the California Lawsuit is a

[10] "The ***entry of the Confirmation Order will operate as a general resolution with prejudice***, as of the Effective Date, of all pending legal proceedings, if any, against the Debtor, the Reorganized Debtor and their assets and properties and ***any proceedings not yet instituted against the Debtor, the Reorganized Debtor*** or their assets and properties, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtor or its assets and properties are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor, or their assets and properties, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or the Reorganized Debtor, or their assets and properties, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Reorganized Debtor, or their assets and properties, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtor or the Reorganized Debtor, or the property of the Debtor, the Estate or the Reorganized Debtor with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtor, the Estate or the Reorganized Debtor except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date. Upon entry of the Confirmation Order, ***all Holders of Claims*** and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates ***shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan***. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan." (emphasis added).

completely unwarranted distraction for the Defendants, who have worked and continue to work very diligently on behalf of the Debtor toward the goal of achieving the sale-related milestones. The Court should enforce the Injunction and require the Plaintiffs to immediately dismiss the California Lawsuit with prejudice.

26. As Released and Exculpated Parties, the Plan shields the Defendants from the California Lawsuit:

> [E]ach Exculpated Party is ***hereby released and exculpated*** from any Cause of Action ***for any claim related to any act or omission in connection with, relating to, or arising out of***, ***the filing, administration and prosecution of the Chapter 11 Case***, . . or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

*See* Plan, XI.C (the "Exculpation Provision").[11]

27. As a critical, initial part of the Debtor's restructuring, the Independent Managers in the proper exercise of their duties caused the Debtor to terminate Bardia Dejban as CEO and terminate the independent contractor agreement through which Bahar Dejban purported to serve

[11] "Except as otherwise specifically provided in the Plan, **no Exculpated Party** ***shall have or incur liability for and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the filing, administration and prosecution of the Chapter 11 Case***, the formulation, preparation, dissemination, negotiation, filing of the Disclosure Statement, the Plan, the Forbearance Agreement, or ***any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Case***, ***the filing, administration and prosecution of the Chapter 11 Case***, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or ***upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence***, but in all respects such Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan." (emphasis added).

as "general counsel' to the Debtor. By Unanimous Written Consent on July 27, 2020, the Petition Date, the Independent Managers voted unanimously to terminate Bardia Dejban as CEO and to terminate the contract engaging Bahar Dejban as the Debtor's general counsel "to ensure the appropriate functioning and decision-making in respect of [the Debtor's] assets and operations during the restructuring . . . ." *See* Board Resolution, attached as **Exhibit E**.

28. The Independent Directors voted to terminate the Dejbans and the Debtor then terminated the Dejbans' employment and independent contractor status as part of the filing of the Debtor's chapter 11 case and in contemplation of the Debtor's restructuring because, among other reasons, Mr. Dejban breached his fiduciary duties and was determined to lack the competency and capabilities to continue serving as CEO, and Ms. Dejban and her consulting firm (owned with her disbarred husband) was determined to lack the competency and capabilities to provide "general counsel" legal services to the Debtor. It appears Ms. Dejban was practicing law far outside of her legal competency. In any event, although the Debtor did not actually hire Ms. Dejban as an employee to serve as general counsel, had it done so, the Debtor eliminated the position of general counsel. The Independent Directors concluded, in the exercise of their business judgment, that it was not in the interests of the Debtor to continue to employ and/or work with either of the Dejbans. Not only was the Dejbans' performance found deeply wanting, it appears that they conspired to take numerous actions for their own benefit at the direct expense of the Debtor and its ability to reorganize. The Debtor validly terminated Mr. Dejban and cancelled the contract related to Ms. Dejban as their respective standards of performance and detrimental actions, including breaches of duties, was detrimental to the Debtor and the Independent Directors, and the Debtor lost confidence in their ability to faithfully perform the duties required of the lofty positions of CEO and general counsel.

