**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| VOUSION, LLC, | § | Chapter 11 |
| | § | |
| | § | Case No. 20-50082 (DRJ) |
| Debtor. | § | |

## CLAIMANTS' RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Bardia Dejban ("Mr. Dejban") and Bahar Dejban ("Ms. Dejban") (jointly "Claimants"), file this Response in Opposition to Reorganized Debtor's Motion to Enforce Confirmation Order (hereinafter "Motion to Enforce").[1] Claimants would show the Court as follows:

### I.     INTRODUCTION

Volusion, LLC, the Reorganized Debtor (hereinafter "Debtor" or "Volusion") employs a two-prong approach with its Motion to Enforce. First, Volusion fuels its Motion to Enforce with a harsh and inaccurate version of the facts, painting Claimants as bad (or frivolously filing) actors. Claimants have offered proper, sworn facts, and ask the court to focus on the clear-cut legal issue posed by the Motion to Enforce.

Second, faced with binding authority against its motion, Volusion relies on a partial reading of the Debtor's Plan that the Court confirmed with its Order of November 20, 2020 (Dkt. No. 128). Debtor's Motion to Enforce ignores the consideration and specificity

---

[1] To avoid confusion, the Proof of Claim of Mr. Dejban will be referred to herein as Claim 15. Claims 20 and 23 are duplicative; Claimant Bardia Dejban filed these claims to ensure that his claim was filed on November 30, 2020 – the Bar Date - as he was experiencing difficulty with e-filing (and received very helpful assistance from Court personnel).

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER
Page 1

requirements with respect to Plan releases of third parties and fails to read (or acknowledge) the releasing parties and exculpation provision of the Plan. Debtor's Motion to Enforce lacks merit.

II.     BACKGROUND

1. On July 27, 2020 (the "Petition Date"), Volusion, LLC ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

2. On November 3, 2020, the Debtor filed its Combined Plan of Reorganization (the "Plan") (Dkt. No. 103). On November 20, 2020, the Court confirmed the Plan (Dkt. No. 128).

3. The Plan (Dkt. No. 103), in Article I, contains the following pertinent definitions:

   21. <u>Cause of Action</u>. Any claim or cause of action, legal or equitable, now owned or hereafter acquired by the Debtor, whether arising under contract or tort, federal or state law, including but not limited to Avoidance Actions, whether commenced prior or subsequent to the Petition Date.
   . . .

   23. <u>Claim</u>. Any (i) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

   24. <u>Claimant</u>. A person asserting a Claim against the Debtor, its property, or the Estate.
   . . .

   47. <u>Exculpated Party</u>. Individually and collectively, the Released Parties and the Professionals.
   . . .

   55. <u>HMS</u>. Collectively, HMS Income and HMS Equity.

   56. <u>HMS Equity</u>. HMS Equity Holding, LLC, a Delaware limited liability company.
   . . .

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER
Page 2

61. <u>KSCO</u>. KSCO Holdings, Inc., a Texas corporation.
. . .

82. <u>Professionals</u>. Any Court-approved professional Person, including lawyers, accountants, financial advisors, investment bankers, interim managers and restructuring advisors, employed by the Debtor in this Chapter 11 Case at any time before the Effective Date.
. . .

84. <u>Released Party</u>. Each of the following, solely in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Board, consisting of Jeremy Rosenthal, Troy Pike and Curt Lindeman; (d) KSCO, (e) Kevin Sproles, and with respect to each of the foregoing parties in clauses (a) through (d), each of such party's current (as of the Effective Date) directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals, and solely in such capacities to or for the entities in clauses (a) through (d); and (f) the Main Street Parties, and with respect to each of the parties in clause (f), each of such party's current and former predecessors, successors, participants, affiliates (regardless of whether such interests are held directly or indirectly), assigns, subsidiaries, direct and indirect equity holders or beneficiaries, funds, portfolio companies, and management companies, current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals.

85. <u>Releasing Parties</u>. Each of the following, solely in its capacity as such: (a) KSCO and Kevin Sproles, and with respect to the foregoing parties in clause (a), such party's current (as of the Effective Date) directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals, and solely in such capacities to or for the entity in clause (a); and (b) the Main Street Parties, and with respect to the foregoing clause (b), each of such party's current and former predecessors, successors, participants, affiliates (regardless of whether such interests are held directly or indirectly), assigns, subsidiaries, direct and indirect equity holders or beneficiaries, funds, portfolio companies, and management companies, current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals.
. . .

