**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOLUSION, LLC[1] | ) | Case No. 20-50082 (DRJ) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

**REORGANIZED <u>EMERGENCY</u> DEBTOR'S MOTION**
**FOR AN ORDER TO SHOW CAUSE WHY PLAINTIFFS**
**SHOULD NOT BE HELD IN CONTEMPT AND FOR SANCTIONS AND**
**<u>IN THE ALTERNATIVE, MOTION TO ENFORCE JULY 6, 2021 ORDER</u>**

<div style="border:1px solid black; padding:10px;">

**Emergency relief has been requested. A hearing will be conducted on this matter on August 2, 2021 at 10:30 am (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Avenue, Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**Relief is requested not later than August 2, 2021.**

</div>

---

[1]  The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is: Volusion, LLC (9037). The Reorganized Debtor's service address is 1835A Kramer Lane, Suite 100, Austin, TX 78758.

TO THE CHIEF UNITED STATES BANKRUPTCY JUDGE DAVID R. JONES:

The Reorganized Debtor files this motion for an order to show cause why Hal K. Gillespie, Bardia Dejban, and Bahar Dejban (the "Contemnors") should not be held in Contempt and for Sanctions ("Motion") for filing a second California lawsuit following entry of the Court's July 6, 2021 Order requiring them to dismiss the First California Lawsuit based on the Plan Injunction in the Confirmation Order and Plan that they violated.

## I.    INTRODUCTION

1.     On the heels of this Court's order to dismiss their First California Lawsuit because it violated the Court's Confirmation Order, the Dejbans filed a *second California lawsuit.*[2] Despite the clear admonishment and instruction from the Court, on July 26, 2021—just two weeks after dismissing the First California Lawsuit—the Contemnors filed an additional vexatious complaint in California against the same defendants and asserting virtually identical causes of action (the "Second California Lawsuit"). While the Second California Lawsuit, at first glance, appears to artfully dance around the plain language of the discharge injunction and the Court's admonishment, this is, to quote Loggins and Messina, "the same wine in a different bottle."[3]

2.     The Contemnors are fully aware the Court had already ruled in its July 6, 2021 Order that the First California Lawsuit was "an action in violation of the Plan" and that the Court had "enforced the plan," ordered them to "comply with the plan," and "to do it in the right way." *See* Ex. C; Ex. D, p. 14.[4] They should not be allowed to do indirectly what this Court specifically ordered and expressly enjoined them from doing directly.  The Contemnors' decision to thumb

---

[2] A copy of the Second California Lawsuit is attached as **Exhibit A.**

[3] Loggins & Messina, "Same Old Wine*," Sittin' In,* Columbia Records, 1971. A redline comparison of the complaint filed in the First California Lawsuit and the complaint filed in the Second California Lawsuit is attached as **Exhibit B**.

[4] A copy of the Court's July 6, 2021 Order [Dckt. No. 246] is attached as **Exhibit C.**  A copy of the Transcript of the July 6, 2021 hearing is attached hereto as **Exhibit D**.

their nose at this Court and engage in self-help clearly rises to the level of bad faith and in clear violation of this Court's prior orders. As the Contemnors cannot be trusted to abide by this Court's rulings, the Reorganized Debtor respectfully requests that the Court enter an order requiring them to appear and show cause why they should not be held in contempt. The Court should not tolerate this flagrant attempt to circumvent this Court's prior unambiguous orders.

## II. <u>FACTS</u>

3.     On November 20, 2020, the Court entered the *Order Confirming the Debtor's Combined Plan of Reorganization and Approving on a Final Basis the Disclosure Statement of Volusion, LLC Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Confirmation Order</u>") [Docket No. 128]. The Plan's Effective Date was January 19, 2021. [Docket No. 158].[5]

4.     On November 30, 2020, Mr. Dejban filed his Proof of Claim Nos. 15, 20, and 23, duplicate claims, each in the amount of $11,875,000.

5.     On February 26, 2021, the Reorganized Debtor filed its *Reorganized Debtors' Objection to the Proofs of Claim Nos. 15, 20, and 23 Filed by Bardia Dejban* [Dckt. No. 170].

6.     On November 30, 2020, Ms. Dejban filed her Proof of Claim Nos. 16, 21, and 22, duplicate claims, and each in the amount of $9,250,000.

