IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOLUSION, LLC | ) | Case No. 20-50082 (DRJ) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

**REORGANIZED DEBTOR'S MOTION FOR SUMMARY JUDGMENT
WITH RESPECT TO PROOF OF CLAIM FILED BY BAHAR DEJBAN**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

TO THE CHIEF UNITED STATES BANKRUPTCY JUDGE DAVID R. JONES:

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtor moves for summary judgment on the Bahar Dejban Claim[1] filed by Claimant Bahar Dejban (Ms. Dejban) because Ms. Dejban was not an employee and therefore the Court must disallow the Bahar Dejban Claim, which is entirely based upon asserted employment claims, and thus fails as a matter of law. The Reorganized Debtor requests that the Court grant summary

---

[1] Pursuant to the Court's Order [Docket No. 246], Ms. Dejban filed her amended proof of claim on July 6, 2021, which is Exhibit B to the Motion to Amend referenced in the Order. (the "Bahar Dejban Claim"). *See* **Exhibit 2.**

judgment disallowing the Bahar Dejban Claim with prejudice and granting such other and further relief as is just and proper.

## SUMMARY OF THE ARGUMENT

Summary judgment disallowing the Bahar Dejban Claim is appropriate. There is no genuine dispute of material fact that—by her own design—Ms. Dejban was not an employee or an independent contractor of the Debtor. Instead, Ms. Dejban's company (DK) contracted with the Debtor. Ms. Dejban was never an employee and therefore, as a matter of law, none of the discrimination statutes pursuant to which she bases the Bahar Dejban Claim applies to her. Further, Ms. Dejban cannot prove a harassment claim as a matter of law. For those reasons, and as further set forth herein, the Bahar Dejban Claim must be disallowed pursuant to Rule 7056. In support of this Motion, the Debtor submits the Stallkamp Declaration, attached hereto as **Exhibit 1**.

### I.     STATEMENT OF FACTS

1. The United States Bankruptcy Court for the Southern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2. Venue is permissible pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On July 27, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the Court.

4. The statutory bar date for filing claims was November 30, 2020 (the "General Bar Date"). The bar date for governmental entities to file a claim is February 8, 2021 (the "Governmental Bar Date").

5. On November 20, 2020, the Court entered the Order Confirming the Debtor's Combined Plan of Reorganization and Approving on a Final Basis the Disclosure Statement of Volusion, LLC Pursuant to Chapter 11 of the Bankruptcy Code (the "Confirmation Order")

[Docket No. 128].  On January 19, 2021, the Effective Date of the Plan occurred.  *See* Docket No. 158.

6. On November 30, 2020, Ms. Dejban filed her Proof of Claim No. 16 in the amount of $9,250,000.

7. On November 30, 2020, Ms. Dejban filed her Proof of Claim No. 22 in the amount of $9,250,000.

8. Pursuant to the Court's Order [Docket No. 246], Ms. Dejban was permitted to amend her Proof of Claim No. 22 and file the Bahar Dejban Claim.

9. Bardia Dejban ("Mr. Dejban") was originally hired as Chief Information Officer in 2015 and began work in that role in February 2016; he became the Debtor's Chief Executive Officer ("CEO") in August 2019.  Sometime after his employment, Mr. Dejban cut a sweetheart deal for his twin sister, Ms. Dejban and her husband, the CEO's brother-in-law.  On behalf of the Debtor, Mr. Dejban signed an Independent Contractor Agreement ("Independent Contractor Agreement") with DK Strategic Solutions, LLC ("DK").  The Independent Contractor Agreement expressly provided that "[i]t is the express intention of the parties that [DK] is an independent contractor.  Nothing in this Agreement shall in any way be construed to constitute Contractor as an agent, employee, or representative of [Volusion], but [DK] shall perform the Services hereunder as an independent contractor."  A copy of the Independent Contractor Agreement is attached hereto as **Exhibit A** to the Stallkamp declaration.

10. DK is a company partially owned by Ms. Dejban.  DK contracted to provide two different types of services.  First, DK, with Ms. Dejban as "owner," agreed to "render to the Company . . . General Counsel Services . . . as requested by Company's CEO and/or Founder."  Second, DK agreed to provide negotiation and management services, and Ms. Dejban's husband

Shawn Khorrami ("Mr. Khorrami") would allegedly perform such services. Under Exhibit A to the Independent Contractor Agreement (general counsel services), DK was paid a monthly fee of $30,000, and under Exhibit B to the Independent Contractor Agreement (management services), DK was paid a monthly fee of $30,000 (which was eventually increased to $35,000).