29. As further detailed in the Bardia Claim Objection, the Debtor struggled under Mr. Dejban's watch in numerous aspects. First, a failed M&A process yielded no sale of the company despite favorable market conditions. This failure was due in large part to the Debtor's poor financial performance in the year prior to the hoped-for M&A transaction. That poor financial performance occurred under his watch, and ultimately resulted in the Debtor defaulting on its obligations to its secured creditor, Main Street. Second, in an exercise of extremely questionable judgment, Mr. Dejban elected not to engage in any meaningful negotiations with Main Street with respect to the defaults or how they could be remedied. Third, after the board was reconstituted and the Independent Directors were appointed, Mr. Dejban worked to subvert the board and the Debtor, by among other things directing certain senior executives of the Debtor to not provide requested information to the board and refusing to fund the Debtor's obligations under the initial forbearance agreement with Main Street—making bankruptcy inevitable for the Debtor. Mr. Dejban also sought to subvert the Debtor by using company assets to hire a number of law firms to advance his interests and oppose the duly appointed board and its governance. Mr. Dejban's refusal (and outright hostility) to working with the board and Main Street signaled to the Debtor that he was not suited to the position of CEO nor was he the appropriate person to lead the Debtor during its restructuring.

30. In addition, Mr. Dejban engaged family members for their own benefit, not the benefit of the Debtor. He engaged his sister, Bahar Dejban, a mass torts and personal injury lawyer in California, to perform general counsel services through a company (DK Strategic Solutions, LLC ("DK")), that she co-owned with her husband, a disbarred California lawyer. Highlighting the egregious nature of this contact, Mr. Dejban agreed to pay DK $30,000 per month for what appeared to be part-time and ad hoc "general counsel" services. Indeed, when the Reorganized

Debtor hired a competent law firm to provide outside general counsel services, its monthly charges have been approximately 1/3 of the amount charged by Ms. Dejban's company, DK. In this regard, Mr. Dejban's decision to engage Ms. Dejaban's company to provide services that it was not capable of providing (including potentially hiring a non-law firm to provide legal services) undermined the Independent Directors' confidence in Mr. Dejban and his judgment. The foregoing actions demonstrated to the Independent Directors and the Debtor that Mr. Dejban could not appropriately lead the company through a chapter 11 case.

31. As further detailed in the Bahar Claim Objection, Ms. Dejban is a mass torts and personal injury lawyer barred in California. She was unqualified to provide general counsel services to an e-commerce company based in Texas. Moreover, her actions on a pre-petition basis demonstrated that her loyalty was firmly placed with her brother, Mr. Dejban, and not the Debtor. Further, Ms. Dejban's company DK appears to not be a law firm and appears to be partially owned by a disbarred attorney, yet it was hired to provide "consulting services" that were actually legal services in apparent violation of California and Texas law. Based upon Ms. Dejban's lack of qualification to so serve the Debtor as its general counsel and the impropriety of the arrangement in the first place, the Independent Directors elected to have the Debtor terminate the DK arrangement so that the Debtor could conserve resources and retain appropriate corporate, employment and bankruptcy counsel.

32. Given the foregoing, the Independent Directors and the Debtor concluded that the negative ramifications of continuing to work with either of the Dejbans far outweighed any potential benefit and that it was in the best interests of the Debtor to sever its relationship with both Dejbans. The Debtor concluded that severing these relationships was critical for the Debtor to fulfill and discharge its duties in chapter 11 as a debtor in possession and to effectively pursue

a reorganization under chapter 11 that maximized the value available for all stakeholders. The Debtor's severing of their relationship with the Dejbans related directly to the administration, filing, and prosecution of the Debtor's chapter 11 case and by operation of the Confirmation Order, the Dejbans are enjoined from pursuing the California Lawsuit against the Defendants.

## CONCLUSION

33. The Reorganized Debtor requests that the Court enjoin the Plaintiffs from pursuing any claims in the California Lawsuit, require the Plaintiffs to seek immediate dismissal of the California Lawsuit with prejudice, and grant the Reorganized Debtor any other relief to which the Reorganized Debtor may be entitled.

April 14, 2021

/s/ *Jennifer F. Wertz*
Matthew D. Cavenaugh (State Bar No. 24062656)
Jennifer F. Wertz (State Bar No. 24072822)
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
Email: jwertz@jw.com

**COUNSEL FOR THE REORGANIZED DEBTOR**

**CERTIFICATE OF SERVICE**

I certify that on April 14, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and via electronic and regular mail upon the following:

Hal Keith Gillespie
Attorney for Bahar Dejban and Bardia Dejban
4803 Gaston Avenue
Dallas, TX 75246
hkg@gillespiesanford.com

/s/ *Jennifer F. Wertz*
Jennifer F. Wertz