    93. <u>Sproles</u>. Kevin Sproles, an individual.

(Dkt. No. 103).

    4. The Plan, Article XI, provides in pertinent part:

**A. Legally Binding Effect**

    The provisions of the Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan. On and after the Effective Date, all holders of Claims and Equity Interests shall be precluded and enjoined from asserting any Claim (i) against the Debtor, the Reorganized Debtor or its assets and properties based on any transaction or other activity of any kind that occurred prior to the Effective Date except as permitted under the Plan; and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

**B. Injunction**

    **The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtor, the Reorganized Debtor and their assets and properties and any proceedings not yet instituted against the Debtor, the Reorganized Debtor or their assets and properties, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtor or its assets and properties are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor, or their assets and properties, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or the Reorganized Debtor, or their assets and properties, (c) creating,**

**perfecting, or enforcing any encumbrance of any kind against the Debtor or the Reorganized Debtor, or their assets and properties, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtor or the Reorganized Debtor, or the property of the Debtor, the Estate or the Reorganized Debtor with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtor, the Estate or the Reorganized Debtor except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.**

**C. Exculpation**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the filing, administration and prosecution of the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing of the Disclosure Statement, the Plan, the Forbearance Agreement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Case, the filing, administration and prosecution of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**
. . .

**E. Releases by the Releasing Parties**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have released and discharged each of the Debtor, Reorganized Debtor, and each other Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims,

asserted on behalf of the Debtor, the Reorganized Debtor, or the Estate (as applicable), that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, governance, ownership or operation thereof), any securities issued by the Debtor and the ownership thereof, the Debtor's restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtor), the Chapter 11 Case, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Forbearance Agreement, or any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Forbearance Agreement, the Chapter 11 Case, the filing, administration and prosecution of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity, including the Debtor and the Reorganized Debtor, under the Plan or any document, instrument, or agreement (including the Forbearance Agreement) executed to implement the Plan or (b) any individual from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Releases, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Releases are: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released; (e) in the best interests of the Debtor and its Estate; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action.
. . .

**H. Preservation of Claims and Rights**

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless the Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim

> for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.
>
> **The Reorganized Debtor reserves any and all Claims and rights against any and all third parties, whether such Claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the record date and/or any Distribution Date, including, without limitation, any and all Causes of Action, Rights of Action and/or Claims for relief that the Debtor or the Reorganized Debtor may have against (i) any insurer and/or insurance policies in which either the Debtor and/or its current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers; or (ii) any recipient of a transfer by the Debtor occurring either before or during this Chapter 11 Case. The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Reorganized Debtor relating to any Claims, Causes of Action or Rights of Action referred to in this Article XI, or otherwise. The Reorganized Debtor shall constitute the representative of the Estate for purposes of retaining, asserting and/or enforcing Rights of Action under § 1123(b)(3)(B) of the Bankruptcy Code. On the Effective Date, the Reorganized Debtor shall be substituted as a party of record in all pending litigation brought by or against the Debtor without need for further order of the Bankruptcy Court.**

*Id*. (emphasis in original).

5. Article I, Paragraph A (17) of the Plan set the Bar Date as November 30, 2020.

6. On November 30, 2020, Claimants timely filed their Proofs of Claim (Claims 15 and 16).

7. On February 26, 2020, Debtor filed Objections to the claim of Ms. Dejban (Dkt. No. 169) and Mr. Dejban (Dkt. No. 170). Debtor served these objections on Claimants on March 29, 2020, and then filed an amended objection to the claim of Ms. Dejban on April 4, 2021 (Dkt. No. 178).

8. On March 19, 2020, Claimants filed a lawsuit styled <u>Bardia Dejban and Bahar Dejban</u> in the Superior Court in the State of California for the County of Los Angeles against the Individual Defendants which has been assigned Case No. 21SMCV00517 (the "California Litigation"). The California Litigation seeks a jury trial.

9. On March 30, 2020 Claimants filed a "Motion for Modification of Discharge Injunction" (Dkt. No. 177), set for hearing in this Court for May 12, 2021 (Dkt. No. 198).