7.     Pursuant to the Court's Order [Dckt. No. 246], on June 6, 2021, Mr. Dejban and Ms. Dejban each filed amended claims (the "<u>Amended Claims</u>"), which amend and supersede all prior filed claims.

8.     On February 26 2021, the Reorganized Debtor filed its *Reorganized Debtors' Objection to the Proofs of Claim Nos. 16 and 22 Filed by Bahar Dejban* [Dckt. No. 169] and on April 5, 2021, filed its *Reorganized Debtors' Amended Objection to the Proofs of Claim*

---

[5] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

*Nos. 16, 21, and 22* [Dckt. No. 178].   On June 13, 2021, the Reorganized Debtor filed its *Amended Objection to the Bardia Claim* (the "Bardia Dejban Claim Objection") [Dckt. No. 255] and its *Amended Objection to the Bahar Claim* (the "Bahar Dejban Claim Objection") [Dckt. No. 256].

9.      The Dejbans have known about the Debtor's bankruptcy since July 2020. They could have, but chose not to, object to the Plan.

10.      Nonetheless, two months after the Effective Date, and after the Reorganized Debtor filed its Objections to the Claims of Bardia Dejban and Bahar Dejban (the "Dejbans"), on March 18, 2021, the Dejbans filed a lawsuit in California alleging various employment claims against the Reorganized Debtor's Chief Restructuring Officer ("CRO") and its Independent Managers (the "First California Lawsuit").   But, as the Contemnors well knew, this Court's Confirmation Order prevented the Dejbans from pursuing the First California Lawsuit against the CRO and the Independent Managers because they are Released and Exculpated Parties under the Plan. As the Reorganized Debtor has previously detailed to this Court, the First California Lawsuit impeded the implementation of the Plan, and violated its Discharge and Injunction provisions. Thus, the Reorganized Debtor requested that the Court enforce the Confirmation Order and require the Dejbans to dismiss the First California Lawsuit with prejudice. The Court did just that in the July 6 Order.

11.      Indeed, a mere month ago, this Court found that the First California Lawsuit violated the Plan and Confirmation Order:

> With respect to the motion to enforce, it is abundantly clear to me that the California lawsuit is an intentional attempt to usurp my authority as well as the plan and confirmation order that simply cannot stand.

*See* Ex. E, p. 14: 21-25.[6]   The Court further ruled that the First California Lawsuit "stands at odds with the Plan and Confirmation Order" and required immediate dismissal.  *See* Ex. E, p. 15: 4-11.   Despite the Court's ruling, the Dejbans did not seek a stay of this Order and one was never granted. Additionally, at the hearing the following week on July 6, 2021, on the Motion for Modification of Discharge Injunction, the Court further noted that the Dejbans could "pursue valid claims," but that the First California Lawsuit was "an action in violation of the plan." Ex. D, p. 14. The Court also noted that if Bardia and Bahar were looking to the individuals "personally, then you're triggering a claim back against the debtor." Ex. D, p. 10.

12.     The Contemnors violated the Plan's discharge, injunction, and exculpation provisions by naming the CRO and the Independent Managers as defendants in the First California Lawsuit.

13.     The Reorganized Debtor is focused on implementing its Plan, which contemplates a sale of substantially all of the Reorganized Debtor's assets. The First California Lawsuit prejudiced that process.  The Second California Lawsuit was filed in the Superior Court in the State of California for the County of Los Angeles on July 26, 2021. *See* Exhibit A. The Second California Lawsuit violates the Plan and this Court's orders yet again. Indeed, despite re-framing the Second California Lawsuit as a clam for injunctive relief, the Dejbans still seek "compensatory and general damages." Ex. A, ¶¶ 73, 82; Ex. B.  As with the First California Lawsuit, the Contemnors' conduct in filing the Second California Lawsuit continues to hinder final administration of the Reorganized Debtor's estate, which may delay payment to claimants with valid claims, and thwart the Reorganized Debtor's ability to implement the Plan.

---

[6] A copy of the Transcript of the June 28, 2021 hearing is attached as **Exhibit E.**

14.     As the Court stated at the July 6 hearing, the Dejbans may "pursue valid claims," but they are required to do so through the claims objection process that they themselves triggered by filing proofs of claim in this bankruptcy case and requesting the ability to amend them, which the Court permitted.  *See* Ex. C,  ¶ 3.  Based upon that permitted amendment, the Reorganized Debtor filed amended objections to the Claims.  *See* Dckt. Nos. 255, 256.