11. Ms. Dejban resides in and is licensed to practice law in California.

12. On July 27, 2020, the Board terminated the independent contractor engagements of DK, Ms. Dejban, Dejban Law, and Mr. Khorrami. The Board also terminated any other contractor engagements of DK.

13. The Board's decision with respect to Ms. Dejban and her law firm Dejban Law was threefold. First, Ms. Dejban was unqualified to render general counsel services. Second, Ms. Dejban's loyalty laid with her brother and her husband, and not the Debtor. Third, the Board desired to undo Mr. Dejban's misdeeds, including entering into independent contractor agreements with family members to serve Mr. Dejban and not the Debtor.

## II.  LEGAL STANDARD

14. Under Federal Rule of Civil Procedure 56(a)—made applicable to this contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure—the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 56). The existence of some factual dispute will not defeat summary judgment; rather, the requirement is that no *genuine* issue of *material* fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp.*, 477 U.S. at 327. A genuine dispute of material fact exists only if a reasonable trier of fact could enter a verdict in favor of the non-moving party. *See Anderson*, 477 U.S. at 252; *Celotex Corp.*,

477 U.S. at 327 (holding that when a movant's evidence demonstrates the lack of a genuine issue the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial).

15. "An unambiguous contract is interpreted as a matter of law," and the Court "may grant summary judgment when a contract is unambiguous." *First Nat. Bank of Jackson v. Pursue Energy Corp.*, 799 F.2d 149, 151 (5th Cir. 1986) (citations omitted); *see also Lowell Staats Min. Co. v. Pioneer Uravan, Inc.*, 596 F. Supp. 1428, 1430 (D. Colo. 1984) ("Where, as here, the evidence of agreement between the parties consists of an unambiguous document, the determination of the meaning and effect of its provisions is a question of law for the Court, proper for resolution by summary judgment.").

### III.   ARGUMENT

16. The Bahar Dejban Claim asserts: (1) discrimination based on race, national origin, and ancestry, under the California Fair Employment and Housing Act ("FEHA") for Cal. Govt. Code §§ 12940, *et seq.*; (2) failure to prevent discrimination under the FEHA, Cal. Govt. Code §§ 12940, *et seq.*; and (3) discrimination and retaliation, based on Ms. Dejban's alleged attempt to obtain accommodations related to her pregnancy, and based on her sex and pregnancy, under the California Family Rights Act ("CFRA"), Cal. Govt. Code §§ 12945.2, *et seq*.

17. Because the Bahar Dejban Claim stems from the Debtor's termination of the independent contractor relationship it had with Ms. Dejban's company, DK, all of Ms. Dejban's claims fail as a matter of law. Further, to the extent Ms. Dejban seeks recovery under a hostile work environment or harassment theory, that claim also fails as a matter of law.

**A.   Ms. Debjan Was Not An Employee.**

18. Based on the DK Independent Contractor Agreement, Ms. Dejban's relationship with Debtor was, *at most,* that of an independent contractor. Ms. Dejban was never an employee. And, even if she somehow qualified as an independent contractor of the Debtor, none of Ms.

Dejban's theories of recovery in the Bahar Dejban Claim apply to independent contractors. Indeed, the FEHA's antidiscrimination provisions (including those under the CFRA) "protect employees, not independent contractors." *Mack v. Universal Truckload, LLC*, No. 5:19-cv-02363-RGK-SP, 2020 U.S. Dist. LEXIS 248159, at *6 (C.D. Cal. Dec. 18, 2020). *See Diggs v. Harris Hospital-Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988) (Title VII's protections do not apply to independent contractors); *Bloom v. Bexar County, Tex.*, 130 F.3d 722, 724 (5th Cir. 1997) (Title I of the ADA does not apply to independent contractors); *Talley v. County of Fresno*, 51 Cal. App. 5th 1060, 1071 (2020) (Plaintiff's claims require him to prove he is an employee within the meaning of the FEHA).

19. Under the applicable FEHA regulations, an employee is: "Any individual under the direction and control of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written. . . . [para.] Employee does not include an independent contractor as defined in Labor Code Section 3353." Cal. Code Regs. tit. 2, § 11008 (c). In turn, Labor Code Section 3353 defines an independent contractor as "any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." Cal. Lab. Code § 3353.