10. On April 14, 2021, Debtor filed the Motion to Enforce (Dkt. No. 183). The hearing on this motion is set for May 12, 2021 (Dkt. No. 198).

11. On April 27, 2021, Claimants Bardia and Bahar Dejban filed a motion for leave to amend their claims (Dkt. No. 193). This motion is not yet set for a hearing.

12. On April 30, 2021, Claimants timely filed their responses to Debtor's objections to their claims. Dkt. Nos. 194 (with attachments) and 195. The objections hearing is set for May 12, 2021 (Dkt. No. 198).

### III.   STATEMENT OF FACTS[2]

#### A.   Claimants' Employment with Volusion

Bardia Dejban began employment at Volusion as Chief of Staff in February 2016. Declaration of Bardia Dejban, Dkt. No. 194-1, pp. 1-3, ¶ 2. During his employment at Volusion, Mr. Dejban was promoted to Chief Technology Officer in September 2016, Chief Operating Officer (COO) in November 2018 and Chief Executive Officer in August 2019. All of those promotions involved approval by the Board of Managers, which at the time included Kevin Sproles (the founder and then the CEO) and Main Street by and through its CEO, Dwayne Hyzak. *Id*.

---

[2] Debtor's Motion to Enforce contains an unsworn version of disputed facts in various parts of its pleading, specifically in the "Introduction" (Dkt. No. 183, pp. 1-2, ¶ 1), in "Relevant Background" (*id*., pp. 3-5, ¶¶ 6, 14, 15 & 18), and in "Argument and Authorities" (*id.,* pp. 8-13, ¶¶ 25, 27-32). Debtor's "facts" are its unsworn argument about of the reasons for the terminations of Claimants. Claimants object to all these unsworn "facts" and ask that the Court disregard all parts of the Motion to Enforce that make reference to them. Claimants incorporate by reference the proper declarations of Mr. Dejban (Dkt. No. 194-1) and Ms. Dejban (Doc. 194-2).

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER

Bahar Dejban began her employment at Volusion as General Counsel in March 2019. Declaration of Bahar Dejban, Dkt. No. 194-2, p. 1, ¶ 3. Volusion hired Ms. Dejban as an employee (not an independent contractor, despite the independent contractor label). *Id.* Also, Ms. Dejban was not hired under the "watch" of Bardia Dejban. Mr. Dejban was COO when Volusion hired her. Ms. Dejban was hired under the "watch" of Kevin Sproles, the founder, board member, majority shareholder, and then CEO of Volusion. *Id*.

### B. Events Leading Up to Terminations of Bardia and Bahar Dejban

On or about June 9, 2020, Jeremy Rosenthal, Curt Lindeman, Troy Pike became the new members of Volusion's board of directors and Tim Stallkamp was engaged by Volusion's Board (consisting of Rosenthal, Lindeman and Pike) to be the Chief Restructing Officer ("CRO") of Volusion.[3] Claimants refer to these four, Rosenthal, Lindeman, Pike and Stallkamp as the New Leaders of Volusion. As of the takeover of Volusion by the New Leaders, on or about June 9, 2020, of Volusion's 170 employees, only two, Bardia Dejban and Mr. Dejban's twin sister, Bahar Dejban, were of Iranian descent. Shawn Khorrami, Mr. Dejban's brother-in-law, who Kevin Sproles had brought on with Volusion as a consultant, was also of Iranian descent.[4] Bardia and Bahar Dejban, at the time of their termination in July 2020, were similarly situated with other top tier leadership of Volusion, including each other and Kevin Sproles, Randon Kelly, Brett McLaughlin, and Lance Wright.[5]

After the new Board of Managers and newly installed CRO Tim Stallkamp arrived at Volusion, these four Caucasian non-Iranian males implemented a discriminatory double standard,

---

[3] Bardia Dejban Declaration, Dkt. No. 194-1, p. 2, ¶4.

[4] *Id*., p. 3, ¶5.

[5] Bardia Dejban Declaration, Dkt. No. 194-1, p. 3, ¶ 5; Bahar Dejban Declaration, Dkt. No. 194-2, p. 3, ¶ 8.