## II.     <u>ARGUMENT & AUTHORITIES</u>

15.      "Civil contempt can serve two purposes," either coercing compliance with an order or "compensat[ing] a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009). The elements of civil contempt are "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Id.* (quoting *Fed. Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)).

16.     The power of a court to hold a party in contempt "is an inherent power of the federal courts and that it includes the power to punish violations of their own orders." *Id.* at 265. It is well established that bankruptcy courts possess civil contempt power. *Id.* at 266. Indeed, "Bankruptcy Code provisions, Bankruptcy Rules and court orders may not be violated without recourse." *In re Rodriguez*, 517 B.R. 724, 729 (Bankr. S.D. Tex. 2014). And it is irrelevant whether a party's violation of a court order or the Bankruptcy Code or Rules was done in good faith. *Id.* ("Countrywide cannot avoid responsibility even if it acted without bad faith….When the potential consequences of a violation are dire, the need for relief for violation of a court order is obviously enhanced."); *Campbell v. Countrywide Home Loans, Inc*., 545 F.3d 348, 355 (5th Cir. 2008) (willful stay violation does not require specific intent).

17.     Section 105(a) of the Bankruptcy Code provides bankruptcy courts broad authority to "take any action that is necessary or appropriate 'to prevent an abuse of process.'" *Marrama v.*

*Citizens Bank of Massachusetts*, 549 U.S. 365, (2007).   Bankruptcy courts must make a finding of bad faith to impose sanctions pursuant to their inherent authority, but "bad faith may be inferred." *VSP Labs, Inc. v. Hillair Capital Invs. LP*, 619 B.R. 883, 904 (N.D. Tex. 2020); *see Skyport*, 642 F. App'x at 304 (affirming sanctions where bankruptcy court "repeatedly stated that it found their state court petition was [] a direct violation of the injunction provisions contained in Skyport's Chapter 11 confirmation order").

18.      The Fifth Circuit has held that an order "which compensates the debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11 U.S.C. § 1141, was both necessary and appropriate to carry out the provisions of the bankruptcy code." *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997). Although parties generally bear their own litigation costs, "one exception to this rule is for willful disobedience of a court order." *Grossman v. Belridge Grp. (In re Lothian Oil, Inc.)*, 531 F. App'x 428, 446 (5th Cir. 2013) ("Given Anti-Lothian and its attorneys' decision to ignore the injunction order, we have little difficulty in concluding that this exception applies here."). Indeed, section 105 "is broad enough to empower bankruptcy courts to sanction attorneys in conjunction with their inherent power to implement the Bankruptcy Code and prevent abuses of bankruptcy process." *In re Rollings*, No. 04-31511-H3-7, 2008 Bankr. LEXIS 993, at *30 (Bankr. S.D. Tex. Mar. 31, 2008). The Supreme Court has also held that a court's inherent power permits it to assess attorneys' fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc*., 501 U.S. 32, 46 (1991). *Chambers* "allows for sanctions when a party's 'bad-faith conduct,' beyond that occurring in trial, is 'in direct defiance of the sanctioning court.'" *In re Skyport Glob. Commun., Inc*., 642 F. App'x 301, 303 (5th Cir. 2016). A bankruptcy court may also impose sanctions when the court finds that (1) the conduct of a party multiplied the proceedings; and (2) the conduct was both unreasonable

and vexatious. *See* 28 U.S.C. § 1927; *Travelers Ins. v. St. Jude Hosp.*, 38 F.3d 1414, 1416–17 (5th Cir. 1994); *804 Cong., LLC v. Ruiz (In re 804 Cong., LLC)*, No. 1:15-CV-766-LY, 2016 U.S. Dist. LEXIS 2136, at *5 (W.D. Tex. Jan. 7, 2016) (affirming sanctions).