20. In FEHA cases in particular, to determine whether a worker is a contractor or employee "courts consider the totality of the circumstances bearing on the nature of the work relationship of the parties, with an emphasis on the extent to which the defendant controls the plaintiff's performance of employment duties." *Rhodes v. Sutter Health*, 949 F. Supp. 2d 997, 1003 (E.D. Cal. 2013). Other factors to be considered include (1) the alleged employee's opportunity for profit or loss depending on her managerial skill; (2) the alleged employee's investment in equipment or materials required for her task, or her employment of helpers; (3) whether the service

rendered requires a special skill; (4) the degree of permanence of the working relationship; and (5) whether the service rendered is an integral part of the alleged employer's business. *Narayan v. EGL, Inc.*, 616 F.3d 895, 901 (9th Cir. 2010) (citing *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 359, 256 Cal. Rptr. 543, 769 P.2d 399 (1989)). This test is similar to the hybrid economic realities/common law control test applied in the Fifth Circuit. *See Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dept.*, 479 F.3d 377, 382 (5th Cir. 2007); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015) (citing *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117, 118–19 (5th Cir. 1993)).

21. Courts also look at whether the parties intended that the individual be an employee or independent contractor, as expressed in written agreements or contracts. *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003); *see also Haskett v. Percheron*, LLC, CV G-14-257, 2016 WL 1054396, at *4 (S.D. Tex. Mar. 9, 2016), (considering the worker's ability to render their services to others in finding that there was no employer-employee relationship); *see also Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986) (noting the workers were not employees based on several facts, including that they were responsible for their operating costs, license fees, and taxes and that their pay was much higher than that of company workers).

22. Of these factors, the extent of the employer's right to control the means and manner of the workers' performance is the most important. "'A finding of the right to control employment requires . . . a comprehensive and immediate level of "day-to-day" authority over employment decisions.'" *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (9th Cir. 2009) (quoting *Vernon*, 116 Cal. App. 4th at 127-28). "'A finding of the right to control employment requires . . . a comprehensive and immediate level of "day-to-day" authority over employment decisions.'" *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (9th Cir. 2009) (quoting *Vernon*, 116 Cal. App. 4th

at 127-28). In the case of *Irish v Magnussen Home Furnishings, Inc.*, 786 F. App'x 687, 687 (9th Cir. 2019), the court ruled that the plaintiff was an independent contractor as a matter of law because he "set his own schedule, paid himself out of his company's funds, owned most of the equipment he used, was permitted to work for other employers at the same time he worked for [the company], and was never issued W-2 tax forms." The court held that, taken together, these facts show that the plaintiff was an independent contractor. *Id.*

23. Here, at the most, Ms. Dejban performed services for Debtor as an independent contractor, not an employee. Ms. Dejban is a lawyer licensed to practice in the State of California. Ms. Dejban owns her own law firm, Dejban Law. According to Dejban Law's own website, the firm markets its services nationwide. As an example, the Dejban Law website currently states on its home page:

> THE FIRM
>
> Dejban Law is California law firm that helps clients nationwide who have been wronged due to the negligence or intentional acts of others.
>
> Our firm provides services to clients in numerous fields and practice areas including personal injury, product liability, employment, dangerous drugs and devices, food contamination, civil rights, consumer protection and numerous others.
>
> Get in touch with us to set up a consultation, or use the contact form at the bottom of this page to enquire whether our services are right for you.[2]

24. In addition to her law firm, Ms. Dejban owns DK. Ms. Dejban signed the Independent Contractor Agreement as "owner" of DK in which she agreed to "render to the Company . . . General Counsel Services . . . as requested by Company's CEO and/or Founder." Ms. Dejban performed services for the Debtor under and pursuant to the terms of the DK Independent Contractor Agreement. *See* Ex. 2. The Debtor did not pay any salary or compensation

---

[2] *See* http://www.dejbanlaw.com/.

29662861v.4

of any kind to Ms. Dejban. *See* Ex. 2. It likewise paid no health insurance or any other benefits to Ms. Dejban that it provided to its actual employees. The Debtor did not pay Ms. Dejban's operating costs, license fees, or taxes. Rather, the Debtor simply paid a flat fee to DK for services under the Independent Contractor Agreement. Consistent with the parties' independent contractor relationship, the Debtor did not issue a W-2 to Ms. Dejban. The Debtor did not even issue a 1099 to Ms. Dejban. Instead, the Debtor issued an 1099 to DK for payments made under the Independent Contractor Agreement.