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER
Page 9

treating all the Volusion employees born in Iran badly and with disrespect, while treating non-Iranian employees of Volusion well and with respect.[6] New Leaders were demanding, unreasonable, condescending, abrupt, rude, and badgering toward Volusion's only Iranian born employees, Bahar and Bardia Dejban, while they treated the other Volusion leaders (non-Iranian born) well, politely and with deference.[7] The harassment and discrimination to which New Leaders Rosenthal, Lindeman, Pike and Stallkamp subjected Mr. and Ms. Dejban, followed their knowledge of the Iranian ancestry of Mr. and Ms. Dejban and as well as Mr. Dejban's need to have time off for the medical needs of his two young sons and Ms. Dejban's pregnancy where she was experiencing difficulty. The New Leaders included creating unnecessary obstacles, and deadlines untethered to any legitimate business purpose.[8] Under the double standard instituted and propagated by the New Leaders, the remaining employees at Volusion (all non-Iranian born) were permitted to put off requests from the New Leaders for days and weeks. They could say, "I won't have time to talk until next week" and the response by the New Leaders, time and again was "no problem." The demands by the New Leaders on Bahar Dejban and Bardia Dejban were abrupt, unreasonable and pretextual and the New Leaders coupled the requests with pressure and threats.[9]

### C. Terminations of Bardia and Bahar Dejban

Debtor, by means of emails (with attachments) from Troy Pike (one of the New Leaders) terminated Bardia and Bahar Dejban on July 27, 2020, providing no reasons at the time.[10]

### D. Changing and Then False Reasons for the Termination of Bardia Dejban

---

[6] Bardia Dejban Declaration, Dkt. No. 194-1, pp. 3, 7, 8, 13 - 16; ¶¶ 6, 18, 19, 23 -32; Bahar Dejban Declaration, Dkt. No. 194-2, pp. 3 -7 ¶ 9 – 19.
[7] Bardia Dejban Declaration, Dkt. No. 194-1, p. 3, 7, 8, 13 - 16; ¶ 6.
[8] *Id.*, pp. 3-4, ¶¶ 6 & 7.
[9] *Id*.
[10] Bardia Dejban Declaration, Dkt. No. 194-1, pp. 3, ¶ 41; Bahar Dejban Declaration, Dkt. No. 194-2, p. 8, ¶ 22.

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER

Via answers to frequently asked questions about the bankruptcy on its website, Debtor first implied that the departure of Bardia Dejban and Kevin Sproles from Volusion was not the result of any misdeeds or inadequacies by them. Volusion stated that to get bankruptcy protection in place for Volusion,

> we made some difficult, but necessary and immediate leadership changes. **Effective July 27, Kevin Sproles and Bardia Dejban are no longer with the company**. We know this may have a personal impact on some of you with long-standing relationships, as well as to our tight-knit organization overall. **Kevin and Bardia have been important leaders at Volusion and we are tremendously thankful for their significant contributions.** While they are no longer formally a part of Volusion, the belief in the company, **the importance of the culture and the mission they inspired will remain.** Our goal is to honor what they helped to create by making sure the restructuring process is successful and Volusion can thrive going forward.

(Emphasis added.)[11]

After Debtor provided the world (via its website) this explanation for the departure of Bardia Dejban, it claimed in the pleading it filed on November 3, 2020 in Case 20-50028 – the Bankruptcy proceeding) that it was facing "disengaged and disobedient officers." Dkt. No. 103-1, p. 15, Art. III, ¶C(1). Then in its unsworn objection to Mr. Dejban's claim, the Debtor came up with a laundry list of changed and false reasons for Mr. Dejban's termination.[12]

### E.   Claims of Bardia Dejban

Claimants' Motion for Leave to Amend Proof of Claim of Bahar Dejban and Proof of Claim of Bardia Dejban and Brief in Support (Dkt. No. 193)("Claimants' Motion for Leave to Amend") (adopted by reference and incorporated herein) explains how and why Claimants' original proofs of claim could not include the administrative charges and the lawsuit ultimately filed with State of California, but attached a draft of unfiled EEOC charges. The claims against

---

[11]  Bardia Dejban Declaration, Exhibit A, pp. 21-22, ¶ 42(b)(iii).