19.     The Contemnors' conduct in filing the Second California Lawsuit is in direct violation of the Plan Injunction that the Court entered in the Confirmation Order.  Their conduct is likewise a failure to comply with this Court's July 6 Order. The Contemnors may claim (as Mr. Gillespie did when counsel for the Reorganized Debtor brought this to matter his attention) that the Court somehow contemplated and even authorized the Dejbans to re-file their claims in California.[7] Mr. Gillespie further suggested this conduct was permissible because the Dejbans' Motion for Leave to Appeal filed on July 20, 2021 indicated that the Contemnors would pursue this step. These excuses do not change the fact that the Contemnors have violated the Plan Injunction yet again as well as this Court's Orders to dismiss the First California Lawsuit and comply with the Confirmation Order and the Plan.

20.     The Discharge provision of the Plan plainly discharges the claims brought in the California Lawsuit and the Second California Lawsuit, as those claims "relate to services performed by employees/representatives of the Debtor prior to the Effective Date or that arise from a termination of employment, termination of retention of a professional or quasi-professional." *See* Plan, XI.F.

The Court agreed, stating on the record at the June 28, 2021 hearing as follows:

> This is not indicative of what I may do on a motion for relief, but that's the proper course, not the one that was taken. So I will grant the motion to enforce. ***The California lawsuit stands at odds with the plan and confirmation order.*** And both the plaintiffs and their counsel are ordered to dismiss the lawsuit within the next seven days, as well as step number two to file a certificate of compliance within three days thereafter.

---

[7] *See* email correspondence between respective counsel for the parties attached as **Exhibit F**.

8

Ex. E, p. 15: 4–11 (emphasis added). Filing the Second California Lawsuit violates the July 6 Order and this Court's instructions at the hearing. *See Bradley*, 588 F.3d at 265 (holding that the civil contempt power of the bankruptcy courts reaches "a knowing violation of an oral order"). Given that the Contemnors filed the Second California Lawsuit barely two weeks after dismissing the First California Lawsuit, and without conferring with counsel for the Reorganized Debtor or seeking approval from the Court, bad faith is easily inferred here. Additional, unambiguous evidence of the Contemnors bad faith includes Contemnors' attempted sleight of hand in re-framing the Second California Lawsuit as a clam for injunctive relief. Despite that, the Dejbans notably still seek "compensatory and general damages"—precisely what this Court ordered they could not do. Ex. A, ¶¶ 73, 82.

21.    Moreover, there is no doubt here that the Contemnors conduct multiplied the proceedings and was unreasonable and vexatious. The Contemnors' continued efforts to circumvent the Court's authority with arguments and lawsuits that have no reasonable legal basis has delayed and attempted to hinder both the Court's Orders and the Reorganized Debtor's post-confirmation efforts to implement the Plan—exactly what the Plan Injunction meant to prevent. This conduct is a textbook example of "vexatious."  *See* Merriam-Webster ("Vexatious: lacking a sufficient ground and serving only to annoy or harass when viewed objectively").

22.    Under these facts, clear and convincing evidence supports issuance of a civil contempt order and imposition of sanctions. This Court should find Bardia Dejban and Bahar Dejban and their counsel, Hal K. Gillespie, in civil contempt of Court. This Court also should order the following:

       (a)    Bardia Dejban and Bahar Dejban to pay the Reorganized Debtor's costs and attorneys' fees associated with this Motion;

       (b)    the Dejbans and their counsel to seek immediate dismissal with prejudice of the Second California Lawsuit within three days of the Court's order on

this Motion, and to obtain leave of the Court prior to filing any additional lawsuits in any jurisdiction; and

(e)     require the Dejbans and their counsel to obey the July 6 Order and all other orders of the Court, unless or until modified or reversed.

### III.     <u>CONCLUSION</u>

23.     The Contemnors have violated the Court's July 6, 2021 Order just like they violated the Confirmation Order before. The Reorganized Debtor requests that the Court set this matter for an emergency show cause hearing and hold Plaintiffs in contempt and impose appropriate sanctions.  The Reorganized Debtor also asks the Court to grant it any other relief, legal or equitable, to which it is entitled.

/s/ *Jennifer F. Wertz*
Matthew D. Cavenaugh (State Bar No. 24062656)
Jennifer F. Wertz (State Bar No. 24072822)
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
Email: jwertz@jw.com

**COUNSEL FOR THE REORGANIZED
DEBTOR**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 29, 2021, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.


*/s/ Jennifer F. Wertz*
Jennifer F. Wertz