25. Crucially, the Debtor did not have the right to control Ms. Dejban's conduct, the means by which she performed legal services, or her work schedule. Ms. Dejban—who lived and worked in the State of California, not in Texas or Volusion's Texas offices—did not work under the direction of a supervisor in connection with the services she provided through DK either. To the contrary, as the Independent Contractor Agreement provides, DK promised only to keep the Debtor "advised as to Contractor's progress in performing the Services" "from time to time." *See id.* Nor did Debtor train Ms. Dejban, or have any obligation to do so. *See* Ex. 2. These facts are unsurprising, as the practice of law is a highly skilled profession and the practice of law is not part of the Debtor's regular business operations. Finally, although the Debtor could terminate the Independent Contractor Agreement with DK, it had no right or ability to terminate Ms. Dejban's relationship with either DK or with her law firm. *See* Ex. 2. In sum, there are no facts here that show the "comprehensive and immediate level of 'day-to-day' authority over employment decisions" as required to show employment status under the FEHA. *See Doe I.*, 572 F.3d 677 at 682.

26. Taken together, these facts establish as a matter of law that Ms. Dejban was not an employee of the Debtor under any of the statutes that form the basis for her the Bahar Dejban Claim.

**B. Ms. Dejban's Harassment Claim Fails As A Matter of Law.**

27. The lengthy Bahar Dejban Claim contains numerous emails and detailed factual allegations that Ms. Dejban suggests constitute harassment by the Debtor's Board of Independent Managers and its Chief Restructuring Officer ("CRO"). These allegations do not and cannot establish a hostile work environment claim as a matter of law.

28. The standards for harassment under California law and Title VII are essentially the same. *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 996 (E.D. Cal. 2016). Harassment is "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment …." R*ehmani v. Superior Court*, 204 Cal. App. 4th 945, 951 (2012) (internal quotation marks omitted). However, like Title VII, the FEHA does "not proscribe a general civility code in the workplace." *White v. Home Depot U.S.A., Inc.*, 2019 U.S. Dist. LEXIS 40810, at *52 (S.D. Cal. Mar. 13, 2019) (quoting *Cozzi v. Cty. of Marin*, 787 F. Supp. 2d 1047, 1070 (N.D. Cal. 2011) (harassment claim failed where allegations included that supervisor "screamed, slammed doors, and made 'threatening gestures' such as 'jumping out of her chair toward [plaintiff]…,'" "increase[ing] her work load," and telling her "she was 'unsuitable' for advancement")). A plaintiff "must show a concerted pattern of harassment" beyond mere rude comments. *Rehmani*, 204 Cal. App. 4th at 951; *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (simple teasing and isolated incidents insufficient, "unless extremely serious"). Moreover, a plaintiff must show not only that they, personally, were offended, but also

that the conduct "would have interfered with a reasonable employee's work performance." *Aguilar v. Avis Rent a Car System, Inc*., 21 Cal. 4th 121, 130-31 (1999) (emphasis added).

29. Additionally, "the exercise of personnel management authority properly delegated by an employer to a supervisory employee might result in discrimination, but not in harassment." *Reno*, 18 Cal. 4th at 646. "[C]ommonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations….and the like, do not come within the meaning of harassment." *Id*. at 646-47. "These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment." *Roby v. McKesson Corp*., 47 Cal.4th 686, 707 (2009). In other words, under California law, "harassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message." *Id*. at 706.

30. To the extent Ms. Dejban alleges she was harassed, the facts here do not come close to plausibly alleging that any member of the Board (or anyone else, for that matter) engaged in conduct severe or sufficiently pervasive enough to alter the conditions of Ms. Dejban's work. The facts show that none of the alleged "harassment" in the Bahar Dejban Claim is remotely connected to Ms. Dejban's race or to her sex, pregnancy, or any medical condition related to her pregnancy. Ms. Dejban asserts harassment based on nothing more than the Board's and/or the CRO's "negative silence" regarding race/national origin (see Docket No. 193-2, Bahar Dejban Claim, ¶¶ 25, 32), and from their failure to mention Ms. Dejban's pregnancy (*id*., ¶ 36 (Defendants never asked Ms. Dejban "about her due date"), *id*. ¶ 41 (Lindeman "did not offer support" after Ms. Dejban stated "I was on unexpected bed rest yesterday" and advised him she had been dealing

with "critical work issues" that day); *id*. ¶ 47 (alleging Lindeman's failure to respond to an email from Ms. Dejban—which did not request a response—confirmed his prior work-related requests "constituted harassment").