[12]  *Compare* Dkt. No. 170, pp. 9-10, ¶ 31 *with* Bardia Dejban Declaration, Dkt. No. 194-1, pp. 2, 8 - 12; 13-15, 17 – 19, 20 - 26;  ¶¶ 3, 20, 21;  23-29; 35; 42.

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER

Page 11

Debtor may (depending on the Court's ruling on Claimants' Motion to Modify Discharge Injunction (Dkt. No. 177) go forward in the California Lawsuit, seeking only insurance proceeds of the Debtor. If the Court denies Claimants' Motion to Modify, the Court may allow the claims based on the responses of the Claimants,[13] or the Motion for Leave to Amend will be set for hearing and, if amendment is permitted, discovery will be extensive,[14] followed by an adversarial hearing by this Court of Claimants' claims against Debtor akin to the claims against the New Leaders in the California Lawsuit.

## IV. ARGUMENT AND AUTHORITIES

### A. Applicable Law

#### 1. The Bankruptcy Court Lacks Jurisdiction to Resolve Ms. Dejban's Statutory Tort Claims

Claimants' claims against Volusion are statutory tort claims, discrimination claims under California law. They are personal injury tort claims over which this bankruptcy court, per federal law, lacks jurisdiction. *In re Pilgrim's Pride Corp.,* 2011 WL 379983528 *14 – *15 (N.D. Tx. 2011)(citing 28 U.S.C. § 157(b)(2)(B)(5) and *Stranz v. Ice Cream Liquidation, Inc*., 281 B.R. 154, 162-64 (Bankr. D. Conn. 2002). The Southern District of Texas, in affirming a ruling by this Court has ruled:

> For a bankruptcy court to enforce the plan after confirmation and to enjoin a plaintiff from pursuing a claim, two requirements must be met: (1) the bankruptcy court must have jurisdiction to hear the plaintiff's claim under 28 U.S.C. § 1334; and (2) the bankruptcy court's confirmation order must specifically approve the release of the plaintiff's claim.

*In re CJ Holding Co*., 597 B.R. 597, 604 (S.D. Tx. 2019).

---

[13] Dkt. Nos. 194 (with attachments) and 195.
[14] See footnote 15 below.

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER
Page 12

Debtor argues it is "abundantly clear" per the Supreme Court that this Court has jurisdiction because Movants filed proofs of claim in this proceeding. Dkt. No. 187, p.5. Debtor cites *Grandfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989). But jurisdiction is different – it is fundamental. *Grandfinanciera* addresses the waiver or a right to a jury trial by filing a claim in bankruptcy. *Grandfinanciera* does not stand for the proposition that by filing a proof of claim a claimant can alter or override a federal statute that expressly limits the **jurisdiction** of the bankruptcy court. In *Stern v. Marshall*, 564 U.S. 462, 475-76 (2011), the Court restricted the authority of bankruptcy courts on state law claims. And the Supreme Court has held that consent to adjudication by a bankruptcy judge need not be express, but it must be knowing and voluntary. *Wellness Int'l Network, Ltd. v. Sharif*, _ U.S. _, 135 S.Ct. 1932, 1949 (2015). The Court should conclude that merely filing the Claims by the Bar Date (in order to avoid an attack for no making the filing) did not evince consent to jurisdiction of the bankruptcy court to adjudicate state law statutory tort claims, particularly in the context of Claimants' motion to modify the discharge injunction (Dkt. No. 177) and their action in timely filing their California Lawsuit.

Debtor fails to address the statute (28 U.S.C. § 157(b)(2)(B)(5)) or the cases cited by Claimants (Dkt. No. 177, p.7). The *Stranz* case[15] expressly involved a discrimination claim filed by creditors – a discrimination claim. The court in *Stranz* did not ignore its jurisdictional limits, and it did not indulge in the ultimate Catch 22 reasoning of forcing a creditor with a statutory tort claim to either miss filing by the Bar Date in a bankruptcy proceeding and risk loss of the claim due to the discharge injunction or file a timely claim, but give up her right to proceed in a non-bankruptcy court (and here to the courts in California who are best suited to hear such claims).

---

[15] *Stranz v. Ice Cream Liquidation, Inc.*, 281 B.R. 154, 162-64 (Bankr. D. Conn. 2002).