31. Ms. Dejban may have "felt harassed." *Id*. at ¶ 40. But Ms. Dejban concedes in the Claim that she and Mr. Dejban were the only individuals to say anything about her protected statuses. Thus, the allegedly harassing interactions do not, as a matter of law, rise to the level sufficiently severe or pervasive harassment, so as to have interfered with a reasonable employee's work. *Faragher*, 524 U.S. at 788.

32. Moreover, Ms. Dejban's Claim does not contain any allegations of conduct "unrelated" to the Board's or the CRO's particular roles on behalf of the Debtor, or that were engaged in for their own purposes. This, of course, is because their actions were taken entirely within the context of the roles they were there to perform. *Cf. Roby*, 47 Cal.4th at 709 (supervisor's harassing actions included Schoener's demeaning comments to Roby about her body odor and arm sores….[T]hese were events that were unrelated to Schoener's managerial role, engaged in for her own purposes."). For example, Ms. Dejban asserts that Board member Lindeman's request that Ms. Dejban make herself available for an introductory call "preferably within the hour" was an allegedly harassing and intimidating attack because, in her view, there was no "real emergency." this request was within the normal, managerial role of a Board member directed to the company's counsel. *See Topadzhikyan v. Glendale Police Dep't*, 2010 U.S. Dist. LEXIS 78717, at *22 (C.D. Cal. July 8, 2010) (harassment claim failed against individual defendants where plaintiffs alleged being "admonished" for taking more vacation than allotted PTO available, that one defendant gave plaintiff "hard and intimidating looks," and that another defendant sent "sarcastic, rude, derogatory, and harassing emails"). The evidence here—as presented by Ms. Debjan herself—

confirms that the Board's and CRO's conduct was not actionable and related only to commonly necessary oversight by the Board and the CRO.

33. In sum, the facts here involve only race-neutral, medical leave-neutral, and sex/pregnancy-neutral communications regarding Ms. Dejban's general counsel services. *See Pinder v. Empl. Dev. Dep't*, 227 F. Supp. 3d 1123, 1145 (E.D. Cal. 2017) ("The Court rejects Plaintiff's argument that race-neutral criticism by a supervisor is transformed into racial harassment simply because the first supervisor to find fault with his work is not of Plaintiff's race."). Ms. Dejban cannot establish that the Board's and/or Debtor's CRO's "silence" (which Ms. Dejban actually contradicts by her own allegations) created a hostile work environment, much less a hostile environment based on any protected characteristics. Ms. Dejban's harassment claims under California law fail.

34. For all these reasons, the Court should disallow the Bahar Dejban Claim in its entirety pursuant to Fed. R. Civ. Proc. 56.

## CONCLUSION

The Court should disallow the Bahar Dejban Claim in its entirety. There is no genuine dispute of material fact that she has no route to any recovery against the Reorganized Debtor based on the Bahar Dejban Claim. Ms. Dejban herself had DK contract with the Reorganized Debtor for the provision of legal services in a nonsensical arrangement from which she should not be permitted to pivot at this juncture to attempt to advantage herself. Likewise, there is no evidence here that Ms. Dejban faced harassing verbal, physical, or visual treatment of any kind. There is zero basis in law or fact for allowance of the Bahar Dejban Claim and the Reorganized Debtor respectfully asks that the Court disallow it.

| | |
|---|---|
| August 6, 2021 | /s/ *Jennifer F. Wertz* |
| | Matthew D. Cavenaugh (State Bar No. 24062656) |
| | Jennifer F. Wertz (State Bar No. 24072822) |
| | **JACKSON WALKER LLP** |
| | 1401 McKinney Street, Suite 1900 |
| | Houston, Texas 77010 |
| | Telephone: (713) 752-4200 |
| | Facsimile: (713) 752-4221 |
| | Email: mcavenaugh@jw.com |
| | Email: jwertz@jw.com |
| | |
| | **COUNSEL FOR THE REORGANIZED DEBTOR** |

29662861v.4

## Certificate of Service

I certify that on August 6, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and via regular mail and email upon the following:

Hal Keith Gillespie
Attorney for Bahar Dejban
Gillespie Sanford LLP
4803 Gaston Avenue
Dallas, TX 75246
hkg@gillespiesanford.com

/s/ *Jennifer F. Wertz*
Jennifer F. Wertz

29662861v.4