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER
Page 13

It is axiomatic that Movants, mere citizens, cannot re-write federal law. Movants cannot by their own acts confer jurisdiction on this Court that Congress has denied. Beyond that, such an argument by Debtor would be inequitable. In order to protect their rights to pursue these claims and faced with the language (written by Debtor) in the Plan about the bar date, Movants filed timely proofs of claim. Equity should take into account the dilemma facing debtors: (a) If they did not file proofs of claim, Volusion would argue their claims were barred. (b) If they filed proofs of claim, Volusion would argue (as they are now arguing) that the bankruptcy court has jurisdiction to adjudicate discrimination claims, but that the claims lack merit. The equitable course is to follow federal law and leave adjudication of Movants' discrimination claims under California law to the California courts in the California Litigation.

### 2. Guiding Principles

In *Houston v. Edgeworth*, 993 F.2d 51 (5th Cir. 1993), the court explained that a discharge in bankruptcy does not extinguish the debtor from personal liability for the debt. Under 11 USC § 524(e), the debt still exists and can be collected from any other entity that might be liable. *Edgeworth, supra* at 53. Also, the discharge injunction, per the Fifth Circuit, does not affect the liability of insurers "and does not prevent establishing their liability by proceeding against a discharged debtor." *Id.*

### 3. Requirements for Enforcing a Confirmation Order to Enjoin Plaintiffs From Pursuing Claims Against Third Parties

Even if this Court decides it has jurisdiction of this matter (the first requirement in *CJ Holding*), Debtor's Motion to Enforce fails due to the second requirement, that the bankruptcy court's confirmation order must specifically approve the release of plaintiff's claim." *In re CJ Holding Co., supra* at 604. In *CJ Holding Co.,* the Court noted that the Fifth Circuit has concluded that a bankruptcy court may not confirm a plan that provides "non-consensual non-debtor

releases." *In re CJ Holding Co., supra* at 608, citing In re Pac. Lumber Col, 584 F.3d 229, 251 (5th Cir. 2009). But – a bankruptcy court is not precluded from approving a "'consensual non-debtor release.'" *Id.* **The key is specificity**: "'Consensual nondebtor releases that are specific in language, integral to the plan, a condition of the settlement, and given for consideration do not violate section 524(e).'" *Id.,* citing *In re Bigler LP*, 442 B.R. 537, 543-44 (Bankr. S.D. Tex. 2010).

> **B. Debtor Cannot Point to Any Consensual Nondebtor Release That is Specific In Language, Integral to the Plan, A Condition of Settlement, And Given for Consideration**

Volusion's Motion to Enforce misreads the release and exculpation provisions of the Plan in two major ways. Neither the Plan's Discharge Provision, nor its injunction provision, in context, constitute a consensual Nondebtor Release (i.e. a release as to Rosenthal, Pike, Lindeman and Stallkamp) that is specific in language, integral to the Plan, a condition of settlement, and given for consideration. Starting at the back of these requirements, Volusion fails to even suggest that there is consideration for a release of these non-debtor individuals by Claimants. And the requirement of specificity is highlighted by Article XI (H) – "Preservation of Claims and Rights."

Volusion misreads the Release language (Art. I, Paragraph 84) by failing to deal with the fact that the Release language is only one-half the equation – the other half is the Releasing Parties paragraph (Art. I, paragraph 85). While Volusion can point to names of Individual Defendants Rosenthal, Pike and Lindeman, and argue that Stallkamp is also covered by the language of Paragraph 84, Volusion fails to address the obvious problem with its argument that the Plan contains a release **by Claimants** of the individual defendants. Paragraph 85, which defines "Releasing Parties," does not point in any way, let alone specifically, to Claimants. Volusion seems to ignore the qualifying words: "such party's current (as of the Effective Date)." Claimants were not current – Volusion fired the before the file for bankruptcy – on July 27, 2020.

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER
Page 15

To illustrate the fatal flaw in of Debtor's argument, this hypothetical is helpful. Debtor correctly notes (in Paragraph 17 of its Motion to Enforce), the California Lawsuit is by Plaintiff's Bardia Dejban and Bahar Dejban against three member of Volusion's Board of Managers (Jeremy Rosenthal, Troy Pike,[16] and Curt Lineman) and Volusion's CRO (Tim Stallkamp). Assume one of the individual defendants, before Volusion filed for bankruptcy (or even afterwards), driving his car in California while drunk, recklessly ran over a schoolgirl in a crosswalk. The schoolgirl would have a claim against the individual defendant and could bring suit in California against the individual defendant. The schoolgirl's California lawsuit would have nothing to do with the Plan. This would be true even if the individual defendant claimed Volusion somehow wanted him to drink and drive recklessly – the suit is against the individual defendant for what he did.

Debtor, on behalf of the individual defendant, files a motion to enforce the confirmation order, pointing to the fact that the individual defendant is a member of Volusion's board of directors and thus a "Released Party" under the Plan. Volusion would also argue, perhaps with vigor (akin to the Debtor's heated argument in Paragraph 25 of its Motion to Enforce (Doc. 183)), that the schoolgirl's lawsuit would be a "baseless claim" in California and a "completely unwarranted distraction" to the individual defendant accused of negligently running over the schoolgirl, arguing the individual defendant (now being sued by the schoolgirl in California) has "worked and continue[s] to work very diligently on behalf of the Debtor toward the goal of achieving the sale-related milestones."

---

[16] Volusion throws in the irrelevant fact that Troy Pike is the "Interim" CEO. Whether Volusion picked Pike, a non-Iranian, as an "interim" CEO or is Bardia Dejban's long-term CEO replacement, Pike certainly was not the CEO of Volusion during the period in question – the time period including the alleged discriminatory and retaliatory acts of Rosenthal, Pike, Lindeman and Stallkamp ending **before** Volusion filed for bankruptcy when Volusion terminated the Dejbans.

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER
Page 16

Volusion's argument fails. Volusion fails to connect the Released Party to the schoolgirl, who is not among the "Releasing Parties" in the Plan. Sadly, for Volusion (and the individual defendant Volusion seeks to protect from a lawsuit in California by the schoolgirl), Volusion cannot find the schoolgirl as one of the "Releasing Parties" in the Plan. Likewise, here, Volusion cannot find Bardia Dejban or Bahar Dejban as "Releasing Parties" in Paragraph 85 of the Plan (Doc. 103, Art. I.A, ¶85). Volusion's motion to enforce the Confirmation Order is baseless. The Confirmation Order does not provide any release of the Individual Defendants b any hypothetical schoolgirl in California or by Bardia Dejban or Bahar Dejban.

In addition to its misreading of the release language (and failure to consider whether Claimants are releasing anyone), the plain wording of the Exculpation Clause – Article XI (C) – coupled with the definition of "Cause of Action" – shows that the release and exculpation under the Plan is limited to the Causes of Action now owned or hereafter acquired by the Debtor – they do not work in favor of third parties Rosenthal, Pike, Lindeman and/or Stallkamp. The pertinent language states:

> . . . [E]ach Exculpated Party is **hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the filing, administration and prosecution of the Chapter 11 Case**, . . . or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence . . . .

Art. XI (C), Dkt. No. 103.

The term "Cause of Action" is defined in the Plan as "Any claim or cause of action, legal or equitable, now owned or hereafter acquired by the Debtor, whether arising under contract or tort, federal or state law, including but not limited to Avoidance Actions, whether commenced prior or subsequent to the Petition Date. Art. I, ¶ 21, Dkt. No. 103. Individual defendants

Rosenthal, Pike, Lindeman and Stallkamp are not "the Debtor."

WHEREFORE, PREMISES CONSIDERED, Movants Bardia Dejban and Bahar Dejban respectfully request that this Court deny Debtor's Motion to Enforce and for such other and further relief as they may show themselves justly entitled.

Dated: May 5, 2021

    Respectfully submitted,

    Hal K. Gillespie (SBN 07925500)
    Gillespie Sanford LLP
    4803 Gaston Ave
    Dallas, TX 75246
    Tel:   (214) 800-5111
    Fax:  (214) 838-0001

    Attorney for Plaintiffs Bardia Dejban
    and Bahar Dejban

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and via electronic mail upon the following:

Jennifer F. Wertz
jwertz@jw.com

    /s/Hal K. Gillespie
    Hal K. Gillespie

RESPONSE IN OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER